1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   ESTATE OF WILLIAM HAYDEN              Case No.:  23-cv-785-DMS-AHG
     SCHUCK, by and through his successors-
12   in-interest Sabrina Schuck and Timothy   **ORDER GRANTING IN PART AND**
     Schuck; SABRINA SCHUCK,                  **DENYING IN PART DEFENDANT**
13   individually and in her capacity as      **CORRECTIONAL HEALTHCARE**
     successor-in-interest; and TIMOTHY       **PARTNERS' MOTION TO DISMISS**
14   SCHUCK, individually and in his capacity
15   as successor-in-interest,
16
17                         Plaintiffs,
18        v.
19   COUNTY OF SAN DIEGO; BILL
     GORE, in his individual capacity; KELLY
20   MARTINEZ, in her individual capacity;
     CORRECTIONAL HEALTHCARE
21   PARTNERS; JON MONTGOMERY,
     D.O., in his individual capacity;
22   JAMEELYN BARRERA, R.N., in her
     individual capacity; ROMEO
23   DEGUZMAN, R.N., in his individual
     capacity; EMILY LYMBURN, R.N., in
24   her individual capacity; CARINA
     ECHON, R.N., in her individual capacity;
25   DEPUTY SUPERVISOR DOES 1-6, in
     their individual capacities; JENNIFER
26   VIVONA, R.N., in her individual
27
28

                              1
                                                      23-cv-785-DMS-AHG

capacity; THOMAS MACE, in his
individual capacity; JEFF AMADO, in his
individual capacity; SVEN
SODERBERG, in his individual capacity;
DEPUTY DOES 1–14, in their individual
capacities; MEDICAL PROVIDERS
DOES 2–6, in their individual capacities,

Defendants.

Pending before the Court is Defendant Correctional Healthcare Partners' ("CHP") motion to dismiss CHP and Doe Medical Providers 2–6 from Plaintiffs' First Amended Complaint ("FAC," ECF No. 25) under Federal Rule of Civil Procedure 12(b)(6). ("Def.'s Mot.," ECF No. 32.) Following the death of Mr. William Hayden Schuck ("Schuck") in San Diego County Central Jail the morning of March 16, 2022, Schuck's parents, Sabrina and Timothy Schuck, on behalf of Schuck's Estate and in their individual capacities as Schuck's next of kin brought several claims against the County of San Diego ("the County"), CHP, and various county employees alleging constitutional violations under 42 U.S.C. § 1983 and various state law claims including negligence and wrongful death. Plaintiffs filed a response in opposition ("Pls.' Opp'n," ECF No. 36) to which CHP replied ("Def.'s Reply," ECF No. 37.) For the reasons set forth below, the Court grants in part and denies in part CHP's motion to dismiss.

## I.   BACKGROUND

### A. Hayden Schuck's Arrest and Death

Plaintiffs assert the following allegations in the FAC, which the Court accepts as true for the purpose of resolving CHP's motion to dismiss. Early on March 10, 2022, William Hayden Schuck ("Schuck") drove to Ocean Beach, San Diego, to go surfing. (FAC ¶ 41.) On his way back, Schuck got into a car crash while driving at 50–70 miles per hour. (*Id.* ¶¶ 35, 41.) The car may have rolled several times. (*Id.* ¶ 35.) Schuck managed to get out of his vehicle before California Highway Patrol officers arrived. (*Id.*) Responding officers noted that Schuck "appeared unable to focus and confused." (*Id.*)

Schuck declined medical treatment.  (*Id.* ¶ 37.)  Officers found small bags containing powdery substances in Schuck's car and on his person and arrested Schuck for suspected driving under the influence and possession of controlled substances.  (*Id.* ¶¶ 36, 38.)  Officers transported Schuck to the San Diego County Central Jail ("Central Jail").  (*Id.* ¶ 42.)  In a post-arrest interview, Schuck reported he had been awake for the previous 44 hours.  (*Id.* ¶ 39.)  He denied having used drugs that day.  (*Id.* ¶ 39–40.)

At 4:56 PM, a jail medical staff member recorded that Schuck was "*willing* to sign" a medical services rights form but was "*unable* to sign" and gave no additional detail.  (*Id.* ¶¶ 43–44, emphasis added.)  Officers then took Schuck to the UC San Diego Medical Center ("UCSD") for medical evaluation.  (*Id.* ¶¶ 46–47.)  Schuck's blood pressure was elevated.  (*See id.* ¶ 47.[1])  Hospital staff noted a family history of ischemic heart disease, a condition which can cause arrythmia and heart failure.  (*Id.* ¶ 48.)  Doctors assessing Schuck noted he appeared "clinically sober" and had decision-making capacity.  (*Id.* ¶ 50.)  Schuck refused additional treatment and was discharged against medical advice.  (*Id.*)  Discharge paperwork stated: "No obvious signs of trauma or illness but occult injury[2] is possible given mechanism."  (*Id.*)

An officer transported Schuck back to the Central Jail around 9:10 PM that evening.  (*Id.* ¶ 51.)  Nurse Jameelyn Barrera ("RN Barrera"), a named defendant in this action, conducted Schuck's medical intake.  (*Id.* ¶ 53.)  The transporting officer allegedly failed to give jail staff copies of the hospital paperwork indicating that Schuck acted against medical advice in requesting to be discharged, and jail staff allegedly failed to timely request the hospital records.  (*Id.* ¶ 52.)  At intake, Schuck's blood pressure remained elevated at 144/94 and his pulse was 118.  (*Id.* ¶ 54.)  His height was recorded at 6 feet 2 inches and his weight was 131 pounds, indicating a "profoundly underweight" BMI of 16.8.  (*Id.* ¶

---

[1] At 5:36 PM Schuck's blood pressure was 138/106 and his pulse was 106.  (*Id.* ¶ 47.)  At 8:10 PM, Schuck's blood pressure was 142/102 and his pulse was 95.  (*Id.*)

[2] An occult injury is one that is not readily visible.

55.)  An unidentified mental health provider present during Schuck's medical intake, (alleged to be a Doe Medical Provider, *see id.* ¶ 31), indicated that Schuck did not understand the booking process and made incoherent and nonsensical statements.  (*Id.* ¶ 56.) Despite allegedly being aware that Schuck was arrested for driving under the influence of drugs and possession of illegal drugs, RN Barrera indicated in her assessment that Schuck had no history or risk of alcohol or drug withdrawal and no recent use of alcohol, heroin, prescription pain medication, sedatives, or other illegal drugs.  (*Id.* ¶ 63.)  Jail medical staff did not test Schuck for drugs.  (*Id.* ¶ 64.)  RN Barrera noted that Schuck was fit to continue the booking process and "merely checked a box" for Schuck to receive a "sick call" at some "undetermined point in the future."  (*Id.* ¶ 66.)  RN Barrera did not recommend that Schuck be placed in a medical observation bed or psychiatric stabilization unit.  (*Id.* ¶ 75.)  RN Barrera made no arrangements for further medical care.  (*Id.* ¶ 80.)

Schuck was placed in a single occupancy holding cell between March 10–15, 2022.  (*Id.* ¶ 81.)  Schuck allegedly received no further medical care until March 15, 2022, (*see id.* ¶¶ 83–91), except for a chest x-ray performed on March 12, 2022, (*id.* ¶ 86).  On March 14, 2023, Schuck was unable to go to court for his arraignment and it was rescheduled for the next day.  (*Id.* ¶ 89.)

On March 15, 2022, named defendant Dr. Jon Montgomery, the chief medical officer for the San Diego County Sheriff's Department who oversaw the County Jail's Medical Services Division, (*id.* ¶ 23), ordered Schuck's wound dressings changed and antibiotic ointment applied, (*id.* ¶ 91).  As presently alleged, the origin and history of these wounds are unclear.  At 8:45 AM, Nurse Romeo DeGuzman ("RN DeGuzman"), also a named defendant, took Schuck's vital signs.  (*Id.* ¶ 94.)  Schuck's blood pressure remained high at 148/96.  (*Id.* ¶ 95.)  RN DeGuzman assessed Schuck as suffering from "altered thought process," (*id.* ¶ 96), and noted that Schuck was disorganized, nonsensical, and having "difficulty in following direction," (*id.* ¶ 98).  Schuck told RN DeGuzman that he had ADHD and used "acid."  (*Id.* ¶ 97).  RN DeGuzman noted that Schuck appeared "disheveled, with soiled t shirt," was "not wearing pants," and had "dry blood" on his t-

shirt and "both lower extremities." (*Id.* ¶ 99.)

An hour later, Nurse Emily Lymburn ("RN Lymburn"), another named defendant, observed Schuck lying naked on his bed facing the wall with pressure ulcers (i.e., bed sores) on his body. (*Id.* ¶ 105.)  Schuck did not respond to RN Lymburn's multiple attempts to speak to him although Schuck "kept moving his lower extremities" while "facing the wall." (*Id.* ¶ 106.)  RN Lymburn informed jail medical staff that Schuck "needed to be seen as soon as possible." (*Id.* ¶ 109.)  RN Lymburn did not contemporaneously log her notes from this encounter and the note is marked as a late entry. (*Id.* ¶¶ 111–12.)  RN Lymburn allegedly entered her note a full day later. (*Id.* ¶ 113.)

At 10:35 AM, jail staff gave Schuck clean clothes and transported him to court for arraignment. (*Id.* ¶ 117.)  Schuck could not confirm his name in court, (*id.* ¶ 119), and Schuck's public defender expressed concern about Schuck's "ability to understand and proceed" with the arraignment, (*id.* ¶ 118).  The judge declined to complete the arraignment proceeding and ordered that Schuck receive medical treatment and "be screened for medications." (*Id.* ¶ 120.)  On his walk back from court to his holding cell, Schuck lost his balance and briefly sat on the ground before continuing. (*Id.* ¶ 121.)  Between 8 and 9 PM that night, officers transported Schuck to a different holding cell. (*Id.* ¶ 122.)  Schuck fell to the ground twice while being transported to his new cell. (*Id.*)

At 9:42 PM, Nurse Carina Echon ("RN Echon"), another named defendant, received the court's order directing jail staff to provide medical treatment to Schuck, (*id.* ¶ 123), but allegedly did nothing to "provide or summon medical treatment," (*id.* ¶ 124).  At 3:44 AM, jail staff delivered a morning meal to Schuck's cell, but Schuck did not eat. (*Id.* ¶ 126.)  Six hours later, at 9:37 AM, jail staff arrived at Schuck's cell to escort him to the medical clinic for treatment but found him unresponsive and with no pulse. (*Id.* ¶ 128.)  Schuck was pronounced dead at 10:18 AM. (*Id.* ¶ 130.)

Schuck "died from profound dehydration" and "untreated withdrawals, which ultimately caused heart failure." (*Id.* ¶ 139; *see id.* at ¶¶ 140–46.)  The toxicology report showed that Schuck's vitreous urea nitrogen was 103 mg/dL, an "exceedingly high" level

"indicative of profound dehydration." (*Id.* ¶¶ 141, 144.)  The toxicology report also indicated showed low levels of cocaine and MDMA in Schuck's system. (*Id.* ¶ 137.)  The medical examiner noted "scabs of varying ages and sizes" on Schuck's "face as well as on the front and back of [his] body in various places," swelling on his forehead and on the back of his head, multiple contusions indicative of "sharp force trauma" on his right hand, and pressure ulcers on Schuck's back, buttocks, arms, and legs. (*Id.* ¶ 135.)  There were pieces of toilet paper containing dried blood scattered around Schuck's cell. (*Id.* ¶ 132.)  The symptoms Schuck displayed, including dizziness, fainting, fatigue, confusion, irritability, sleepiness and inactivity (evidenced by multiple bed sores on Schuck's backside), sunken eyes, and dry lips (evidenced by Schuck's lips being dry and covered with dried blood) suggest Schuck suffered from extreme dehydration. (*Id.* ¶¶ 145–46.)

Plaintiffs allege on information and belief that "physicians employed by CHP knew or should have known" of Schuck's symptoms in the days before his death and "could have and should have intervened to provide life-saving medical care." (*Id.* ¶ 153.)  Plaintiffs also allege that various named defendants, including Doe Medical Providers, "had notice and opportunity to provide [Schuck] with necessary medical care" and "deliberately" failed to do so. (*Id.* ¶ 156.)

**B. History of Deliberate Indifference**

Since 2006, San Diego County has had the highest rate of jail deaths of all California counties, including the highest rate of overdose and accidental deaths. (*See id.* ¶¶ 157, 167.)  The elevated risk of death is mostly "isolated to the unsentenced jail population." (*Id.* ¶ 167.)  In February 2022, the California State Auditor completed a review of the San Diego Sheriff's Department to determine the cause of the high rate of deaths. (*Id.* ¶ 160.)  Plaintiffs incorporate by reference the Auditor's Report into the FAC.[3] (*Id.*)  The Auditor identified systemic deficiencies in the Sheriff Department's care for incarcerated

---

[3] Auditor of the State of California, Report No. 2021-109, San Diego County Sheriff's Department (2022), https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf/.

individuals, including inadequate provision of medical and mental health care, inadequate identification of detainees' health care needs during intake, inadequate follow-up on medical and mental health needs, inadequate performance of visual checks to ensure health and safety of detainees, and failing to investigate and review in-custody deaths, among other deficiencies.  (*Id.* ¶¶ 163–64.)

Plaintiffs allege that at the time of Schuck's death, the County and CHP maintained numerous troublesome "longstanding practices or customs."[4]  (*Id.* ¶ 168.)  Plaintiffs point to other individuals who died in San Diego County jails allegedly due to these customs and practices.  (*See id.* ¶¶ 169–82.)  Plaintiffs allege that the named defendants, including the County of San Diego and CHP, "were aware of a perpetual pattern of preventable in-custody deaths caused by Defendants' systemic and wide-ranging misconduct, negligence, and failures."  (*Id.* ¶ 197.)  The FAC also incorporates by reference the Second and Third Amended Complaints filed in *Dunsmore v. San Diego County Sheriff's Department*, No. 20-cv-406-AJB (S.D. Cal. filed Mar. 2, 2020), ECF Nos. 81, 231, which provide further detail of the County's alleged longstanding practices of providing deficient medical care to detainees in the County jails. (FAC ¶¶ 183–85.)

**C. Claims**

Plaintiffs Sabrina and Timothy Schuck, decedent Hayden Schuck's parents, initiated this action on April 28, 2023, and filed the FAC on June 1, 2023.  Plaintiffs raise nine claims in the FAC brought by Plaintiffs either in their capacity as successors-in-interest to Schuck's Estate or in their individual capacity as Schuck's next of kin:

---

[4] These include: failing to properly conduct "receiving screenings" at intake; failing to properly document medical or mental health conditions at intake; failing to ensure the safety of detainees housed in county jails; leaving individuals unattended in their cells for extended periods despite signs of medical or mental distress; failing to summon necessary medical or mental health care; failing to maintain internal information systems updated with critical medical or mental health information; failing to provide adequate treatment to individuals suffering from withdrawals; failing to provide adequate treatment to individuals suffering from overdose; failing to provide adequate treatment to individuals suffering from dehydration; failing to provide adequate treatment to individuals suffering from mental health conditions; and failing to adequately staff the jail medical services division.

(1)   A claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's Estate, against county employees and Doe Medical Providers. (*Id.* ¶¶ 198–207.)

(2)   A claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's parents as individuals, against county employees and Doe Medical Providers. (*Id.* ¶¶ 208–215.)

(3)   A claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's Estate, against the County and CHP. (*Id.* ¶¶ 216–233.)

(4)   A claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's parents, against the County and CHP. (*Id.* ¶¶ 234–239.)

(5)   A claim under California Government Code § 52.1 (Bane Act), by Schuck's Estate, against the County, county employees, CHP, and Doe Medical Providers. (*Id.* ¶¶ 240–248.)

(6)   A claim under California Government Code § 845.6 for failure to summon medical care, by Schuck's Estate, against county employees and Doe Medical Providers. (*Id.* ¶¶ 249–248.)

(7)   A negligence claim, by Schuck's Estate, against the County, county employees, CHP, and Doe Medical Providers. (*Id.* ¶¶ 260–270.)

(8)   A negligent training and supervision claim,[5] by Schuck's Estate, against the County, certain county employees, and CHP. (*Id.* ¶¶ 271–282.)

(9)   A wrongful death claim, by Schuck's parents, against the County, county employees, CHP, and Doe Medical Providers. (*Id.* ¶¶ 283–291.)[6]

---

[5] Plaintiffs allege this claim separately "for the sake of clarity, understanding that it constitutes a theory of liability for the overarching tort of negligence." (FAC at 42 n.6.)

[6] The following chart summarizes the different claims in this case:

On June 23, 2023, an informal telephonic status conference was held with the undersigned district judge. (*See* ECF No. 31.) On June 28, 2023, Defendant CHP filed its motion to dismiss. (ECF No. 32.) On July 21, 2023, Plaintiffs responded in opposition. (ECF No. 36.) And on July 24, 2023, CHP filed a reply. (ECF No. 37.) The Court vacated oral argument and took the matter under submission on August 1, 2023. (ECF No. 38.)

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim

|  | Claim | Brought by | Against |
|---|---|---|---|
| 1. | Section 1983 (Individual Capacity) | Schuck's Estate ("Estate") | County employees, Doe Medical Providers |
| 2. | Section 1983 (Individual Capacity) | Schuck's Parents ("Parents") | County employees, Doe Medical Providers |
| 3. | Section 1983 (*Monell*) | Estate | County, CHP |
| 4. | Section 1983 (*Monell*) | Parents | County, CHP |
| 5. | Cal. Gov't Code § 52.1 (Bane Act) | Estate | County, County employees, CHP, Doe Medical Providers |
| 6. | Cal. Gov't Code § 845.6 (failure to summon care) | Estate | County employees, Doe Medical Providers |
| 7. | Negligence | Estate | County, County employees, CHP, Doe Medical Providers |
| 8. | Negligence (negligent training or supervision) | Estate | County, some County employees, CHP |
| 9. | Wrongful Death | Parents | County, County employees, CHP, Doe Medical Providers |

9

for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged" her "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

**B. Pleading Standard for "Doe" Defendants**

"[W]hen a plaintiff has claims against an unknown defendant, the plaintiff must still meet federal pleading standards when alleging facts against such defendants" in federal court. *Lomeli v. County of San Diego*, 637 F. Supp. 3d 1046, 1058 (S.D. Cal. 2022). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs "may refer to unknown defendants as 'Does'" at the pleading stage but Rule 8 nevertheless requires a plaintiff to "'allege specific facts showing how each particular doe defendant violated'" the plaintiff's rights. *Thomas ex rel. Thomas v. County of San Diego*, No. 20-cv-1979-CAB, 2021 WL 2715086,

at *3 (S.D. Cal. July 1, 2021) (quoting *Keavney v. County of San Diego*, No. 19-cv-1947-AJB, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)); *see Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (plaintiff "must set forth specific facts as to each individual defendant's" wrongdoing).  A district court should dismiss claims against Doe defendants in a Section 1983 suit when the complaint does not "even minimally explain how any of the unidentified parties . . . personally caused a violation of [the claimant's] constitutional rights."  *Estate of Serna v. County of San Diego*, No. 20-cv-2096-LAB, 2022 WL 827123, at *3 (S.D. Cal. Mar. 18, 2022).

## III.  DISCUSSION

For the reasons explained below, the Court grants in part and denies in part Defendant CHP's motion to dismiss CHP and Doe Medical Providers 2–6 from the FAC.

### A. Counts 1–2: Section 1983 Individual Capacity Claims

Plaintiffs have stated Section 1983 claims against one of the Doe Medical Providers (No. 2) but not against the others (Nos. 3–6).

In the first and second counts pled in the FAC, Plaintiffs allege that the actions and omissions of the defendants named in their individual capacities,[7] including Doe Medical Providers 2–6, amounted to deliberate indifference to Schuck's constitutional right to adequate medical care under the Due Process Clause of the Fourteenth Amendment and led to Schuck's death.  (*See* FAC ¶¶ 198–215.)  CHP argues that the Doe Medical Provider defendants should be dismissed from these claims because the FAC makes no mention of their conduct or personal involvement.  (Def.'s Mot. at 12.)  In response, Plaintiffs argue they have sufficiently alleged the personal involvement of the Doe Medical Providers because the FAC alleges (1) CHP was responsible for providing detainees with "adequate

---

[7] The individual capacity defendants include: (1) Bill Gore, former San Diego County Sheriff; (2) Kelly Martinez, Undersheriff and former Acting Sheriff; (3) Jon Montgomery, D.O., Chief Medical Officer of the Sheriff's Department; (4) Jameelyn Barrera, R.N.; (5) Romeo DeGuzman, R.N.; (6) Emily Lymburn, R.N.; (7) Carina Echon, R.N.; (8) Jennifer Vivona, R.N.; (9) Thomas Mace, Deputy Sheriff; (10) Jeff Amado, Deputy Sheriff; (11) Sven Soderberg, Deputy Sheriff; (12) Doe Deputy Sheriffs 1–14; (13) Doe Medical Providers 2–6; (14) Doe Deputy Sheriff Supervisors 1–6.

medical care while at the jail"; (2) Schuck did not receive "timely or meaningful medical care" despite showing symptoms of medical distress; and (3) CHP had at least constructive knowledge of Schuck's symptoms, which "were recorded in his medical file for other medical services personal, including CHP employees, to see." (Pls.' Opp'n at 11–12.)

### 1. Objective Deliberate Indifference Standard

"Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). For pretrial detainees, this right arises under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). The Ninth Circuit applies an "objective deliberate indifference" standard to Fourteenth Amendment claims alleging a pretrial detainee received deficient medical care. *Gordon v. County of Orange* (*Gordon I*), 888 F.3d 1118, 1124–25 (9th Cir. 2018). Under this standard, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125) (alteration in original). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less

than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon I*, 888 F.3d at 1125).

2. <u>Analysis</u>

Plaintiffs allege that the Doe Medical Providers defendants are:

all County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were responsible for [Schuck's] medical care, including follow-up assessments and referrals for further treatment, whether or not they actually provided [Schuck] with any medical care. Doe Medical Providers include all Qualified Mental Health Providers, including the individual who evaluated Hayden at intake, as described in this Complaint.

(FAC ¶ 31.) In Paragraph 56, Plaintiffs allege with sufficient detail that one of the Doe Medical Providers, a mental health provider, was present the night of March 10, 2022, during Schuck's medical intake screening at the Central Jail after he returned from UCSD Hospital. Doe Medical Provider allegedly reported that during the intake, Schuck was "making grandiose statements and is not understanding booking process- asking to take photos of his medical records with his phone (which per officers, was 'in pieces' [due to] his car accident) and is asking for '$20 to give to the nurse for some water.'" (*Id.* ¶ 56, internal quotes omitted). Plaintiffs allege that the Doe Medical Provider "knew or should have known that [Schuck] was either under the influence of drugs or alcohol, suffering withdrawal, or otherwise needed additional monitoring and medical care" based on these observations. (*Id.* ¶ 57.) Plaintiffs further allege under the first count, as relevant here:

Defendants made intentional decisions and omissions regarding [Schuck's] conditions of confinement and the denial of adequate medical care, including but not limited to . . . [a]ccepting [Schuck] into the jail without a full medical clearance despite the above-described signs and symptoms of medical conditions; . . . [and] [f]ailing to summon medical care in the face of obvious signs that [Schuck's] health was deteriorating dangerously, including but not limited to disorganized thinking, confusion, altered thought process . . . .

(*Id.* ¶ 201.) The second count incorporates this allegation. (*See id.* ¶ 212.)

Taken together, Plaintiffs plausibly allege that the mental health provider present at Schuck's intake is liable under the *Gordon* standard for failing to provide constitutionally

adequate medical care to Schuck.  The allegations sufficiently show that the Doe Medical Provider "made an intentional decision" to not refer Schuck to further medical care at intake which put Schuck "at substantial risk of suffering" the medical complications which lead to his death. *Gordon I*, 888 F.3d at 1125.  The allegations also sufficiently show that there were "reasonable available measures" that the mental health provider could have taken "to abate that risk," such as referring Schuck to further medical treatment before accepting him into the jail; and that "[b]y not taking such measures," the Doe Medical Provider caused Schuck's injury. *Id.*  Plaintiffs' theory of liability against this Doe Medical Provider is therefore plausible at this stage.

However, this is the only Doe Medical Provider defendant against whom Plaintiffs have plausibly stated a Section 1983 claim.  Nowhere in the description of the facts giving rise to their claims do Plaintiffs specify or describe the actions of the other Doe Medical Providers or explain how they contributed to Schuck's injury.  The FAC makes only "cursory and conclusory allegations," *Serna*, 2022 WL 827123, at *3, that "physicians employed by CHP knew or should have known of [Schuck's] symptoms during the days leading up to his death and could have and should have intervened to provide life-saving medical care," and that "Doe Medical Providers . . . had notice and opportunity to provide [Schuck] with necessary medical care and deliberately ignored his needs."  (FAC ¶¶ 153, 156.)  While such allegations may be appropriate under California law for claims pled in state court,[8] a plaintiff in federal court must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (interpreting Fed. R. Civ. P. 8(a)).  Plaintiffs have not plausibly alleged that any other Doe Medical Provider is liable for Schuck's death.

Accordingly, the Court grants in part and denies in part Defendant's motion to

---

[8] *See* Cal. Code Civ. Proc. § 474 ("When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated . . . by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . .")

dismiss the Doe Medical Provider defendants from the first and second counts.  The Court dismisses, with leave to amend, all but one Doe Medical Provider defendant from the first and second counts.  *See Intri-Plex*, 499 F.3d at 1056 (dismissal without leave to amend is proper only when it is clear "the complaint could not be saved by any amendment").

## B. Counts 3–4: Section 1983 *Monell* Claims

Plaintiffs have stated *Monell* claims against CHP based on the theories that CHP's longstanding practices amounted to deliberate indifference and that CHP failed to adequately train jail medical staff, but not based on the theory that CHP ratified other constitutional violations alleged in the FAC.  Plaintiffs also adequately allege that CHP's longstanding practices and failure to adequately train were the "moving force" behind Schuck's death.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

Plaintiffs allege three main theories of liability as part of their *Monell* claims against CHP.  First, they allege that CHP maintained longstanding practices or customs of failing to provide adequate medical care to detainees housed in San Diego County jails, and that these policies reflected CHP's deliberate indifference to detainees' constitutional right to adequate medical care and were the moving force behind Schuck's death.  (FAC ¶¶ 220–21, 227, 234.)  Second, Plaintiffs allege a failure-to-train theory: CHP is liable for failing to train staff to properly evaluate the medical needs of detainees at intake and while in custody, which amounted to deliberate indifference to detainee's constitutional right to adequate medical care.  (*Id.* ¶¶ 222–23, 234.)  Finally, Plaintiffs allege a ratification theory: CHP is liable due to its "ratification and approval of" the constitutional violations alleged in the FAC.  (*Id.* ¶¶ 229, 234.)  In its motion to dismiss, CHP disputes only causation.  CHP argues that it should be dismissed from the *Monell* claims "because Plaintiffs have not causally connected" CHP's allegedly deficient policies, customs, or practices to Schuck's death.  (Def.'s Mot. at 13.)

### 1. *Monell* Standard

A local government cannot be vicariously liable under Section 1983 based on the acts of its employees; but a local government can be liable for deprivations of constitutional

rights resulting from its formal policies, customs, or longstanding practices.  *Monell*, 436 U.S. at 691–93 (1978).  To state a Section 1983 claim under the *Monell* standard, a plaintiff must show: "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation.  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

"A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)) (alteration in original).  A plaintiff can satisfy *Monell*'s policy requirement in one of three ways.  First, a plaintiff can show that the local government acted "pursuant to an expressly adopted official policy." *Gordon v. County of Orange* (*Gordon II*), 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (per curiam)).  Second, "a public entity may be held liable for a 'longstanding practice or custom.'" *Id.* (quoting *Thomas*, 763 F.3d at 1170).  Third, a plaintiff can show that "the individual who committed the constitutional tort was an official with final policy-making authority," or that "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974 (quoting *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d at 1070) (alteration in original).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  A local government's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision

by the city itself to violate the Constitution.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)).  This happens when a local government "fail[s] to implement procedural safeguards to prevent constitutional violations," *Tsao*, 698 F.3d at 1143–44 (lack of police safeguards to distinguish between trespassers and invitees in a Las Vegas casino resulting in the wrongful arrest of lawful invitees was an unconstitutional practice), or, in egregious cases, when it fails to train its employees adequately, *Connick*, 563 U.S. at 61 (giving hypothetical example of "a city that arms its police force with firearms and deploys the armed officers into the public" with no training).

The *Monell* standard applies to Section 1983 suits against private entities acting under color of state law.  *See Tsao*, 698 F.3d at 1139 ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.").  To plead a Section 1983 *Monell* claim against CHP, Plaintiffs must show that CHP "acted under color of state law" and that a constitutional violation was caused by an official policy, custom, or longstanding practice of CHP.  *Id.*

2. Analysis

   a. *Longstanding Practices and Customs Theory*

Plaintiffs adequately allege here that CHP's longstanding practices caused Schuck's death.  The Court accepts that Plaintiffs plausibly allege that CHP has longstanding practices of failing to recognize a detainee's serious medical needs during intake screening and failing to provide adequate medical care to detainees suffering from withdrawal, overdose dehydration, and mental health conditions, (FAC ¶¶ 168(g)–(j), 220), because CHP does not challenge these allegations.[9]  In the description of the facts giving rise to their claims, Plaintiffs allege that "CHP contracted with the County beginning in 2020 through the date of [Schuck's] death" and "was responsible for providing medical care

---

[9] The Court also accepts that Plaintiffs plausibly allege CHP to be a state actor (*see* FAC ¶ 218) because CHP does not challenge this.

staffing and on-site medical services to detainees in the San Diego County Jail." (*Id.* ¶¶ 24–25.)  As part of its contract with the County, CHP was allegedly "responsible for and oversaw the development and implementation of peer review, quality assurance, utilization review, and clinical policies and procedures." (*Id.* ¶ 25.)  Based on CHP's contractual responsibility to provide medical care to detainees, Plaintiffs further allege that "physicians employed by CHP knew or should have known of [Schuck's] symptoms during the days leading up to his death and could have and should have intervened to provide life-saving medical care." (FAC ¶ 153.)

CHP argues that Plaintiffs "have not alleged any specific facts to show *how* CHP knew or should have known of Schuck's symptoms." (Def.'s Mem. at 13.)  But the Court is not persuaded that Plaintiffs are required to show that CHP was specifically aware of *Schuck's* particular symptoms to plausibly allege a *Monell* claim based on deliberate indifference.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)) (a complaint states a plausible *Monell* claim where it "contain[s] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "plausibly suggest[s] an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation").  It is enough here that Plaintiffs allege (1) that at the time of Schuck's death, CHP had a contract with the County and was responsible for providing medical services to detainees in the County Jail, and (2) that despite this responsibility, CHP's practices demonstrated deliberate indifference to detainees' right to adequate medical care.  This is sufficient to show at the pleadings stage that CHP's longstanding "failure[s] to implement procedural safeguards to prevent constitutional violations," *Tsao*, 698 F.3d at 1143–44, were the "moving force" behind Schuck's death, *Monell*, 436 U.S. at 694.  *See also M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 900–01 (N.D. Cal. 2013) (where detainee died of severe alcohol withdrawal after intake at county jail, plaintiffs stated *Monell* claim against prison health services contractor on the theory that its longstanding practices of, inter alia, failing to implement adequate

procedures to prevent and treat severe alcohol withdrawal amounted to deliberate indifference to detainees' medical needs).

### b. Failure-to-Train Theory

Plaintiffs also plausibly allege a *Monell* claim based on a failure-to-train theory. "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). Plaintiffs have adequately shown that failure to provide Schuck with adequate medical care in jail amounts to a violation of his Fourteenth Amendment right to adequate medical care. Further, CHP does not challenge the sufficiency of Plaintiffs' allegations that CHP failed to train jail medical staff "to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and how to summon and provide adequate medical care when necessary," especially with regard to detainees suffering from withdrawal, overdose dehydration, and mental health conditions. (FAC ¶¶ 168, 220, 222.)

CHP disputes only causation. As explained above, Plaintiffs have sufficiently alleged that at least one Doe Medical Provider defendant—the mental health provider in Paragraph 56 present during Schuck's intake—was objectively deliberately indifferent in failing to provide constitutionally adequate medical care to Schuck, and Plaintiffs allege that CHP "employed, supervised, and/or trained" that Doe Medical Provider. (*Id.* ¶ 25.) Whether or not the Doe Medical Provider in Paragraph 56 was a CHP employee, Plaintiffs allege that CHP at least *trained* that Doe Medical Provider. This is enough to plausibly allege that "the constitutional injury would not have resulted" if CHP had properly trained jail medical staff. *Benavidez*, 993 F.3d at 1153–54; *see Frary v. County of Marin*, No. 12-cv-3928-MEJ, 2012 WL 6218196, at *8 (N.D. Cal. Dec. 13, 2012) (where detainee became

sick and died in prison after swallowing narcotics in his pocket while in police car after his arrest, plaintiffs adequately stated *Monell* claim based on police chief's failure to "properly train, assign, supervise, and guide his staff to take the necessary measures to ensure the health and safety of arrested persons").

        *c. Ratification Theory*

Plaintiffs fail to plausibly allege that CHP is liable based on a ratification theory.  A local government may be held liable under a *Monell* claim when "'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the [local government] because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  "There must, however, be evidence of a conscious, affirmative choice" on the part of the authorized policymaker.  *Gillette*, 979 F.2d at 1347.  Thus, unlike the "longstanding practices" and "failure-to-train" theories, to adequately plead a theory of liability based on official ratification, Plaintiffs must plausibly allege the personal involvement of an "official with final policy-making authority." *Id.* at 1346–47.

Nowhere in their description of facts giving rise to their claims do Plaintiffs identify any CHP official with final policy-making authority or explain how any such authorized policymaker made "a conscious, affirmative choice" to approve of any of the actions or omissions of subordinate jail staff which contributed to Schuck's death.  *Id.* at 1347.  Plaintiffs make only a conclusory allegation that CHP is liable based on its "ratification and approval of the constitutional, statutory, and other law violations as alleged" in the FAC and that this ratification caused Schuck's death.  (FAC ¶¶ 229–30.)  Accordingly, Plaintiffs neither plausibly allege a "direct causal link" between an official ratification and Schuck's death or that any CHP official ratified the constitutional violations alleged in the FAC. *Sandoval*, 985 F.3d at 681–82.

*d. Conclusion*

Accordingly, the Court grants in part and denies in part CHP's motion to dismiss CHP from the *Monell* claims.  The Court grants the motion to the extent that the *Monell* claims are based on a ratification theory of liability, and otherwise denies the motion. Because the court finds that amendment would not be futile, this dismissal is with leave to amend.  *See Intri-Plex*, 499 F.3d at 1056.

**C. Count 5: Violation of California Government Code § 52.1 (Bane Act)**

Plaintiffs adequately state a claim under the Bane Act against one of the Doe Medical Providers, but not against the others.  Plaintiffs have also stated a Bane Act claim against CHP based on CHP's deliberately indifferent practices, but not based on a theory of vicariously liability for the wrongful acts of CHP's employees.

Plaintiffs allege that the Doe Medical Provider defendants and CHP are liable under the Bane Act for the same constitutional violations underlying their Section 1983 claims. (FAC ¶¶ 242–45.)   In addition, Plaintiffs allege that CHP is vicariously liable for constitutional violations attributed to its employees while acting within the scope of their employment. (*Id.* ¶ 248.) Similar to its argument in response to the Section 1983 individual capacity claims, CHP argues that the FAC fails to state a claim against the Doe Medical Provider defendants because it "does not allege sufficient specific factual allegations against" them.  (Def.'s Mot. at 15.)  CHP also argues the FAC does not plausibly allege that CHP is vicariously liable for the acts of its employees because the Doe Medical Provider defendants are not clearly alleged to be CHP employees and the FAC does not identify any other CHP employees who have committed wrongful acts.  (*Id.* at 15–16.)

1. Liability Under the Bane Act

California Civil Code § 52.1 codifies the Tom Bane Civil Rights Act ("Bane Act"). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City and County*

*of San Francisco*, 17 Cal. App. 5th 766, 791 (2017) (quoting Cal. Civ. Code § 52.1). Violations of federal and California constitutional and statutory rights are all cognizable under the Bane Act. *See* Cal. Civ. Code § 52.1(b) (a violation occurs when a defendant "interferes . . . with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state").

Liability under the Bane Act requires a showing of "more . . . than mere negligence." *Cornell*, 17 Cal. App. 5th at 797 (quoting *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012)). "Threat, intimidation, or coercion" is a necessary element of a Bane Act claim. *Id.* at 791. The Ninth Circuit has held "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).[10] To show specific intent, a plaintiff must satisfy two requirements: first, is the right at issue "clearly delineated and plainly applicable under the circumstances of the case?" *Cornell*, 17 Cal. App. 5th at 803 (quoting *People v. Lashley*,

---

[10] As other district courts have observed, it is "somewhat unsettled" in California case law "whether a plaintiff must allege threats, intimidation, or coercion beyond those inherent in the alleged constitutional violation." *Lomeli*, 637 F. Supp. 3d at 1074 (collecting cases); *compare Shoyoye*, 203 Cal. App. 4th at 959–62 (2012) (when a plaintiff was unintentionally detained beyond his ordered release likely due to a negligent clerical error, the Bane Act required "a showing of coercion independent from the coercion inherent in the wrongful detention itself") *with Cornell*, 17 Cal. App. 5th at 801–02 (where "an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, *not* by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention") (emphasis added). "When interpreting state statutory language, federal courts are ordinarily bound by the decisions of the given state's highest court." *Armstrong v. Reynolds*, 22 F.4th 1058, 1073 (9th Cir. 2022). The California Supreme Court has not spoken on what "threats, intimidation, or coercion" in California Civil Code § 52.1 requires. If the state's highest court has not spoken on the issue, the federal court's "task" is to "predict" how the state's highest court would decide the issue. *Armstrong*, 22 F.4th at 1073 (quoting *Platt v. Moore*, 15 F.4th 895, 901 (9th Cir. 2021)). In *Reese*, the Ninth Circuit did just that and adopted *Cornell*'s reasoning, finding *Cornell*'s interpretation persuasive and seeing no convincing reason that the California Supreme Court would not follow *Cornell*. *Reese*, 888 F.3d at 1042–44. This Court concludes it is therefore bound by *Reese* in the absence of intervening authority from the California Supreme Court.

1 Cal. App. 4th 938, 948–949 (1991)).  If the answer is yes, the second inquiry is: did the defendant "commit the act in question with the particular purpose of depriving" the victim of his enjoyment of the interests protected by that right?  *Id.* (quoting *Lashley*, 1 Cal. App. 4th at 948–949).  The specific intent requirement "is satisfied where the defendant . . . acted with '[r]eckless disregard of the right at issue.'"  *Serna*, 2022 WL 827123, at *8 (quoting *Cornell*, 17 Cal. App. 5th at 804) (alteration in original).  In *Cornell*, the California Court of Appeal approvingly cited *M.H.*, 90 F. Supp. 3d at 898, for its conclusion that an allegation of deliberate indifference to a prisoner's medical needs is enough to satisfy the "threat, intimidation, or coercion" requirement.  *Cornell*, 17 Cal. App. 5th at 802 n.31.

A plaintiff may raise Bane Act claims "against rights-interfering conduct by private actors as well as by public officials."  *Id.* at 791.  Unlike a Section 1983 claim, a defendant can be liable under the Bane Act "whether or not acting under color of law."  Civ. Code § 52.1(b).

Unlike a Section 1983 *Monell* claim, a local government can be vicariously liable for its employees' Bane Act violations under a theory of respondeat superior.  *See Gant v. County of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) (explaining that "[u]nder California law, public entities are liable for actions of their employees within the scope of employment," including for Bane Act claims) (citing Cal. Gov't Code § 815.2(a)).  It appears that a private employer, like CHP, is also vicariously liable for the Bane Act violations of its employees because under California law, an employer is liable for the intentional torts of its employees committed within the scope of employment.  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995)*; see M.H.*, 90 F. Supp. 3d at 897 (a prison health services contractor can be vicariously liable under a respondeat superior theory for the Bane Act violations of its employees).

2. <u>Analysis</u>

Plaintiffs adequately plead that one of the Doe Medical Provider defendants—the mental health provider in Paragraph 56—is liable under the Bane Act for acting with the specific intent to deprive Schuck of his constitutional right to adequate medical care.  First,

for the reasons explained in the Court's analysis of the Section 1983 individual capacity claims above, the right at issue here—Schuck's right to adequate medical care under the Fourteenth Amendment to the United States Constitution—is "clearly delineated and plainly applicable under the circumstances of" this case. *Cornell*, 17 Cal. App. 5th at 803 (quoting *Lashley*, 1 Cal. App. 4th at 948–949). And second, Plaintiffs adequately plead that the mental health provider in Paragraph 56 "acted with 'the particular purpose of depriving the . . . victim of his enjoyment of the interests protected by' the Fourteenth Amendment." *Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803). "Reckless disregard of the 'right at issue' is all that [i]s necessary," *Cornell*, 17 Cal. App. 5th at 803, and this Court has found above that Plaintiffs plausibly allege the mental health provider acted with "objective deliberate indifference" to Schuck's right to adequate medical care, which is equivalent to a showing of reckless disregard. *See Sandoval*, 985 F.3d at 669 ("[T]he plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of . . . 'something akin to reckless disregard.'") (quoting *Gordon I*, 888 F.3d at 1125). Thus, Plaintiffs have stated a Bane Act claim against one of the Doe Medical Provider defendants—the mental health provider in Paragraph 56. However, as discussed above, Plaintiffs have failed to state a Bane Act claim against any other Doe Medical Provider because they have not shown that any other Doe Medical Provider acted with reckless disregard to Schuck's right to adequate medical care.

Plaintiffs also independently state a Bane Act claim against CHP based on its alleged deliberately indifferent practices and customs. As discussed above, Plaintiffs sufficiently allege that CHP's longstanding practices of failing to recognize detainees' serious medical needs during intake screening and failing to provide adequate medical care to detainees amounted to deliberate indifference to detainees' constitutional right to adequate medical care, and that indifference caused Schuck's death. The Court also found that CHP's alleged failure to train jail staff to properly identify detainees' health risks at intake and while in custody and failure to train staff to summon and provide medical care when necessary

amounted to deliberate indifference to detainees' constitutional right to adequate medical care, and that this too caused Schuck's death. These same alleged deliberately indifferent practices also show that CHP "acted with 'the particular purpose of depriving the . . . victim of his enjoyment of the interests protected by' the Fourteenth Amendment," *Scalia*, 308 F. Supp. 3d at 1084 (quoting *Cornell*, 17 Cal. App. 5th at 803), and support a Bane Act claim against CHP. *See Cornell*, 17 Cal. App. 5th at 803 ("Reckless disregard of the 'right at issue' is all that [i]s necessary."); *M.H.*, 90 F. Supp. 3d at 897, 900–01 (finding that the plaintiffs stated Bane Act claims against a prison health services corporation based on the same allegations of deliberately indifferent practices that gave rise to *Monell* claims).

However, Plaintiffs fail to state a Bane Act claim against CHP on a theory of respondeat superior liability because Plaintiffs have not plausibly alleged that any CHP employee, individually, is liable for violating the Bane Act. Although Plaintiffs plausibly state a Bane Act claim against the mental health provider present at Schuck's intake as alleged in Paragraph 56, Plaintiffs fail to adequately allege that this Doe Medical Provider defendant was a CHP employee. In Paragraph 25, the FAC alleges that "CHP employed, supervised, and/or trained" the Doe Medical Provider defendants, and in Paragraph 26, the FAC suggests that the Doe Medical Provider defendants are CHP's employees. (FAC ¶¶ 25–26; *see id.* ¶ 26, "Defendant CHP *and its employees, including Defendant Medical Provider Does 2–6*," emphasis added.) But the FAC equivocates in Paragraph 31, stating that the Doe Medical Providers "are all County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were responsible for [Schuck's] medical care." (*Id.* ¶ 31.) These speculative and inconsistent assertions "devoid of" much "'factual enhancement'" fail to plausibly allege that the mental health provider in Paragraph 56 was an employee of CHP. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Accordingly, the Court grants in part and denies in part Defendant's motion to dismiss CHP and the Doe Medical Provider defendants from the fifth count. The Court dismisses the Bane Act claim against all but one of the Doe Medical Provider defendants

and against CHP to the extent it relies on a respondeat superior theory of liability.  The motion is otherwise denied.  The Court finds that amendment would not be futile and therefore grants leave to amend.  *See Intri-Plex*, 499 F.3d at 1056.

### D. Count 6: Failure to Summon Medical Care in Violation of California Government Code § 845.6

Plaintiffs fail to state claims against CHP or the Doe Medical Provider defendants (to the extent they are alleged to be CHP employees) for violation of California Government Code § 845.6 because CHP is a private entity and liability under the statute is limited to public entities and the acts of public employees.

The text of California Government Code § 845.6 provides in pertinent part:

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

"California courts have construed the provision to create limited liability only 'when: (1) the public employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care.'"  *Scalia*, 308 F. Supp. 3d at 1085 (quoting *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013)) (alteration in original).

CHP argues that Plaintiffs fail to state a Section 845.6 claim against CHP because CHP is a private corporation and liability under Section 845.6 is expressly limited to public entities.  (Def.'s Mem. at 16.)  In their opposition, Plaintiffs concede that Section 845.6 limits liability to public entities and employees and do not oppose dismissal.  (Pls.' Opp'n at 15.)  The Court agrees.  As the California Court of Appeal has held, Section 845.6 is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only."  *Castaneda*, 212 Cal. App. 4th at 1070; *cf. Villarreal v. County of Monterey*, 254 F. Supp. 3d 1168, 1192–94 (N.D. Cal. 2017) (explaining that a municipality is not vicariously liable under Section 845.6 for

the acts of independent contractors because the statute limits liability to the acts of public employees).  Accordingly, the Court grants the motion to dismiss CHP from the Section 845.6 claim for failure to summon medical care.

For similar reasons, CHP also argues that Plaintiffs fail to state a Section 845.6 claim against the Doe Medical Provider defendants.  Plaintiffs do not oppose dismissal of the Doe Medical Provider defendants without prejudice "to the extent they are CHP employees and not County employees." (Pls.' Opp'n at 15.)  Accordingly, the Court grants the motion to dismiss the Section 845.6 claim against the Doe Medical Provider defendants only to the extent that the Doe Medical Provider defendants are alleged to be CHP employees.

These claims brought under California Government Code § 845.6 are dismissed with leave to amend because the Court finds that amendment would not necessarily be futile. *See Intri-Plex*, 499 F.3d at 1056; *see also Villarreal*, 254 F. Supp. 3d at 1194 (explaining that California Government Code § 815.4 "provides that public entities can be liable for the actions of independent contractors in some circumstances").

### E. Counts 7–9: Negligence and Wrongful Death

Plaintiffs have stated a negligence and wrongful death claim against one of the Doe Medical Provider defendants—the mental health provider in Paragraph 56.  Plaintiffs have also stated negligence and wrongful death claims against CHP based on a theory of negligent training and supervision, but not based on a theory of vicarious liability for the negligent acts of its employees.

To state a negligence claim under California law, a plaintiff must allege (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Plaintiffs allege negligence and wrongful death claims in part against the Doe Medical Provider defendants and CHP.  First, Plaintiffs allege that the same factual bases giving rise to Plaintiffs' deliberate indifference claims against the individually named defendants also support a negligence claim.  (FAC ¶¶ 262–63.)  Next, Plaintiffs allege that Defendant CHP is "vicariously liable for the conduct of" various individually named county employee

defendants (the Doe Medical Providers).  (*Id.* ¶ 266.)  Lastly, Plaintiffs allege a negligence theory of liability based on negligent training and supervision: CHP is liable for failing to train its employees to (1) "properly evaluate" detainees' health risks "at intake and while in custody," (2) "identify serious symptoms of medical distress," and (3) "determine proper and adequate courses of treatment for detainees  in need of medical treatment, and how to summon and provide adequate medical care when necessary." (*Id.* ¶ 276.)  Plaintiffs also raise wrongful death claims based on these same theories.  (*Id.* ¶ 287.)

First, as explained above, Plaintiffs have adequately alleged that one of the Doe Medical Provider defendants—the mental health provider in Paragraph 56—was deliberately indifferent to Schuck's constitutional right to adequate medical care.  The same allegations supporting liability under a deliberate indifference standard are necessarily sufficient to support liability under a negligence standard.  *See Villarreal*, 254 F. Supp. 3d at 1191 (allegations sufficient to state a claim that defendants' "policies, procedures, actions, and omissions" violated a claimant's constitutional right to adequate medical care are also sufficient to state a claim for negligence).  However, as the Court found that Plaintiffs do not plausibly allege Section 1983 or Bane Act claims against any other Doe Medical Provider, Plaintiffs similarly fail to state a negligence claim against any other Doe Medical Provider.

Plaintiffs also fail to state a negligence claim against CHP based on a theory of vicariously liability.  First, an employer is vicariously liable for the negligent acts of its employees only if there is a "causal nexus to the employee's work." *Lisa M.*, 12 Cal. 4th at 297.  Plaintiffs argue that CHP is "vicariously liable for the conduct of Defendants Martinez, Montgomery, Barrera, DeGuzman, Lymburn, Echon, Vivona, Mace, Amado, Soderberg, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors." (FAC ¶ 266.)  As Defendants note, however, the FAC alleges that Martinez, Montgomery, Barrera, DeGuzman, Lymburn, Echon, Vivona, Mace, Amado, Soderberg are all County employees, not employees of CHP.  (*See id.* ¶¶ 13–20, 22–23.)  CHP cannot be vicariously liable for the negligent acts of those they do not employ.  Further, Plaintiffs expressly allege

that the Doe Deputies and the Doe Deputy Supervisors all work for the San Diego County Sheriff's Department (*Id.* ¶¶ 27–28, 30) and are therefore not CHP employees.   As explained above in the Court's analysis of the Bane Act claims, Plaintiffs also do not clearly allege that the Doe Medical Providers are CHP employees.   Thus, as currently pled, the FAC alleges no plausible basis to hold CHP liable under a respondeat superior theory.

Plaintiffs have alleged sufficient allegations to state a negligence claim against CHP based on a negligent training and supervision theory.   Plaintiffs' negligent training and supervision theory is based on the same allegations giving rise to their *Monell* claims against CHP for its alleged failure to adequately train jail medical staff.   As discussed above, Plaintiffs adequately alleged those claims.   For the same reasons, the Court finds that Plaintiffs sufficiently allege a negligence claim based on a negligent training and supervision theory.   *See Estate of Silva v. City of San Diego*, No. 18-cv-2282-L, 2020 WL 6946011, at *21 (S.D. Cal. Nov. 25, 2020) (allegations sufficient to state claims based on "deliberate indifference to serious medical needs" are also sufficient to state a claim for negligence).

Accordingly, the Court grants in part and denies in part CHP's motion to dismiss CHP and the Doe Medical Provider defendants from Counts 7–9 for negligence and wrongful death.   Specifically, the Court dismisses all but one of the Doe Medical Provider defendants from the negligence and wrongful death claims, and dismisses CHP from the negligence and wrongful death claims to the extent those claims are based on a theory of respondeat superior liability.   The Court otherwise denies the motion as to the negligence and wrongful death claims.   Because amendment would not be futile, the Court dismisses these claims with leave to amend.   *See Intri-Plex*, 499 F.3d at 1056.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION AND ORDER

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant CHP's motion to dismiss CHP and the Doe Medical Provider defendants from the FAC.  The Court **ORDERS** as follows:

(1)  **Counts 1–2**:  The Court **GRANTS** the motion to dismiss Doe Medical Providers 3–6 from the Section 1983 individual capacity claims, and **DENIES** the motion to dismiss Doe Medical Provider 2.

(2)  **Counts 3–4**: The Court **GRANTS IN PART** the motion to dismiss CHP from the Section 1983 *Monell* claims to the extent the claims rely on an official ratification theory of liability, and **DENIES** the motion otherwise.

(3)  **Count 5**:  The Court **GRANTS** the motion to dismiss Doe Medical Providers 3–6 from the Bane Act claim, **GRANTS IN PART** the motion to dismiss CHP to the extent the claim relies on a respondeat superior theory of liability, and otherwise **DENIES** the motion to dismiss Doe Medical Provider 2 and CHP.

(4)  **Count 6**:  The Court **GRANTS** the motion to dismiss CHP and Doe Medical Providers 2–6 from the California Government Code § 845.6 claim.

(5)  **Counts 7–9**: The Court **GRANTS** the motion to dismiss Doe Medical Providers 3–6 from the negligence and wrongful death claims, **GRANTS IN PART** the motion to dismiss CHP to the extent the claims rely on a respondeat superior theory of liability, and otherwise **DENIES** the motion to dismiss Doe Medical Provider 2 and CHP.

Within fourteen (14) days of the date of this Order, Plaintiffs may file a second amended complaint which cures the pleading deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated:  February 8, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court