UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF WILLIAM HAYDEN SCHUCK, by and through his successors in-interest Sabrina Schuck and Timothy Schuck; et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO; et al.,

Defendants.

Case No.:  23-cv-785-DMS-AHG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS DEFENDANTS CORRECTIONAL HEALTHCARE PARTNERS AND NICHOLAS KAHL FROM SECOND AMENDED COMPLAINT (ECF NO. 67)**

Pending before the Court is Defendants Correctional Healthcare Partners ("CHP") and Nurse Practitioner Nicholas Kahl's ("Kahl") motion to dismiss Plaintiffs' Second Amended Complaint ("SAC," ECF No. 58) under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 67.)  Following the death of William Hayden Schuck ("Schuck") in San Diego County Central Jail the morning of March 16, 2022, Schuck's parents, Sabrina and Timothy Schuck, on behalf of Schuck's Estate and in their individual capacities as Schuck's next of kin, brought several claims against the County of San Diego ("the County"), CHP, Kahl, and various county employees alleging constitutional violations under 42 U.S.C. § 1983 and the California Bane Act (Cal. Gov't Code § 52.1), and various state tort law claims including negligence and wrongful death.  Plaintiffs filed a response

1

in opposition (ECF No. 69) to which CHP and Kahl replied (ECF No. 70).  For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.

## I.   BACKGROUND

### A. Factual Allegations

The background of this case is set forth in detail in the Court's previous Order dated February 8, 2024 (ECF No. 53).  *See Estate of Schuck ex rel. Schuck v. County of San Diego* (*Estate of Schuck I*), No. 23-CV-785-DMS-AHG, 2024 WL 500711, at *1–4 (S.D. Cal. Feb. 8, 2024).  The SAC adds Kahl as a named defendant and alleges Kahl was, at all relevant times, a CHP employee contracted by the San Diego Sheriff's Department in the Medical Services Division at the San Diego County Jail.  (SAC ¶ 27.)  On March 15, 2022, four days after Schuck's hospitalization at UCSD, Kahl allegedly reviewed the "After Visit Summary" and requested Schuck's complete record from UCSD including all physician notes.  (*Id.* ¶ 95.)  Plaintiffs allege that Kahl "should have reviewed [Schuck's] hospital records as soon as they were scanned into the system as part of the screening process," and that "[b]ased on [Schuck's] medical records, Kahl should have known … of [Schuck's] serious medical issues and failed to … summon medical case." (*Id.* ¶¶ 96–97.)  There are no material changes between the SAC and the First Amended Complaint ("FAC") regarding CHP's liability, except that the SAC omits the allegation that "physicians employed by CHP knew or should have known of [Schuck's] symptoms during the days leading up to his death and could have and should have intervened to provide life-saving medical care," (FAC ¶ 153, ECF No. 25), the *Monell* claims in Counts 3 and 4 no longer contain an official ratification theory of liability, and Doe Medical Provider 2 (mental health provider) is omitted.

### B. Claims

Plaintiffs Sabrina and Timothy Schuck, parents of the decedent, initiated this action on April 28, 2023, and filed the FAC on June 1, 2023.  On February 8, 2024, the Court issued an order granting in part and denying in part Defendant CHP's motion to dismiss and granting leave to amend.  (ECF No. 53.)  Plaintiffs filed their SAC on March 14, 2024,

23-cv-785-DMS-AHG

which alleges nine claims (eight of which are against CHP or Kahl), as follows:

(1) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's Estate, against various County employees and Kahl.  (SAC ¶¶ 201–210.)

(2) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, by Schuck's parents, against various County employees and Kahl.  (*Id.* ¶¶ 211–218.)

(3) 42 U.S.C. § 1983 (*Monell*) for violation of the Fourteenth Amendment, by Schuck's Estate, against the County and CHP.  (*Id.* ¶¶ 219–235.)

(4) 42 U.S.C. § 1983 (*Monell*) for violation of the Fourteenth Amendment, by Schuck's parents, against the County and CHP.  (*Id.* ¶¶ 236–241.)

(5) California Government Code § 52.1 (Bane Act), by Schuck's Estate, against the County, County employees, CHP, and Kahl.  (*Id.* ¶¶ 242–250.)

(6) California Government Code § 845.6 for failure to summon medical care, by Schuck's Estate, against the County and County employees.[1]  (*Id.* ¶¶ 251–261.)

(7) Negligence, by Schuck's Estate, against the County, County employees, CHP, and Kahl.  (*Id.* ¶¶ 262–273.)

(8) Negligent training and supervision, by Schuck's Estate, against the County, certain County employees, CHP, and Kahl.  (*Id.* ¶¶ 274–285.)

(9) Wrongful death, by Schuck's parents, against the County, County employees, CHP, and Kahl.  (*Id.* ¶¶ 286–294.)

On April 25, 2024, a second informal telephonic status conference was held with the undersigned district judge. (*See* ECF No. 66.)  Defendants CHP and Kahl filed the second motion to dismiss on May 3, 2024. ("Defs.' Mot.," ECF No. 67.)  Plaintiffs filed a response in opposition on June 7, 2024. ("Pls.' Opp'n," ECF No. 69.)  On June 21, 2024, Defendants filed a reply. ("Defs.' Reply," ECF No. 70.)  The Court took the matter under submission without oral argument, *see* S.D. Cal. Civ. L.R. 7.1(d)(1), on June 28, 2024.  (ECF No. 73.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss

---

[1] The SAC makes a single fleeting reference to "Kahl" in this claim.  (*See* SAC ¶ 253.)  This reference appears inadvertent, and Defendant's motion does not address it.

3

on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged" her "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III. DISCUSSION

For the following reasons, the Court grants Defendant Kahl's motion to dismiss. Plaintiffs have not plausibly alleged that the records Kahl viewed contained enough information to put Kahl on notice of Schuck's serious medical conditions or that Kahl ever viewed (or had access to) Schuck's jail medical records which could have put Kahl on notice of Schuck's serious medical conditions. Similarly, the Court grants in part Defendant CHP's motion to the extent that Plaintiffs' claims rely on a respondeat superior theory of liability premised on Kahl's actions as a CHP employee. CHP's motion is otherwise denied as the allegations against CHP in the SAC are materially

4

indistinguishable from those in the FAC.

**A. Counts 1–2: Section 1983 Individual Capacity Claims**

Plaintiffs allege that Kahl viewed a medical record from UCSD called the "After Visit Summary" four days after Schuck's hospitalization. (SAC at ¶¶ 95–96.) Plaintiffs allege that from reading the After Visit Summary, Kahl "should have known or did know of Hayden's serious medical issues and failed to administer treatment or summon medical care." (*Id.* at ¶ 97.) Defendants disagree and argue that the limited information available to Kahl was insufficient to put Kahl on notice. (Defs.' Mot. at 7.) The Court concludes Plaintiffs have not sufficiently alleged that Kahl acted with deliberate indifference to Schuck's serious medical condition in violation of the Fourteenth Amendment.

1. Objective Deliberate Indifference Standard

"Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). For pretrial detainees, this right arises under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). The Ninth Circuit applies an "objective deliberate indifference" standard to Fourteenth Amendment claims alleging a pretrial detainee received deficient medical care. *Gordon v. County of Orange* (*Gordon I*), 888 F.3d 1118, 1124–25 (9th Cir. 2018). Under this standard, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

5

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125) (alteration in original). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon I*, 888 F.3d at 1125).

2. Analysis

Plaintiffs do not sufficiently plead that Kahl acted with deliberate indifference and in reckless disregard to Schuck's health. Plaintiffs allege:

95.     On information and belief, on March 15, 2022, four days after Hayden's hospitalization at UCSD, Defendant Nicholas Kahl, NP reviewed the "After Visit Summary" medical record from UCSD that was scanned by one of the County's medical personnel (Doe Medical Provider 3). After reviewing the document, he immediately requested that nursing staff obtain the full ER records, including all physician notes.

….

97.     Based on Hayden's medical records, Kahl should have known or did know of Hayden's serious medical issues and failed to administer treatment or summon medical care.

(SAC ¶¶ 95, 97.) However, Plaintiffs do not allege the content of the After Visit Summary or explain why it should have put Kahl on notice of Schuck's serious medical issues. Without such allegations, the Court is not in a position to assess whether Kahl's actions after reading the After Visit Summary could plausibly have been "objectively unreasonable" in violation of the Fourteenth Amendment. *Sandoval*, 985 F.3d at 669.

Plaintiffs also never plainly allege that Kahl viewed Schuck's jail medical records or even had access to jail medical records. Plaintiffs argue in their Opposition that "Plaintiffs detail how [Schuck] exhibited serious symptoms of medical distress, that there were information-sharing systems in place at the jail, and that [Schuck's] symptoms were

6

recorded in his medical file for other medical services personnel, including NP Kahl, to see and respond to." (Pls.' Opp'n at 12, citing SAC ¶¶ 36–134, 154.) Plaintiffs explain that allegations in the SAC "refer to the fact that there are information-sharing systems in place which allow for the input and sharing of information by both deputies and medical service providers" and therefore, it can be inferred that Kahl was aware "either actually or constructively" of Schuck's symptoms of medical distress. (Pls.' Opp'n at 6.) In support of their assertion that Kahl and other CHP employees had knowledge of Schuck's medical condition, Plaintiffs refer to the following allegations in the SAC: Paragraph 154 (jail staff must conduct safety checks "at least once every 60-minute period and the intervals must vary and be logged properly into the jail information system ('JIMS')"), Paragraph 87 (nurse who performed a chest x-ray on Schuck on March 12, 2022, "recorded no notes" regarding any medical assessment beyond the chest x-ray), and Paragraphs 115–18 (Nurse Lymburn "failed to contemporaneously record and enter her notes" from her medical visit), among others. These allegations do not plausibly demonstrate that Kahl knew or should have known that Schuck was in dire need of medical care. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055 (court not required to accept unwarranted deduction of fact as true). Plaintiffs offer no specific allegations about the jail information system (occasionally referenced in the SAC as "JIMS"), how jail medical records were kept, or who had access to such records. The SAC therefore does not plausibly show that the acts (or omissions) Kahl took in response to seeing the After Visit Summary constituted "unnecessary and wanton infliction of pain" or was "repugnant to the conscience of mankind." *Gamble*, 429 U.S. at 105–06.

Accordingly, the Court grants the motion to dismiss Kahl from the first and second counts. Because the Court finds that the deficiencies identified can be cured, this dismissal is with leave to amend. *See Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment.")

/ / /

7

**B. Counts 3–4: Section 1983 *Monell* Claims**

There are no significant changes between the FAC and SAC regarding the *Monell* claims. The Court previously concluded that Plaintiffs had stated a *Monell* claim against CHP based on a longstanding practices and customs theory and a failure-to-train theory. *Estate of Schuck I*, 2024 WL 500711, at *9–11. The Court concludes the same again.

Defendants argue that "Plaintiffs have not causally connected" CHP's allegedly "deficient policies or customs to Schuck's death" because "[u]nlike the allegations in the FAC …, Plaintiffs no longer allege that various unknown 'physicians employed by CHP knew or should have known of [Schuck]'s symptoms during the days leading up to his death and could have and should have intervened to provide life-saving medical care.'" (Pls.' Opp'n at 11, quoting FAC ¶ 153.) But that allegation was not dispositive. Regarding the longstanding practices and customs theory, the Court explained:

> It is enough here that Plaintiffs allege (1) that at the time of Schuck's death, CHP had a contract with the County and was responsible for providing medical services to detainees in the County Jail, and (2) that despite this responsibility, CHP's practices demonstrated deliberate indifference to detainees' right to adequate medical care. This is sufficient to show at the pleadings stage that CHP's longstanding "failure[s] to implement procedural safeguards to prevent constitutional violations," *Tsao* [*v. Desert Palace, Inc.*, 698 F.3d 1128, 1143–44 (9th Cir. 2012)], were the "moving force" behind Schuck's death, *Monell* [*v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)].

*Estate of Schuck I*, 2024 WL 500711, at *9. Nothing in the SAC changes this reasoning. And regarding the failure-to-train theory, Plaintiffs have alleged that CHP is liable for Schuck's death because Schuck's death was the result of, among other things, CHP's

> failure to train [its] employees, contractors, and agents to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and how to summon and provide adequate medical care when necessary.

(SAC ¶ 225.) As the Court explained previously, Plaintiffs have plausibly alleged that "'the constitutional injury would not have resulted' if CHP had properly trained jail

8

medical staff." *Estate of Schuck I*, 2024 WL 500711, at *10 (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021)).

Plaintiffs plausibly allege *Monell* claims against CHP based on a longstanding practices theory and a failure-to-train theory. Accordingly, the Court denies the motion to dismiss CHP from Counts 3–4.

**C. Count 5: Violation of California Government Code § 52.1 (Bane Act)**

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791–92 (2017) (quoting Cal. Civ. Code § 52.1). Violations of federal and California constitutional and statutory rights are all cognizable under the Bane Act. *See* Cal. Civ. Code § 52.1(b) (a violation occurs when a defendant "interfere[s] ... with the exercise or enjoyment ... of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"). The Ninth Circuit has held "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). The specific intent requirement "is satisfied where the defendant ... acted with '[r]eckless disregard of the right at issue.'" *Estate of Serna v. County of San Diego*, No. 20-cv-2096-LAB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal. App. 5th at 804) (alteration in original).

In the SAC, Plaintiffs fail to state a Bane Act claim against Defendant Kahl but continue to sufficiently allege a Bane Act claim against Defendant CHP. This Court previously held that when allegations against a defendant are insufficient to show reckless disregard in violation of a plaintiff's Fourteenth Amendment right to adequate health care under Section 1983, such allegations are also insufficient under the Bane Act. *See Estate*

*of Schuck I*, 2024 WL 500711, at \*12 ("However, … Plaintiffs have failed to state a Bane Act claim against any other Doe Medical Provider because they have not shown that any other Doe Medical Provider acted with reckless disregard to Schuck's right to adequate medical care.").  Consistent with this holding, the Court concludes that Plaintiffs have failed to state a Bane Act claim against Kahl in the SAC because, as explained above, Plaintiffs have not plausibly alleged that Kahl's actions were objectively unreasonable and deliberately indifferent to Schuck's right to adequate medical care.  In addition, although CHP may be held liable under the Bane Act for acts of its employees, *see Gant v. County of Los Angeles*, 772 F.3d 608, 623 (9th Cir. 2014) (citing Cal. Gov't Code § 815.2(a)) (stating "[u]nder California law, public entities are liable for actions of their employees within the scope of employment," including Bane Act claims), Plaintiffs again have failed to state a Bane Act claim against CHP based on respondeat superior liability because "Plaintiffs have not plausibly alleged that any CHP employee, individually, is liable for violating the Bane Act." *Estate of Schuck I*, 2024 WL 500711, at \*13.  Kahl is the only CHP employee alleged to be liable for Schuck's death, but as explained, that claim is insufficiently pled.

However, consistent with the Court's previous holding, Plaintiffs do independently state a Bane Act claim against CHP based on the same Fourteenth Amendment violations underlying the *Monell* claims discussed above.  *See M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 900–01 (N.D. Cal. 2013) (plaintiffs stated a Bane Act claim against a prison health services corporation based on the same allegations of deliberately indifferent practices that sufficiently stated a *Monell* claim).

Accordingly, the Court grants the motion to dismiss Kahl from Count 5, and grants in part the motion to dismiss CHP from Count 5 to the extent the Bane Act claim is based on respondeat superior liability.  Dismissal is granted with leave to amend as the deficiencies may be curable. *See Intri-Plex Techs.*, 499 F.3d at 1056.

**D. Counts 7–9: Negligence and Wrongful Death**

To state a negligence claim under California law, a plaintiff must allege (1) a legal

10

23-cv-785-DMS-AHG

duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). The SAC falls short of plausibly alleging that Kahl breached a duty of care owed to Schuck because, as explained above, Plaintiffs do not allege the contents of the After Visit Summary or that Kahl viewed or had access to Schuck's jail medical records. The allegations against Kahl are too conclusory to state a negligence claim.[2]  Similarly, Plaintiffs fail to state a negligence claim against CHP based on respondeat superior liability because Plaintiffs do not sufficiently allege the involvement of Kahl or any CHP employee.

However, Plaintiffs continue to adequately allege a negligence claim against CHP based on a negligent training and supervision theory. As the Court previously explained:

> Plaintiffs' negligent training and supervision theory is based on the same allegations giving rise to their *Monell* claims against CHP for its alleged failure to adequately train jail medical staff. As discussed above, Plaintiffs adequately alleged those claims. For the same reasons, the Court finds that Plaintiffs sufficiently allege a negligence claim based on a negligent training and supervision theory. *See Estate of Silva v. City of San Diego*, No. 18-cv-2282-L, 2020 WL 6946011, at *21 (S.D. Cal. Nov. 25, 2020) (allegations sufficient to state claims based on "deliberate indifference to serious medical needs" are also sufficient to state a claim for negligence).

*Estate of Schuck I*, 2024 WL 500711, at *15. The same is true here.

Accordingly, the Court grants the motion to dismiss Kahl from the negligence claims in Counts 7 and 9. The Court grants in part the motion to dismiss CHP from the negligence claims in Counts 7 and 9 to the extent they rely on a respondeat superior theory of liability, and otherwise denies the motion to dismiss CHP from the negligence claim based on negligent training and supervision in Counts 8–9. Because amendment would not be futile, the Court dismisses these claims with leave to amend. *See Intri-Plex*, 499 F.3d at 1056.

/ / /

---

[2] Other than incorporating by reference the allegations in the preceding paragraphs (SAC ¶ 262), Count 7 of the SAC includes no specific allegations pertaining to Defendant Kahl.

11

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss CHP and Defendant Kahl from the SAC.  The court **ORDERS** as follows:

(1) **Counts 1-2**: The Court **GRANTS** the motion to dismiss Kahl from the Section 1983 individual capacity claims.

(2) **Counts 3-4**: The Court **DENIES** the motion to dismiss CHP from the Section 1983 *Monell* claims.

(3) **Count 5**: The Court **GRANTS** the motion to dismiss Kahl from the Bane Act claim; **GRANTS IN PART** the motion to dismiss CHP to the extent the claim relies on a respondeat superior theory of liability; and otherwise **DENIES** the motion to dismiss CHP.

(4) **Counts 7–9:** The Court **GRANTS** the motion to dismiss Kahl from the negligence claims in Counts 7 and 9; **GRANTS IN PART** the motion to dismiss CHP from the negligence claims in Counts 7 and 9 to the extent they rely on a respondeat superior theory of liability; and **DENIES** the motion to dismiss CHP from the negligence claim based on negligent training and supervision in Counts 8–9.

Because the Court finds that amendment would not be futile, the Court grants leave to amend.  Consistent with the schedule set in the Second Amended Scheduling Order (ECF No. 72), Plaintiffs may file a third amended complaint on or before **August 9, 2024,** which cures the pleading deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated:  July 19, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court