# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF WILLIAM HAYDEN SCHUCK, by and through his successors in-interest Sabrina Schuck and Timothy Schuck; et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO; et al., <br><br> Defendants. | Case No.: 23-cv-785-DMS-AHG <br><br> **ORDER DENYING DEFENDANT KAHL'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |

Pending before the Court is Defendant Nicholas Kahl's Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC") under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 87). Following the death of William Hayden Schuck ("Schuck") in San Diego County Central Jail on March 16, 2022, Schuck's parents, Sabrina and Timothy Schuck, on behalf of Schuck's Estate and in their individual capacities as Schuck's next of kin, sued the County of San Diego ("the County"), Correctional Healthcare Partners ("CHP"), Kahl, and various county employees for constitutional and state-law violations. Plaintiffs filed an Opposition, (ECF No. 89), and Defendant filed a Reply, (ECF No. 93). For the following reasons, the Court **DENIES** Defendant Kahl's Motion.

# I. BACKGROUND

## A. Factual Allegations

The background of this case is set forth in detail in the Court's previous Order dated February 8, 2024. (ECF No. 53). *See Estate of Schuck ex rel. Schuck v. County of San Diego* (*Estate of Schuck I*), 2024 WL 500711, at *1–4 (S.D. Cal. Feb. 8, 2024). The Second Amended Complaint ("SAC") added Kahl as a named defendant and alleged Kahl was, at all relevant times, a CHP employee contracted by the San Diego Sheriff's Department in the Medical Services Division at the San Diego County Jail. (SAC ¶ 27). On March 15, 2022, four days after Schuck's hospitalization at UCSD, Kahl allegedly reviewed the "After Visit Summary" and requested Schuck's complete record from UCSD including all physician notes. (*Id.* at ¶ 95).

The TAC supplements the SAC's allegations. Namely, Plaintiffs allege that the "After Visit Summary" stated (1) Schuck "had been in a motor vehicle accident"; (2) Schuck "had relatively high blood pressure of 142/102"; (3) Schuck "had a relatively high pulse of 95"; (4) Shuck was discharged against medical advice ("AMA"); and (5) there were "[n]o obvious signs of trauma or illness but *occult injury is possible given mechanism*." (TAC ¶ 128) (alteration and emphasis in original). Plaintiffs allege Defendant Kahl reviewed the "After Visit Summary" as "part of a 'medical chart review'", which "required" viewing all of Schuck's medical records in the electronic filing system TechCare. (*Id.* at ¶ 131). As a result, Defendant Kahl "should have reviewed" medical records describing Schuck as having "difficulty . . . following direction", being "disorganized" and "non sensical", appearing "disheveled" with "dry blood" on his t-shirt and "lower extremities", and having "concerning" symptoms that "worsened in custody". (*Id.* at ¶ 133–34). He thus allegedly "knew of [Schuck's] serious medical issues and failed to administer treatment or summon medical care." (*Id.* at ¶ 137).

## B. Claims

Plaintiffs initiated this action on April 28, 2023. (ECF No. 1). They filed the First Amended Complaint ("FAC") on June 1, 2023. (ECF No. 25). On February 8, 2024, the

Court granted in part and denied in part Defendant CHP's Motion to Dismiss with leave to amend. (ECF No. 53). Plaintiffs filed their SAC on March 14, 2024. (ECF No. 58). On July 19, 2024, the Court granted in part and denied in part Defendants CHP and Kahl's Motion to Dismiss with leave to amend. (ECF No. 74). At issue now is Plaintiffs' TAC, filed on August 12, 2024. (ECF No. 78). It alleges five claims against Defendant Kahl:

(1) **Count 1:** 42 U.S.C. § 1983 for violation of the Fourteenth Amendment by Schuck's Estate. (TAC ¶¶ 234–43).

(2) **Count 2:** 42 U.S.C. § 1983 for violation of the Fourteenth Amendment by Schuck's parents. (*Id.* at ¶¶ 244–51).

(3) **Count 5:** California Civil Code § 52.1 (Bane Act) by Schuck's Estate. (*Id.* at ¶¶ 275–83).

(4) **Count 7:** Negligence by Schuck's Estate. (*Id.* at ¶¶ 295–306).

(5) **Count 9:** Wrongful death by Schuck's parents. (*Id.* at ¶¶ 319–27).

On September 16, 2024, an informal telephonic status conference was held. (*See* ECF No. 86). Defendant Kahl filed the third Motion to Dismiss on September 30, 2024. (Defendant's Motion ("Def.'s Mot."), ECF No. 87). Plaintiffs filed their Opposition on October 25, 2024. (Plaintiffs' Opposition ("Opp'n"), ECF No. 89). On November 8, 2024, Defendant Kahl filed his Reply. (ECF No. 93).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted". Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiffs have "not nudged" their "claims across the line from conceivable to plausible," the TAC "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III. DISCUSSION

#### A. Extrinsic Evidence

Plaintiffs oppose Defendant Kahl's reference to extrinsic evidence in his Motion. When disputing Plaintiffs' § 1983 claims, Defendant Kahl supports his argument with testimony by an emergency department physician and facts not in the TAC, namely that the doctor who drafted Schuck's "After Visit Summary" and examined his vitals "did not issue any new orders as a result of those vitals or indicate any concern related thereto". (Def.'s Mot. 12–13). The Court agrees. "Generally, district courts may not consider [outside] material . . . when assessing the sufficiency of a complaint under [Federal] Rule [of Civil Procedure] 12(b)(6)". *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Judicial notice is inapplicable because the facts are "subject to reasonable dispute". Fed. R. Evid. 201(b). The facts and testimony only serve to contradict Plaintiffs' allegations, which the Court is required to accept as true. *Iqbal*, 556 U.S. at 678. Therefore, the Court will not consider them when assessing the sufficiency of Plaintiffs' claims.

#### B. Counts 1–2: § 1983 Claims

According to Plaintiffs, Defendant Kahl viewed Schuck's "After Visit Summary" as

part of a mandatory review of all of Schuck's medical records. (TAC ¶¶ 127, 131). Plaintiffs contend that, from these records and his medical training, Defendant Kahl "should have known . . . that the circumstances warranted *immediate* intervention." (*Id.* at ¶ 136) (emphasis in original). Defendant Kahl argues that the limited information available to Defendant Kahl was insufficient to put him on notice that Schuck was at a substantial risk of suffering serious harm and that he acted reasonably under the circumstances. (Def.'s Mot. 12–15).

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). For pretrial detainees, this right arises under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). The Ninth Circuit applies an "objective deliberate indifference" standard to Fourteenth Amendment claims alleging a pretrial detainee received deficient medical care. *Gordon v. County of Orange* (*Gordon I*), 888 F.3d 1118, 1124–25 (9th Cir. 2018). Under this standard, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125) (alteration in original). At issue are the second and third prongs of the *Gordon* test. (Def.'s Mot. 12–15).

### 1. Substantial Risk of Serious Harm

There is a "substantial risk of . . . serious harm" if there is a "serious medical need, such that a failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gordon I*, 888 F.3d at 1125; *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (internal quotation marks and citation omitted). This includes the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)). Conditions causing death are serious medical needs. *Id.* ("Russell's aortic dissection was indeed a 'serious' medical need, as it resulted in his death."). Symptoms indicative of serious medical needs include "hyperventilation, vomiting, dry heaving, difficulty breathing, severe chest pain . . . , numbness . . . , and tachycardia". *Id.*

Applying *Russell*, Schuck was at a "substantial risk of . . . serious harm" because his condition resulted in his death. *Gordon I*, 888 F.3d at 1125; *Russell*, 31 F.4th at 739. Further, the combination of symptoms listed in Schuck's "After Visit Summary" and other records—which Defendant Kahl was allegedly required to read—were "worthy of comment or treatment" and "affect[ed] [Schuck's] daily activities". *Id.* (quoting *Colwell*, 763 F.3d at 1066); (TAC ¶ 131). According to Schuck's records, Schuck had blood pressure of 142/102, one category below a "hypertensive crisis"; might have had a hidden injury because he refused medical evaluation at the hospital; and appeared disoriented and disorganized. (*Id.* at ¶¶ 128, 133). Especially considering his deteriorating condition, (*id.* at ¶ 134), these symptoms indicated that Schuck was at risk of serious harm. Plaintiffs thus sufficiently allege facts supporting the second element of the *Gordon* test.

2. Reasonableness

"To satisfy the third element [of *Gordon*], the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125). "A defendant can be liable even if he did not actually draw the inference that the plaintiff was at a substantial risk of suffering serious harm, so long as a reasonable official in his circumstances would have drawn that inference." *Russell*, 31 F.4th at 739. Objective unreasonableness may be found when healthcare employees fail to administer CPR to an unconscious patient or fail to call paramedics when an inmate is having a seizure. *Id.* at 741 (citing *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1083 (9th Cir. 2013) and *Sandoval*, 985 F.3d at 679).

At this stage in the litigation, the Court considers it plausible that "the care rendered [was] inadequate to the circumstances [allegedly] known to [Defendant Kahl]". *Id.* Accepting Plaintiffs' allegations as true, Defendant Kahl either knew or should have known that Schuck was at risk of an injury from a motor vehicle accident and was exhibiting strange symptoms. (TAC ¶¶ 128, 133). With this information, he should have, at a minimum, examined Schuck or requested that someone else do so. *Russell*, 31 F.4th at 742 (finding objective unreasonableness because the physician "[n]ever physically examine[d] Russell, even though he lived only fifteen minutes away"). Further, Schuck's records allegedly stated that Schuck's condition "worsened in custody", which increased the likelihood that he had a hidden injury. *Id.* (finding objective unreasonableness because Russell "steadily grew worse instead of better"); (TAC ¶¶ 128, 134) (alleging that "After Visit Summary" stated hidden injury was "possible"). A reasonable nurse practitioner in Defendant Kahl's position would have taken *some* action. "[T]aking the facts most favorably to [Plaintiffs], [Defendant Kahl] could not have reasonably believed . . . that he could provide constitutionally adequate care without even examining a patient with [Schuck's] symptoms". *Russell*, 31 F.4th at 743. As a result, Plaintiffs satisfy the third

7

element of *Gordon*. The Court **DENIES** Defendant Kahl's Motion to Dismiss Plaintiffs' § 1983 claims.

### C. Count 5: Violation of California Civil Code § 52.1 (Bane Act)

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation[,] or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766, 791–92 (2017) (quoting Cal. Civ. Code § 52.1). Violations of federal and California constitutional and statutory rights are all cognizable under the Bane Act. *See* Cal. Civ. Code § 52.1(b) (a violation occurs when a defendant "interfere[s] . . . with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"). The Ninth Circuit has held "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *see also Estate of Serna v. County of San Diego*, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (noting that "the act [amounting] to a deprivation of a constitutional right may . . . satisfy th[e] ['threat, intimidation, or coercion'] element"). There is specific intent when "the defendant . . . acted with '[r]eckless disregard of the right at issue.'" *Id.* (quoting *Cornell*, 17 Cal.App.5th at 804) (alteration in original). As noted above, Plaintiffs have plausibly alleged that Defendant Kahl acted with reckless disregard to Schuck's right to adequate medical care under the Fourteenth Amendment. Accordingly, the Court **DENIES** the Motion to Dismiss Kahl from Plaintiffs' Bane Act claim.

### D. Counts 7 and 9: Negligence and Wrongful Death

To state a negligence claim under California law, a plaintiff must allege (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate

8

or legal cause of the resulting harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Deliberate indifference under the Fourteenth Amendment requires more than a showing of negligence. *Gordon I*, 888 F.3d at 1125; *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986) (holding that "mere lack of due care" by state official does not deprive individual of life, liberty, or property under Fourteenth Amendment). Because Plaintiffs have plausibly alleged deliberate indifference—and thus negligence—the Court **DENIES** Defendant Kahl's Motion to Dismiss these negligence-based causes of action.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Defendant Kahl's Motion to Dismiss Plaintiffs' TAC.

**IT IS SO ORDERED.**

Dated: November 20, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court