Timothy A. Scott (SBN 215074)
Lauren M. Mellano (SBN 306918)
Michelle C. Angeles (SBN 298883)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tscott@mckenziescott.com
lmellano@mckenziescott.com
mangeles@mckenziescott.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF WILLIAM HAYDEN SCHUCK, et al.;<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.<br>Defendants. | Case No.: 3:23-CV-00785-DMS-AHG<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST COUNTY FOR SPOLIATION OF EVIDENCE**<br><br>Date: June 27, 2025<br>Time: 1:30 p.m.<br>Judge: Dana M. Sabraw<br>Trial: November 3, 2025<br><br>[NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT] |

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................ 1

II. FACTS........................................................................................ 1

III. LAW ......................................................................................... 6

IV. DISCUSSION ........................................................................... 8

A. Rule 37(e) applies to the County's failure to preserve video evidence and permits the Court to impose sanctions............................................................ 8

1. . . Duty to Preserve 8

2. . . Failure to Take Reasonable Steps to Preserve 12

3. . . Cannot be Replaced by Other Discovery 13

B. The circumstances give rise to an inference of intentional spoliation, warranting sanctions under Rule 37(e)(2). ................................................ 15

1. . . Timing of Destruction 15

2. . . Affirmative Steps Taken to Destroy Evidence 16

3. . . Selective Preservation of Other Evidence 17

4. . . Other Considerations 18

5. . . Appropriate Sanctions 19

C. In the alternative, the Court should impose sanctions under Rule 37(e)(1) because Plaintiffs suffered prejudice as a result of the spoliation. .................... 20

1. . . Prejudice 20

2. . . Appropriate Sanctions 20

V. CONCLUSION........................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Bistrian v. Levi*
448 F. Supp. 3d 454 (E.D. Pa. 2020) ........ 8
*Bungie, Inc. v. AimJunkies.com*
No. 21-cv-0811, 2023 WL 7184427, at *8 (W.D. Wash. Nov. 1, 2023) ........ 16
*Colonies Partners, L.P. v. County of San Bernardino*
No. 18-420, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020) ........ 8, 15, 16
*Compass Bank v. Morris Cerullo World Evangelism*
104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) ........ 12
*Compass Bank v. Morris Cerullo World Evangelism*
104 F. Supp. 3d 1040, 1055 (S.D. Cal. 2015) ........ 9
*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) ........ 20
*Cottle-Banks v. Cox Commc'ns, Inc.*
No. 10CV2133-GPC-WVG, 2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013) ........ 9, 10
*Estate of Hill v. NaphCare*, Inc.
No. 20-cv-00410, 2022 WL 1464830, at *12 (E.D. Wash. May 9, 2022) ........ 18
*Estate of Moreno v. County of San Diego*
21cv1956-RBM-SBC, Doc. No. 179-1 ........ 18
*Gelazela v. Santa Ana Police Dep't*
2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024) ........ 7, 14
*Greer v. County of San Diego* 19-cv-00378-JO-DE ........ 18
*Hugler v. Sw. Fuel Mgmt., Inc.* No. 16CV4547FMOAGRX, 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017) ........ 14
*Jones v. Riot Hosp. Grp. LLC*
95 F.4th 730, 734-36 (9th Cir. 2024) ........ 7, 15, 17
*Jones v. Riot Hosp. Grp. LLC* 95 F.4th 730, 735 (9th Cir. 2024) ........ 17

*Lopez v. Santoyo*
No. 09-cv-00108-W-RBB, 2021 WL 5427957, at *7 (S.D. Cal. Nov. 7, 2012) ........................................................................................................ 12
*Morehead v. City of Oxnard* No. 21-cv-07689, 2023 WL 8143973, at *9 (C.D. Cal. Oct. 4, 2023)........................................................................ 14
*Musse v. King Cnty.*
No. C18-1736-JCC, 2021 WL 4709875, at *4 (W.D. Wash. Oct. 8, 2021)..... 17
*Phan v. Costco Wholesale Corp.*
No. 19-CV-05713-YGR, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020) ........................................................................................................ 15
*Scalia v. Cnty. of Kern*
658 F. Supp. 3d 809, 816 (E.D. Cal. 2023)........................................ 14, 15, 20

**Statutes**

Fed. R. Civ. P. 37............................................................................................ 7
Fed. R. Civ. P. 37(e). ................................................................................... 6, 8
Fed. R. Civ. Proc. 37(e)(2). ................................................................... 1, 7, 15
Rule 30(b)(6) ................................................................................................ 12
Rule 37(e) ................................................................................................. 8, 15
Rule 37(e)(1) .................................................................................................. 7

## I. INTRODUCTION

Plaintiffs move the Court to issue sanctions against the County of San Diego for spoliation of evidence. Specifically, the County of San Diego destroyed 57 hours of surveillance video relating to Hayden's time in the County's custody, including of the areas where he was housed. The County's destruction of such evidence violated its own retention schedules as well as its duty to preserve records in anticipation of litigation. Based on circumstantial evidence, the County's destruction of these videos was intentional and warrants the imposition of terminating sanctions or a mandatory adverse inference instruction under Rule 37(e). *See* Fed. R. Civ. Proc. 37(e)(2). In the alternative, because Plaintiffs were prejudiced by the spoliation, Plaintiffs request the Court preclude the County from arguing that the jury can presume that its employees and contractors acted in accordance with Title 15, policies, and procedures during the period for which there is no video.

## II. FACTS

Hayden Schuck, 22 years old, was booked into the San Diego County Central Jail on the evening of March 10, 2022 and died in his cell on the morning of March 16, 2022. He was at the jail for between five and six days. After Hayden's death, his family desperately searched for information. On April 28, 2022, Plaintiffs sent preservation letters to the San Diego County Central Jail as well as the San Diego Sheriff's Department. Exhibit A, Preservation Letters. The preservation letters were broad, requesting any and all records relating to Hayden's time in custody and death, including all video of Hayden or "related" events. Ex. A. On September 15, 2022, Plaintiffs also sent a government claim to the County under the Tort Claims Act which stated in part that Hayden's health deteriorated over the days he was in jail and jail staff were on notice he needed medical care. Exhibit B, Tort Claim.

Nearly a year after Hayden died, on February 21, 2023, the County Medical Examiner completed the autopsy report and provided it to Plaintiffs. Two months

later, on April 28, 2023, Plaintiffs filed the instant lawsuit against the County for causes of action arising from Hayden's death. On August 2, 2023, Plaintiffs propounded a request for production of "All video or audio recordings, including surveillance video, depicting or relating to Plaintiff's incarceration and/or death at the County jail." In response, Defendant County provided surveillance video for the following time periods:

- March 10 at 21:05 (9:05 p.m.) to March 13 at 00:59 (12:59 a.m.)
- March 15 at 08:01 (8:01 a.m.) to March 16 at 09:26 (9:26 a.m.)

When Plaintiffs' counsel inquired as to the gap in the middle of the footage, County counsel stated "[n]o video exists from 3/13-3/14" because he believed the Sheriff's Department does not preserve video from every day of a detainee's incarceration.

On Mon, Apr 15, 2024 at 2:30 PM Inman, Steven <Steven.Inman@sdcounty.ca.gov> wrote:

> Hi Michelle,
>
> I am sorry. I just heard back from Sheriff's Legal last Friday and I was out of the office. They were checking a few more places. We actually show that we produced a lot of video from 3/15. Some are in filed labeled 3-18, but you will find video from 3/15 in Bates ranges CSD444-446, CSD511-528, and CSD463-504. I also see that we produced video from 3/10, 3/11, 3/12, & 3/16. No video exists from 3/13-3/14.
>
> My understanding is that when an in custody death occurs, the Sheriff's Department does not preserve video from every day of the detainee's incarceration (the burden would be far to great given many of the lengths of stays). Instead, the investigators from the Sheriff's Homicide unit gather and retain all footage that they believe could be pertinent to the death investigation. Additionally, Plaintiff was in a holding cell on 3/13 & 3/14, and stays in the holding cells are very transitive in nature—it is difficult to track who was in which holding cell.
>
> If you would still like to have the discovery conference, I have included my responses to the three questions below:

The County did not preserve video depicting Hayden's movements, cell, or area outside of his cell for the following period of approximately **two days and seven hours**:

- March 13 at 01:00 (1:00 a.m.) through March 15 at 08:00 (8:00 a.m.)

Hoping to determine how and why these two days of surveillance footage were not preserved of Hayden's short time in custody, Plaintiffs noticed a Federal

Rule of Civil Procedure 30(b)(6) deposition for the person most knowledgeable on the following topics:

> The process by which surveillance video footage from Hayden Schuck's incarceration at the Men's Central Jail was (or was not) collected and retained by County investigators, including:
>
> 1. What jail surveillance video was available between March 10, 2022 and March 16, 2022, when San Diego homicide detectives began their investigation of Hayden Schuck's in-custody death.
> 2. Which video and camera angles were downloaded and saved by the County after Hayden Schuck's death, and which ones were not.
> 3. If applicable, the reasons why the County did not preserve all available video and camera angles depicting Hayden Schuck prior to his death.
> 4. The identities of any persons involved in the decision to download or retain (or not to download or retain) any of the jail surveillance videos of Hayden Schuck that existed at the time of his death.
> 5. What written policies or procedures govern the retention of jail video after an in-custody death like Mr. Schuck's.

Exhibit C, Amended[1] Notice of Deposition. Plaintiffs also requested the deponent provide, in pertinent part, any "Any written policies or procedures pertaining to the retention of surveillance video, including guidelines on which specific videos or camera angles should be retained during an in-custody death investigation, and the process by which that should occur." Ex. C. While Plaintiffs sent the original notice on June 4, 2024, the deposition did not occur until October 11, 2024.

The County produced the Rule 30(b)(6) witness, Captain Derek Williamson. Capt. Williamson testified that, in preparing for the deposition, he learned that all surveillance video at the County jail should be preserved for two years pursuant to

[1] The only difference between the original notice and amended notice was the date of the deposition.

both the retention schedules promulgated by the County and applicable to all County entities as well as the schedule specific to the Sheriff's Department. Exhibit D, Williamson Deposition at 45:25-48:11. The Sheriff's Department retention schedule requires videos related to the building, as well as video pertaining to "incidents," be retained for two years. Ex. D at 49:25-50:15.

Williamson testified that the County does not follow these retention schedules and in fact, "there probably isn't a single deputy on the department that knows that this retention schedule exists[.]" Ex. D at 51:1-3. Rather than abide by the County-promulgated retention schedules, Williamson testified that the Sheriff's Department allows surveillance video to be automatically overwritten when the facility DVRs "start reaching the data retention threshold," which is happening sooner and sooner as time goes on. Ex. D at 41:24-42:21. At the time of the deposition, Williamson estimated footage was being overwritten at the Central Jail within "about nine months." Ex. D at 42:22-25. Williamson also testified that he is not aware of any policies or procedures, written or otherwise, regarding how to preserve evidence in response to an attorney's preservation request. Ex. D at 29:16-30:19; 32:1-8. The Sheriff's Department essentially only preserves what evidence Sheriff's Homicide Unit specifically asks for in a homicide investigation. Ex. D at 33-34. And the Department keeps no logs of who reviewed or downloaded what videos. Ex. D at 40:24-41:23. There also does not appear to be any clear protocol for how video is saved—it could be downloaded to the desktop of a computer, an administrative folder in the Central Jail's shared drive, or directly onto an external thumb drive or hard drive to be provided to Homicide. Ex. D. 41:6-23.

Regarding Hayden's case specifically, Williamson did not know who reviewed video from Hayden's time in custody, but assumes someone watched the videos—likely not in real-time, but fast-forwarded. Ex. D at 40. Williamson testified that he spoke with Deputy Hahn who would have been the "administrative

deputy" at the time.[2] Ex. D at 33:4-10. Hahn may have been the deputy responsible for "reviewing and downloading all video" for Sheriff's Homicide Unit in Hayden's case, but he has no recollection of it. Ex. D at 33-36. Hahn "walked [Williamson] through the thought process that he and his partners would typically take" in deciding whether to preserve video. Ex. D at 34:24-35:5. Williamson acknowledged that "in cases similar to this one," Sheriff's Homicide would make "extended request[s]" for video "not just of the incident itself but relevant video leading up to the incident." Ex. D at 33:4-10. Hahn said that if a detainee "wasn't on video, then we didn't necessarily have to pull the video, [b]ut if it was a blind spot, sometimes he or his partners would pull an extended amount of video just to show the level of activity – the safety checks continuing to occur in the area, nursing staff going back to the area to provide medication, deputies passing out meals stuff of that nature." Ex. D. at 34:21-35:5.

From March 10 to the evening of March 15, Hayden was in a holding cell on the second floor in a blind spot where the cell was just out of sight of the camera. *See* Ex. D 21:15-22. Not only was Hayden in a blind spot, he was in a cell in what deputies sometimes call "the back 40" because deputies "weren't allowed to use that to put people because historically, sometimes they would not know that they were back there." Exhibit E, Excerpt of Soderberg Deposition. Williamson described the area as one "that would only be used if [the jail] had run out of all of the remaining cells." Ex. D at 60:25-61:3. It was an area that would require a deputy to take "an extra route;" "it wasn't your normal circuitous route in a complete circle to walk and check on the security and safety of the floor." Ex. D. at 61:3-7.

Moreover, Williamson's assumption that all video *depicting Hayden* was preserved is belied by the fact that the County failed to preserve video from the

[2] It is unknown why Deputy Hahn would not have been designated as the person most knowledgeable.

second floor on the morning of March 15 when Hayden was taken out of his cell to the medical clinic. Deputy Holman and Corporal Gonzalez found Hayden that morning in a soiled cell, pantsless, covered in either food or feces, and talking to himself. They took him out of his cell to see Nurse DeGuzman. Video of them interacting with Hayden at the door of his cell and escorting him away from his cell on the second floor was not preserved. Rather, the video starts back up that morning at 8:01 a.m. in a different hallway. Moreover, Hayden was supposed to have Court on March 14, but allegedly refused. Because no video was preserved from that date, Plaintiffs have not been able to confirm whether this actually occurred or who interacted with Hayden that day, if anyone.

## III. LAW

Federal Rule of Civil Procedure 37(e) governs a party's failure to preserve electronically stored information (ESI) such as security camera footage. Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The Ninth Circuit recently interpreted the provisions of Rule 37(e) in *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734-36 (9th Cir. 2024). With respect to Rule 37(e)(1), the court stated that when ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve it, the ESI cannot be restored through additional discovery, and there is prejudice to the opposing party, a district court may order "measures no greater than necessary to cure the prejudice. *Id.* at 734-35. "But, if the court finds that an offending [party] 'acted with the intent to deprive another party of the information's use in the litigation,' dismissal [or default judgment] is authorized" *regardless of whether the opposing party suffered prejudice*. *Id.* at 736 ("In any event, Rule 37(e)(2) does not mention prejudice as a prerequisite to sanctions, including dismissal."). Prejudice was deliberately excluded as a prerequisite because "the finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

Regarding "intent to deprive," the Ninth Circuit interpreted this to mean "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735. But "[b]ecause intent can rarely be shown directly, a district court may consider *circumstantial evidence* in determining whether a party acted with the [requisite] intent[.]" *Id.* (emphasis added). "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.* "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *Gelazela v. Santa Ana Police Dep't*, No. SACV211126HDVDFM, 2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024)

(quoting *Colonies Partners, L.P. v. County of San Bernardino*, No. 18-420, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020) report and recommendation adopted, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) (internal quotation marks omitted)).

## IV. DISCUSSION

Based on the considerations of Rule 37(e) and relevant case law, the Court should conclude the County intentionally deprived Plaintiffs' of the deleted video evidence and issue terminating sanctions, or at minimum, a mandatory adverse inference jury instruction. Regardless of intent, because Plaintiffs suffered prejudice as a result of the spoliation, the Court should at minimum issue sanctions to address the prejudice, as discussed more fully below.

### A. Rule 37(e) applies to the County's failure to preserve video evidence and permits the Court to impose sanctions.

As an initial matter, Plaintiff can demonstrate that the circumstances warrant sanctions pursuant to Rule 37(e). Rule 37(e) governs situations where (1) there was a duty to preserve evidence, (2) a party failed to take reasonable steps to preserve that evidence, and (3) that evidence cannot be replaced with other types of available discovery. *See* Fed. R. Civ. P. 37(e).

*1. Duty to Preserve*

The County had a duty to preserve the surveillance video from Hayden Schuck's short time in custody from the evening of March 10, 2022 to the morning of March 15, 2022—roughly five to six days.

*a) The duty attached when Hayden died.*

The duty to preserve evidence regarding the circumstances of Hayden's death arose *the moment he died in custody*. *See Bistrian v. Levi*, 448 F. Supp. 3d 454 (E.D. Pa. 2020) ("A number of courts have found that government defendants reasonably should have anticipated litigation from the time an inmate was seriously injured or died in custody[.]"). "[T]he duty to preserve arises not only during

litigation, but also *extends to the period before litigation* when a party should reasonably know that evidence may be relevant to *anticipated* litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1055 (S.D. Cal. 2015) (emphasis added); *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10CV2133-GPC-WVG, 2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013) (the duty attaches "[a]s soon as a *potential* claim is identified") (emphasis added). Here, the County is well aware that litigation often ensues after someone dies in their custody and care.[3] In fact, the Sheriff's Critical Incident Review Board (CIRB), which includes the Sheriff's Legal Advisor, automatically conducts "a thorough investigation of every in-custody death."[4] And CIRB's specific focus "is to assess the department's civil exposure because of a given incident."[5] In other words, the County anticipates litigation when someone dies in their custody as a matter of course.

Even were the Court to find the duty to preserve did not attach at the time of Hayden's death, Plaintiffs mailed preservation letters to both the central jail as well

---

[3] In fact, the County paid $42 million dollars for jail-related incidents, including deaths, from 2016 to 2023 and in 2024, was still facing "a slew of other jail-death lawsuits." Dorian Hargrove, *San Diego County has paid $42 million for jail-related incidents since 2016*, CBS8 (May 6, 2024), https://www.cbs8.com/article/news/investigations/san-diego-county-has-paid-42-million-for-jail-incidents/509-754b66f2-6da7-44be-94c3-c2a9612c12b8; Jeff McDonald, *After record $15 million settlement, San Diego County still confronts a slew of other jail-death lawsuits*, The San Diego Union-Tribune (July 8, 2024), https://www.sandiegouniontribune.com/2024/07/07/after-record-15-million-settlement-san-diego-county-still-confronts-a-slew-of-other-jail-death-lawsuits/.

[4] Sheriff's Department Critical Incident Review Board In-Custody Death Information Release, https://www.sdsheriff.gov/home/showpublisheddocument/7350/638324515147562192.

[5] *Id.*

as the Sheriff's Department on April 28, 2022—six weeks after Hayden's death.[6] Ex. A. Accordingly, the County was on notice within six weeks of Hayden's death that his family was represented by attorneys and their requests for preservation. The duty to preserve attached at the very latest at that time.

*b) The County knew or should have known surveillance video was relevant to potential claims.*

The duty to preserve the video footage was self-evident and even if not, Plaintiffs' preservation letters put the County on actual notice. Once the duty to preserve attaches, "a litigant is under a duty to preserve evidence which it *knows or reasonably should know is relevant* to the action." *Cottle-Banks*, 2013 WL 2244333, at *13 (citation omitted) (emphasis added). It is self-evident that surveillance video, particularly of the days leading up to someone's death, is relevant to in-custody death cases such as Hayden's—even if that video is of the hallway outside of a decedent's cell. That is in large part because the County has been accused, repeatedly, in in-custody death cases of failing to properly conduct Title 15 safety checks on detainees. In fact, when the California State Auditor looked into the high number of deaths at the County jails, one of the audit report's "key findings" was that "[d]etention staff performed insufficient safety checks," which likely contributed to the deaths.[7] And surveillance videos depicting such checks is the only reliable way of analyzing their timing and adequacy. Surveillance footage is also the only reliable way of determining whether and when a detainee received medication or meals. The County's own 30(b)(6)

---

[6] Plaintiffs also submitted a timely Tort Claims Act claim within six months of Hayden's death.

[7] Auditor of the State of California, *San Diego County Sheriff's Department: It Has Failed to Adequately Prevent and Respond to the Deaths of Individuals in Its Custody*, February 3, 2022, at p. 19, Figure 5, https://information.auditor.ca.gov/pdfs/reports/2021-109.pdf and corresponding "Fact Sheet" at https://information.auditor.ca.gov/pdfs/factsheets/2021-109.pdf.

witnessed acknowledged the importance of surveillance video in an area where a cell is in a blind spot for these same reasons. Ex. D. at 34:21-35:5. Whether Hayden received a meal is particularly important considering his low BMI and that he was severely dehydrated at the time of his death. In fact, Plaintiff's expert in forensic pathology concluded dehydration was the cause of his death. Such videos may also shed light on the wellbeing of a detainee if they can be seen in the hall or in a cell. They may also help identify other detainees or jail staff who are potential witnesses or potential defendants. Moreover, the California State Auditor's report finding deficient safety checks was released on February 3, 2022—a month prior to Hayden's death. Any argument that the County did not know, or could not reasonably foresee, that such video was relevant is unfounded.

Additionally, even if the County could plausibly argue it did not know and could not foresee that surveillance video of the area outside Hayden's cell would be relevant, Plaintiffs' preservation letters are sufficient to provide actual notice. The preservation letters state, in pertinent part:

> We respectfully request that you take any necessary steps to preserve **all evidence relating to** his arrest on March 10, **his time in-custody**, his death, and **potential witnesses with information about his** arrest, **time in-custody**, and death. This request **includes, but is not limited to, all videos** and photographs **of Mr. Schuck or related events**, email correspondence, and any other writing or communication in your possession regarding or discussing Mr. Schuck and/or his death. […] Similarly, our firm understands the County and Citizens Law Enforcement Review Board (CLERB) to be investigating Mr. Schuck's death and **all investigative materials** should also be preserved.

Ex. A. Plaintiffs' preservation letters were far broad enough to encompass all security camera footage depicting Hayden and the areas in which Hayden was housed, such as any cameras pointed at areas outside of his cell. The letters

requested preservation of "all evidence relating to" Hayden's "time in-custody" and related to "potential witnesses with information about […] his time in custody," which would include central jail staff such as deputies tasked with Title 15 checks. They also specifically requested preservation of "all videos" "of Mr. Schuck *or related events*." Ex. A (emphasis added). Moreover, Plaintiffs' September 2022 tort claim stated that his "health deteriorated" while at the jail from March 10 to March 16—making clear the relevance of all safety checks and interactions with potential witnesses to his deterioration. Ex. A.

*2. Failure to Take Reasonable Steps to Preserve*

The County apparently failed to take *any* steps, let alone reasonable ones, to preserve the surveillance videos at issue. An entity is required to take reasonable steps to preserve evidence when the duty arises. For example, "a party must 'suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation.'" *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citing *Lopez v. Santoyo*, No. 09-cv-00108-W-RBB, 2021 WL 5427957, at *7 (S.D. Cal. Nov. 7, 2012)). Here, even after designating a "person most knowledgeable" on the topics of video retention generally as well as the circumstances of the missing video in the instant case, the County cannot explain how or why the video was not preserved. According to retention schedules applicable to all government agencies as well as the Sheriff's Department, it is undisputed that the missing videos should have been retained for **two years**. When Plaintiffs requested all video in discovery well within that time frame—around 17 months after Hayden's death—the videos at issue were already unavailable. In trying to determine why, Plaintiffs deposed Captain Williamson pursuant to Rule 30(b)(6) who testified that the Sheriff's Department apparently flouts the County retention schedules as a matter of course. In fact, he said "there probably isn't a single deputy on the department that knows

that this retention schedule exists[.]" Ex. D at 51:1-3. Williamson further testified, in pertinent part:

- The Sheriff's Department routinely allows surveillance footage from the Central Jail to be automatically overwritten within approximately 9 months (42:22-25);
- There are no policies or procedures, written or unwritten, regarding how to preserve evidence in response to an attorney's preservation request (29:16-30:19; 32:1-8);
- The Sheriff's Department essentially only preserves what evidence Sheriff's Homicide specifically asks for in a homicide investigation (33-34);
- If there is an "incident" such as a "use of force," then the Sheriff's Department would "typically download" video of the incident and save it such that they would be in compliance with retention schedules by happenstance (49:25-51:14);
- The Sheriff's Department does not keep any logs of who pulled what videos (40:24-41:23);
- It is unknown who downloaded videos pertaining to Hayden's time in custody, what videos they downloaded, what videos they reviewed, when they did so, or where or how they were saved (33:4-36:25, 41:6-23).

The Sheriff's Department's policies and procedures (or lack thereof) with respect to video retention, as well as its conduct in this case, are patently unreasonable. There are no facts to support any argument that the Sheriff's Department took reasonable steps to preserve the missing video footage.

*3. Cannot be Replaced by Other Discovery*

There is no dispute that the missing videos are permanently lost. And those videos cannot be replaced by additional discovery. *See Morehead v. City of*

*Oxnard*, No. 21-cv-07689, 2023 WL 8143973, at *9 (C.D. Cal. Oct. 4, 2023) (finding that deleted 911 recordings could not be cured by further discovery "because the only entities that had control over the recordings deleted them"). Surveillance video depicting Title 15 checks is the only reliable way of confirming the timing of and adequacy of such checks. Further, logs of safety checks or meals are insufficient and unreliable to prove the events that would be depicted on camera. As Williamson admitted, logs of Title 15 checks only provide the time the checks began and ended for that floor. Ex. D at 24:9-16. For example, although deputies are required by policy to log when meals are provided, the Area Activities Logs the County produced in discovery for the second-floor list only five meals between March 10 and March 15. If deputies were logging meals correctly, there should have been approximately 13 additional entries for that period. Moreover, Plaintiffs have learned throughout discovery that deputies at the Central Jail frequently violate their duties to record information about detainee behavior in ISRs. As a result, written records are insufficient.

Additionally, courts recognize that testimony is an inadequate alternative to objective video evidence. *See Gelazela*, 2024 WL 1136338, at *3 ("Without [the missing surveillance videos], Plaintiff will have to rely on his and the officers' testimony, which is no substitute for direct video evidence."); *Hugler v. Sw. Fuel Mgmt., Inc.*, No. 16CV4547FMOAGRX, 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017) ("The lost videos are a different matter, however; they cannot be restored or replaced with additional discovery."); *Scalia v. Cnty. of Kern*, 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023) ("The video footage would have provided a level of objective information that may not necessarily be accurately reflected by witness testimony or written documentation."). "Memories fade," especially where deponents are often deposed "years after the incident itself," and "deponents may be biased in their recollections." *Phan v. Costco Wholesale*

*Corp.*, No. 19-CV-05713-YGR, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020). Also, forcing a party to rely only on testimony is particularly problematic in a wrongful death case where a decedent cannot testify. *Scalia*, 658 F. Supp. 3d at 816 (acknowledging testimony and medical records are "not a complete and fair substitute [for video], given that Decedent is unavailable to provide her own testimony regarding the events leading up to her death").

Based on the foregoing, sanctions under Rule 37(e) are warranted.

**B. The circumstances give rise to an inference of intentional spoliation, warranting sanctions under Rule 37(e)(2).**

Circumstantial evidence demonstrates the County had the requisite intent under Rule 37(e)(2). Specifically, the timing of the destruction of the videos, the steps the County took to delete them, its selective preservation of other evidence, and other considerations such as its documented history of failing to preserve video evidence weigh in favor of an inference of intentional destruction.

*1. Timing of Destruction*

Courts consider the timing of the destruction of evidence in determining whether to infer the requisite intent under Rule 37(e)(2). *See Jones*, 95 F.4th at 735; *Colonies Partners, L.P.*, 2020 WL 1496444, at *9. Here, the timing weighs in favor of a finding of intent. The County was on notice that litigation was likely when Hayden, a 22-year-old, died in their custody after exhibiting concerning behavior at intake and at various other points. The destruction of any relevant evidence after this point is suspect. The County was then again put on actual notice of the likelihood of litigation and the relevance of surveillance video of Hayden's time in custody and "related" events, such as Title 15 checks, when Plaintiffs sent preservation letters in April 2022 and a tort claim in September 2022. Further, the County violated its own retention schedules and Sheriff's Department policies. Policy F.1, specifically, incorporates by reference the

schedules and explicitly states the 2-year retention period for incident videos. The videos were destroyed well before the 2-year retention period.

While it is unclear when exactly the videos at issue were destroyed before that, the County's "person most knowledgeable" on the topic, Capt. Williamson, speculated that the deputy charged with downloading video for the Homicide Unit's investigation—whoever that may have been—probably fast-forwarded through it, and then chose what to preserve and what to delete or allow to be written over. Ex. D at 39:25-41:3. Accordingly, it seems the decision to delete or allow for the destruction of the missing videos occurred very soon after Hayden's death. But, also according to Capt. Williamson, surveillance video was retained for around nine months prior to being automatically written over. So presumably, the missing videos still existed until around December 2022—well after Plaintiffs sent preservation letters and a tort claim.

*2. Affirmative Steps Taken to Destroy Evidence*

This factor also weighs in favor of a finding of intent under Rule 37(e)(2). As discussed above, Capt. Williamson admits that someone likely reviewed the video footage soon after Hayden's death and chose what to preserve and what to allow to be written over despite applicable retention schedules. It is unknown whether the person who downloaded video for Sheriff's Homicide Unit took affirmative steps to delete the video from March 13 and 14, but it would not be unreasonable to infer they did considering it was still not preserved even after preservation letters and a tort claim were sent within the nine month period during which video is purportedly automatically saved prior to being overwritten.

In a similar vein, even "failing to take reasonable steps after a duty to preserve evidence arose is enough to infer an intent to deprive." *See Bungie, Inc. v. AimJunkies.com*, No. 21-cv-0811, 2023 WL 7184427, at *8 (W.D. Wash. Nov. 1, 2023); *Colonies Partners, L.P.*, 2020 WL 1496444, at *9 ("Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take

measures to preserve relevant evidence[.]"). In *Musse v. King County*, the district court concluded King County acted with a culpable state of mind in destroying video footage. *Musse v. King Cnty.*, No. C18-1736-JCC, 2021 WL 4709875, at *4 (W.D. Wash. Oct. 8, 2021). The court rejected the County's argument that no spoliation occurs if evidence is deleted according to retention policies. *Id.* But, the court found the County "overwrote footage of the assault not 'according to' its record-retention policy, but in spite of it." *Id.* Its witnesses had conceded that the video should have been preserved pursuant to its policies. The same goes here.

In sum, the circumstances give rise to an inference that someone at the Sheriff's Department made a *conscious decision* to delete the videos. Or at minimum and as discussed *supra*, the County failed to take reasonable steps to preserve the video prior to or even after receiving preservation letters and a tort claim. Either way, Plaintiffs establish intent to deprive Plaintiffs of the videos.

*3. Selective Preservation of Other Evidence*

The County took part in the selective preservation of other videos, but chose not to preserve videos from a period of a little over two days. In *Jones*, the Ninth Circuit found it relevant that the plaintiff, Jones, "could not explain why" her text messages to other employees were selectively deleted in 2017 and 2018. *Jones v. Riot Hosp. Grp. LLC,* 95 F.4th 730, 735 (9th Cir. 2024). The Court rejected Jones' argument that her production of thousands of other text messages negated the intent element. *Id.* "[P]roduction of some evidence does not excuse destruction of other relevant evidence." *Id.* The Ninth Circuit affirmed the district court's terminating sanctions. Here, the County cannot explain why some video was not preserved because apparently no one knows. The County is likely to argue the Court should presume it was not preserved because Hayden would not have appeared on it, but this is untrue because he was taken out of his cell in the early morning on March 15.

*4. Other Considerations*

Other circumstantial evidence indicates an intent to deprive Plaintiffs of the use of the information in litigation. For example, the County has not been able to provide any credible or legitimate explanation for the videos' destruction or for departing from retention schedules and Policy F.1 (which the County's "person most knowledgeable" apparently did not know exists). *Estate of Hill v. NaphCare*, Inc., No. 20-cv-00410, 2022 WL 1464830, at *12 (E.D. Wash. May 9, 2022) ("Courts have found the requisite 'intent to deprive' when a litigant fails to provide a credible explanation for departing from standard operating procedure and intentionally failing to preserve ESI."). Here, the County's "person most knowledgeable" merely speculated that an unknown person probably reviewed the videos, probably concluded that Hayden was not depicted in them, and probably decided that they did not need to be preserved as a result. Even if the Court were to accept his speculations as true, they do not justify the destruction of those videos. As discussed above, even assuming Hayden is not depicted on the videos, which we cannot know for certain, the videos are relevant for myriad other reasons.

Moreover, the County has a documented history of spoliation and suppression of evidence as delineated in the plaintiffs' motion for sanctions in *Estate of Moreno v. County of San Diego*, 21cv1956-RBM-SBC, Doc. No. 179-1 at pp. 10-17. In *Moreno*, the County failed to preserve surveillance video.[8] Further, in *Greer v. County of San Diego*, 19-cv-00378-JO-DEB, the County selectively produced all video footage except footage from 6 p.m. to 7 p.m. depicting Mr. Greer's cellmates yelling "mandown" and pressing their intercom buttons. Doc. No. 179-1 at pp. 10-17. The plaintiffs in *Greer* only learned of this video footage

[8] Although the court in *Moreno* did not impose 37(e) sanctions for the failure to preserve some video, the facts are distinguishable for many reasons, including the language in the plaintiffs' preservation letters as well as the circumstances surrounding the decedent's death.

by subpoenaing CLERB and litigating the issue after the County objected to the subpoena. Doc. No. 179-1 at pp. 10-17.

*5. Appropriate Sanctions*

Plaintiffs request the Court enter judgment in Plaintiffs' favor on Plaintiffs' causes of action against the County based on the County's willfulness. Circumstantial evidence raises an inference that deputies may have forgotten about Hayden in the "back 40" for the two days not preserved on video. It is undisputed he did not receive any medical attention during that time and deputies report that is an area that would be easy to miss during safety checks. The next time there is any indication any deputies encountered Hayden, they found him in an alarming state with no pants on, food and/or feces smeared across the walls of his cell, talking to himself. It would not be unreasonable to infer deputies missed Hayden's deterioration during this time because they were not checking on him. The circumstances in which Hayden was found by Deputy Holman and Corporal Gonzalez are somewhat shrouded in mystery due to the fact that the video picks up in a different area after they first encounter him in his cell. The fact that the County has destroyed video of this time period with no logical explanation is highly suspect and warrants terminating sanctions. In the alternative, Plaintiffs request the Court instruct the jury that it **must** presume the videos would be unfavorable to the County. Additionally, Plaintiffs request attorney's fees for time spent investigating and on litigation regarding the issue of spoliation, including the deposition of Capt. Williamson, drafting of this motion and any reply, and any oral argument. In the event the Court grants attorney's fees, Plaintiffs request the Court set a briefing schedule to determine the appropriate amount.

//

//

### C. In the alternative, the Court should impose sanctions under Rule 37(e)(1) because Plaintiffs suffered prejudice as a result of the spoliation.

*1. Prejudice*

In considering the prejudice to a party, courts consider whether the spoliation "make[s] it impossible for a court to be confident that the parties will ever have access to the true facts." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Plaintiffs have been prejudiced for the many reasons set forth above. Plaintiffs will never have access to the true facts of Hayden's conditions of confinement for 27 hours in the days leading up to his death. Plaintiffs will never know if deputies conducted any Title 15 safety checks on him during that period, whether he received meals in a timely manner, whether he was taken out of his cell for any reason, or any details depicted on camera of his interaction with Deputy Holman and Corporal Gonzalez, including his demeanor but also the officers' reactions to seeing him and the state of his cell, the timing of their decision to take him to medical, and etcetera. These facts are relevant to Plaintiffs claims, including but not limited to deliberate indifference, negligence, as well as causation (in terms of how and why Plaintiff was severely dehydrated) and damages (in particular, predeath pain and suffering and punitive damages). Plaintiffs cannot know what they do not know. "The full extent of the video recordings' relevance 'cannot be clearly ascertained because [they] no longer exist.'" *Scalia*, 658 F. Supp. 3d at 816 (internal quotations omitted). For the same reason, though, "Defendants 'can hardly assert any presumption of irrelevance as to the destroyed [evidence].'" *Id.*

*2. Appropriate Sanctions*

Because Plaintiffs have been prejudiced, sanctions are appropriate to remedy the prejudice. Plaintiffs request the Court preclude the County from arguing to the jury that they should or can presume that County jail staff acted in accordance with Title 15, and/or Sheriff's Department policies, or procedures during the period for

which there is no video. To elaborate, the County should be prohibited from presenting evidence or argument that Title 15 checks were conducted properly (or at all) and meals were provided as required during that time. This is because there is no reliable evidence of that and the County stripped Plaintiffs of their ability to rebut any presumption that that was the case. As stated above, Plaintiffs also request attorney's fees for time spent investigating and litigating the spoliation issues.

## V. CONCLUSION

Based on the above, Plaintiffs request judgment be entered in their favor, or in the alternative, for the Court give the jury a mandatory adverse inference instruction as well as an award of attorney's fees in an amount to be determined after litigation of this motion and on further briefing.

DATE: May 30, 2025

MCKENZIE SCOTT, PC

By: */s/ Lauren M. Mellano*

TIMOTHY A. SCOTT
LAUREN M. MELLANO
MICHELLE C. ANGELES
Attorneys for Plaintiffs