DAVID J. SMITH, Acting County Counsel (SBN 185643)
By STEVEN P. INMAN, II, Senior Deputy (SBN 227748)
SOFIA REZVANI, Senior Deputy (SBN 333447)
LINDSEY M. BURNETTE, Senior Deputy (SBN 294888)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 884-2931
Facsimile: (619) 531-6005
Email: Steven.Inman@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, William Gore, Kelly Martinez, Jon Montgomery, DO, Jessica Ramirez, Justin Page, Allan Valbuena, Jameelyn Barrera, Romeo DeGuzman, Emily Lymburn, and Carina Echon, Jennifer Vivona, Thomas Mace, and Jeff Amado

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Estate of William Hayden Schuck; Sabrina Schuck; Timothy Schuck,<br><br>Plaintiffs,<br><br>v.<br><br>County of San Diego; Bill Gore, in his individual capacity; Kelly Martinez, in her individual capacity; Correctional Healthcare Partners (CHP) Jon Montgomery, DO, in his individual capacity; Jameelyn Barrera, in her individual capacity; Romeo Deguzman, in his individual capacity; Emily Lymburn, in her individual capacity; Carina Echon, in her individual capacity; Jennifer Vivona RN (#6338), in her Individual Capacity; Deputy Thomas Mace (#4324) in his individual capacity; Deputy Jeff Amado (#4193), in his individual capacity; Deputy Allan Valbuena, in his individual capacity; Deputy Justin Page, in his individual capacity; Deputy Jessica Ramirez, in her individual capacity; Nicholas Kahl, NP, in his individual capacity; Deputies Doe, in their individual capacities; Medical Providers Does 2-3, in their individual capacities; Deputy Supervisor Does 1-6, in their individual capacities,<br><br>Defendants. | No. 23-cv-00785-DMS-AHG<br><br>**COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: August 1, 2025<br>Time: 1:30 p.m.<br>Judge: Dana M. Sabraw<br>Courtroom: 13A<br><br>Magistrate Judge: Allison H. Goddard |

## Table of Contents

**I. INTRODUCTION** .......... 1
**II. PLAINTIFFS' OPPOSITION OMITS KEY FACTS THAT DEFEAT THEIR DELIBERATE INDIFFERENCE CLAIMS** .......... 1
A. Plaintiffs' Opposition is Inaccurate as to Nurse Barrera .......... 1
B. Nurse DeGuzman .......... 2
C. Plaintiffs Misstate Evidence and Omit an Exculpatory Fact Regarding Nurse Echon's Conduct .......... 3
D. Deputy Valbuena .......... 4
E. Deputy Page and Deputy Ramirez .......... 5
F. Deputies Amado and Mace .......... 6
G. Nurse Lymburn .......... 7
**III. PLAINTIFFS CANNOT PREVAIL ON THEIR STATE LAW CLAIMS** .......... 7
**IV. PLAINTIFFS CANNOT PREVAIL ON THEIR *MONELL* CLAIM** .......... 8
A. The Cases Plaintiffs Cite are Readily Distinguishable .......... 8
B. The State Audit Report, DRC Report and Report Do Not Reflect a Policy, Custom or Practice that Resulted in Schuck's Death .......... 9
C. Schuck was not "Forgotten" in the "Back 40" .......... 11
**V. PLAINTIFFS LACK EVIDENCE TO SHOW A FAILURE TO TRAIN and supervise** .......... 12
**VI. DEFENDANTS HAVE NO LIABILITY FOR FAILURE TO SUMMON** .......... 13
**VII. CONCLUSION** .......... 13

# Table of Authorities

**Cases** **Page(s)**

*Barry v. Cnty. of Riverside*,
2022 WL 2063247 (C.D. Cal. May 11, 2022) .......... 7

*Dougherty v. City of Covina*,
654 F .3d 892 (9th Cir. 2011) .......... 10, 8

*Estate of Serna v. County. of San Diego*,
2022 WL 827123 (S.D. Cal. Mar. 18, 2022) .......... 8

*Lapachet v. Cal. Forensic Med. Grp., Inc.*,
313 F. Supp. 3d 1183 (E.D. Cal. 2018) .......... 13

*Ward v. Cnty. of San Diego*
2025 WL 319250 (S.D. Cal. Jan. 28, 2025) .......... 10, 9

*Sandoval v. County of San Diego*,
985 F.3d 657 (9th Cir. 2021) .......... 8

*Schmidt v. County of San Diego*,
2024 WL 4308793 (S.D. Cal. Sept. 26, 2024) .......... 9

**Statutes**

Cal. Civ. Code § 52.1 .......... 7

Cal. Gov't. Code § 845.6 .......... 13

## I. INTRODUCTION

One could scarcely read the County Defendants' motion for summary judgment and the Plaintiffs' Opposition and believe that they pertain to the same case. Fortunately, the numerous videos Plaintiffs submitted with their Opposition speak for themselves. They do not show Hayden Schuck in medical distress. They show him able to stand, walk, and even spring to his feet from a sitting position. Plaintiffs' Opposition does not present evidence from which a reasonable juror could conclude that jail staff knew or should have known that Schuck needed immediate care.

Plaintiffs provide a tortured interpretation of the video evidence. For example, they argue that video shows Schuck retrieving a milk carton from the trash, drinking the remaining dregs from it, and then unsuccessfully attempting to get a drink from the sink in his cell. That's not what the video shows. Instead, it shows Schuck picking up a carton of milk that had substantial milk in it, drinking some, pouring the rest down the sink, and then successfully operate the sink to rinse the carton out, fill it with water, and use it as a water cup. He returns to the bench and drinks from it

Rather than assume bad intent, the County assumes that Plaintiffs are seeing what they want to see and attempting to mold the facts to their theme of the case: that Schuck did not die from drug toxicity as the medical examiner found but died from dehydration. When viewed objectively, the evidence does not support this conclusion; and Plaintiffs lack evidence from which a jury could find deliberate indifference; that the County Defendants had reason to know that Schuck needed immediate care; or that any inadequate training, supervision, policy or practice resulted in Schuck's death.

## II. PLAINTIFFS' OPPOSITION OMITS KEY FACTS THAT DEFEAT THEIR DELIBERATE INDIFFERENCE CLAIMS

### A. Plaintiffs' Opposition is Inaccurate as to Nurse Barrera

In the conclusion of their Opposition, Plaintiffs dropped all claims against Nurse Jennifer Vivona and their deliberate indifference claim against Nurse Jameelyn Barrera. [ECF 125 at p. 38]. The County Defendants must, nevertheless, correct the record as to

Nurse Barrera's actions. Plaintiffs state that the officer booking Schuck into the jail would have had important information. [ECF No. 125 p. 10]. They fail to acknowledge, though, that the officer that booked Schuck into the jail was not the officer that arrested Schuck and was not at the scene of the accident—he was an officer just coming on duty. Inman Dec., Exh. W (Wong Depo) at pp. 47:3-48:6.

Further, while Plaintiffs claim that Barrera did not ask the officer screening questions, no evidence exists to support that allegation (Plaintiffs cite to a source that does not support their position). Plaintiffs also point to the lack of time the officer spent at the jail. But the screening questions to officers are just a few questions posted on the wall and can be gone through quickly. Inman Dec., Exh. AH (Nozawa Depo) at pp. 27:14-28:19. Plaintiffs also purport to quote a policy requiring detainees who refuse treatment at a hospital to be housed in the jail's Medical Observation Beds (MOBs). That policy is dated after Schuck's death, however. Plaintiffs' Exhibit 5 at 977.

Plaintiffs also fault Barrera for not sending Schuck to a sobering cell, but they fail to state why they believe Schuck met the criteria for a sobering cell. He did not because he did not appear to pose a danger to himself or others. Inman Decl., Exh. X (Diaz) at pp. 21:22-22:3. Finally, while the intake policy does permit nurses to gate refuse detainees with excited delirium or a disorganized thought process, Nurse Barrera testified that when it is only disorganized thought process (not excited delirium), she evaluates the patients "as a whole." Inman Decl., Exh. Y (Barrera) at p. 55:16-24. She evaluated him and acted on the disorganized thoughts by scheduling a mental health clinician. Barrera is not at fault for Schuck's death six days later and bears no liability in this action.

B. Nurse DeGuzman

Plaintiffs have not articulated any evidence to show that DeGuzman was deliberately indifferent to Schuck's medical needs either. Their statement that "he simply cleaned his wounds, gave him fresh clothes, and sent him off to court" without seeking further treatment misstates the evidence. Schuck presented wearing a wet shirt and no pants. The shirt had blood on it. Schuck had leg wounds that could account for that.

DeGuzman cleaned the wounds and scheduled Schuck for wound care the next day (i.e., he sought further treatment). Schuck also made nonsensical statements, so DeGuzman also addressed it by ensuring that Schuck had been scheduled for a mental health visit (i.e., he sought further treatment). Schuck did have an elevated blood pressure at 148/96, but County policies, which do not require emergency treatment for blood pressures below 180/90. Inman Decl., Exh. AA (Rognlein-Hood) at pp. 118:14-119:5.

Most significantly, Plaintiffs fail to identify any condition visible to DeGuzman that could have caused DeGuzman to believe Schuck was in medical distress. DeGuzman found Schuck to be alert, responsive, ambulatory, and walking okay. Inman Dec in support of Motion for Summary Judgment [ECF No. 109-2], Exh. F (DeGuzman Depo) at p. 29:11-30:8. Plaintiffs do not even claim that Schuck appeared dehydrated, despite that being their theme in the case. Schuck's blood pressure would even weigh against that diagnosis. Inman Dec., Exh. AB (Dr. Sheridan Depo) at pp. 24:17-26:14

The lack of anything manifesting an emergency is also not surprising in the context of Schuck's court appearance. No one at the court called for an ambulance or expressed concern that Schuck needed immediate medical care—yet Plaintiffs have not sued the judge for deliberate indifference. The only concern the judge expressed in his order was whether Schuck was on appropriate medications. He ordered that Schuck be "screened for medications"—not that he be taken for any medical treatment. If no one at the court that saw Schuck later in time than DeGuzman did not perceive that Schuck was in medical distress, a reasonable person could not suspect that Nurse DeGuzman would have perceived that either. Plaintiffs have provided no evidence that he should have—a need for wound care, mental healthcare, and maybe blood pressure meds, but not a need for immediate medical attention.

C. <u>Plaintiffs Misstate Evidence and Omit an Exculpatory Fact Regarding Nurse Echon's Conduct</u>

Plaintiffs have misconstrued the text of the order Nurse Echon received from the court. They argue that the court ordered a "medical evaluation." That is incorrect. The

order says something different. The order Nurse Echo received on the evening of March 15, after physicians had gone home, did not say that Schuck should be medically evaluated. It said only, “the Court refers Defendant to jail medical to be screened for medication.” Inman Dec., Exh. AC (Echon Depo) at p. 85:14-21 & Depo Exh. 18. No reasonable jury could conclude that the judge believed Schuck was experiencing a medical emergency when he wrote that Schuck should be “screened for medication,” instead of ordering that he receive immediate care, be taken to a hospital, or even just taken to urgent care. Nurse Echon had no reason to believe based on the language in the order, that Schuck had a medical need that could not wait until his already-scheduled appointment the next day.

Here Plaintiffs’ account misleadingly omits another very important fact. Plaintiffs state that Nurse Echon did not refer Schuck to medical care. But they leave out that the reason Nurse Echon did not schedule an appointment for Schuck is that she saw that he already had an appointment scheduled for the following day. Inman Dec., Exh. AC (Echon Depo) at pp. 75:7 - 76:1. She checked and would have made an appointment otherwise, but he already had an appointment scheduled—and she had no reason to believe the court’s request was urgent. That’s not deliberate indifference.

D. Deputy Valbuena

Plaintiffs have treated Deputy Alan Valbuena with a similar degree of unfairness. Valbuena never saw Plaintiff unable to stand as Plaintiffs assert. The video shows Schuck coming-in with chains on his arms and legs. Plaintiffs’ Exh. 24 at 16:42. After Deputy Valbuena adjusts his chains with him facing the wall, Schuck makes use of the wall to help him sit down on the floor. *Id.* 16:42:19-23. With his feet chained together and arms chained, this is how Schuck was able to get into a sitting position. No reasonable jury could see him get into a sitting position in that manner in find that he had “collapsed.” Indeed, Schuck’s ability to stand is readily visible when Deputy Valbuena then arrives. On the video (Exhibit 24) at 16:44:22 Schuck springs-up from a sitting to standing position with significant speed and strength. No reasonable jury could conclude that he

was unable to stand. Deputy Valbuena is off camera at that moment but the video shows Deputy Griffith motioning to Schuck to sit back down, and then shows Deputy Griffith speaking to Deputy Valbuena.

There's more. Plaintiffs state in their Opposition that Valbuena did not take Schuck to Medical or tell anyone he is sick. This is false. Valbuena testified that he told a floor deputy (responsible for the inmates held on that floor) that Schuck needed to go to Medical. Plaintiffs have no evidence that he did not do so. Instead, Deputy Griffith's testimony corroborates this, as does the video in which Deputy Valbuena can be seen conversing with the floor deputy.

As he testified, Valbuena saw nothing to indicate that Schuck was in medical distress, but he still told a floor deputy to take Schuck to Medical. This is not deliberate indifference. Even if it might have been better to take Schuck to Medical himself, it is still not deliberate indifference to instruct another deputy to take Schuck to Medical when no emergent need was apparent.

E. Deputy Page and Deputy Ramirez

Deputy Valbuena directed Schuck to water when he got Schuck back to a holding cell after court, so it's not surprising that when Schuck needed to urinate when Deputy Page and Deputy Ramirez took him to his assigned housing later. These deputies saw Schuck engage in odd behavior, but both testified that they see such behavior regular in the jails. While often indicative of mental issues, they saw no reason to believe Schuck was in any type of medical distress. Plaintiffs' Exhibit 30 shows Schuck having no trouble walking to the elevator and standing while facing the wall (per protocol) while waiting for the elevator. Pltf's Exh. 30 at 20:17:28. He then enters the elevator where he is facing the wall, just as the detainee in the elevator prior to Schuck had done. Pltf's Exh. 30 at 20:19:29. The only reasonable conclusion watching deputies with Schuck in the elevator is that when they touch him they are trying to keep him facing the elevator wall when he was not fully complying with that instruction. *Id*. The video does not provide a basis to conclude that Schuck was having any difficulty remaining standing or walking.

The other episode Plaintiff refers to in the Opposition occurs while the deputies and Schuck are paused outside the module, waiting for the dayroom to clear so that they can escort him inside to his cell. While Plaintiffs argue that Schuck collapsed, both deputies testified that Schuck intentionally "dropped his weight" or got onto the ground. The video speaks for itself. It does not show an uncontrolled collapse, but shows Schuck getting down on the ground in a controlled manner. Pltf's Exh. 32 at 20:20:23.

Deputy Page and Deputy Ramirez both claim that Schuck was saying that he needed to urinate. While Plaintiffs argue adamantly that this story must be fabricated—because it refutes their dehydration narrative—the video and cell photos corroborate their account. Exh. AF to Notice of Lodgment in support of Reply. Deputy Ramirez testified that Schuck peed immediately after entering his cell. The video shows Schuck stopped just to the right of the doorway after getting to his cell—and cell photos show that that's exactly where to toilet is. *Id*. & Plaintiff's Exh. 48. This is why Deputy Mace did not recall seeing urine on the cell floor.[1]

While the deputies concede that Schuck displayed odd behavior—not uncommon in jails when nationally approximately 37% of detainees have mental health ailments,[2] they saw nothing—and the video show nothing existed—to lead them to believe that Schuck was in medical distress or needed immediate care.

F. Deputies Amado and Mace

Plaintiffs allege deliberate indifference on the part of Deputies Amado and Mace because they did not take Schuck to Medical literally just because he was naked, skinny, and had sores. [ECF No. 125 at p. 31]. But Schuck had received care the day before for his wounds and was already scheduled for wound care that day. The deputies also both visited Schuck's cell with medical personnel—the nurses—and Nurse Lymburn was taking care of escalating the matter by going to the clinic to tell them that Schuck should come to the clinic now instead of waiting for Nurse Vivona to get down to the detainees

[1] Deputy Ramirez clarified in her testimony that she did not know or recall whether Schuck urinated on the floor or into the toilet. Inman Dec. (Ramirez Depo) at p. 104:21-23.
[2] Inman Decl., Exh. Z (Olubenga) at p. 56:1-9

on Schuck's floor that were on the sick call list.

Most significantly, however, Plaintiffs point to nothing that would have given them a reason to know that Schuck faced any substantial risk that had not been perceived by the two nurses that saw Schuck together with them (Palmeda-Gallegos and Lymburn). Plaintiffs list nothing they would have seen to lead them to believe that Schuck was in medical distress: they do not claim that he was complaining of pain, having difficulty breathing, choking, etc. And although they did not observe Schuck to be in distress, they discussed their concerns with the nurses. This elevation of issues to a higher level of care belies Plaintiffs' arguments of deliberate indifference.

G. Nurse Lymburn

Plaintiffs' Opposition is also misleading with respect to Nurse Lymburn. The Opposition states after seeing Schuck, she did not act and continued her rounds. But Nurse Lymburn did act. While Plaintiffs state that Lymburn continued her rounds, they fail to note that completing her rounds consisted of just checking-in on one more patient. Inman Decl. Exh. AD (Lymburn Depo) at pp. 95:20-97:3. She then went to the clinic floor and informed Nurse Vivona that Schuck needed to be seen. *Id*. Nurse Vivona then sent the clinic deputy to go and get Schuck and bring him, and he left immediately. Indisputably, she acted, she summoned care, and she was not deliberately indifferent.

## III. PLAINTIFFS CANNOT PREVAIL ON THEIR STATE LAW CLAIMS

Plaintiffs cannot prevail on their Bane Act claims against the County Defendants. Plaintiffs have offered no evidence of threats, intimidation or coercion; and while the elements of the Bane Act can be met by showing deliberate indifference to medical needs, for the reasons discussed above, Plaintiffs cannot show deliberate indifference here. Cal. Civ. Code § 52.1; see *Barry v. Cnty. of Riverside*, 2022 WL 2063247, at *7 (C.D. Cal. May 11, 2022).

Plaintiffs' negligence and wrongful death claims fail by statutory immunity because, as demonstrated above, none of the defendants "knew or had reason to know" that Schuck was in need of "immediate medical care."

## IV. PLAINTIFFS CANNOT PREVAIL ON THEIR *MONELL* CLAIM

### A. The Cases Plaintiffs Cite are Readily Distinguishable

Plaintiffs' *Monell* claim also fails because Plaintiffs are unable to establish deliberate indifference. Without a constitutional violation, no Monell liability exists. *Dougherty v. City of Covina*, 654 F .3d 892, 900 (9th Cir. 2011). Plaintiffs argue two cases that they contend support findings of deliberate indifference in this case for *Monell* liability. These cases, however, are readily distinguishable.

In *Sandoval v. County of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021), nurses failed to call 911for paramedics even though the detainee had seized and was unconscious. Nurse DeGuzman allegedly also went six hours without checking on the detainee even though he was in the "medical observation" cell just 20 feet from the nurse's desk and was sweating, tired, and disoriented (DeGuzman believed that deputies were using the medical observation cell as a holding cell). In our case, Schuck did not exhibit an immediate medical need like a person seizing, Schuck was checked on hourly, and DeGuzman addressed every symptom he saw: he treated the wounds, scheduled wound care, made sure Schuck was scheduled for a mental health visit, and asked Schuck what type of drugs he was on (withdrawal protocols exist for opiates). While Plaintiffs can argue about adequacy of care, defendants indisputably did not deny, delay, or interfere with care.

The *Serna* case is similarly distinguishable. In *Estate of Serna v. County. of San Diego*, 2022 WL 827123, at *1 (S.D. Cal. Mar. 18, 2022), the detainee responded honestly at intake regarding her opiate use, but was allegedly not given withdrawal treatment for four days. A nurse allegedly failed to provide care when Serna couldn't walk, and a doctor believed she was faking and refused to take her vital signs. Our case is different. At intake Schuck was not honest about his drug use and denied taking drugs. He never had an obvious physical symptom such as an inability to work, his vitals were checked less than 24 hours before his death (and no change in condition appeared to warrant taking them again), and no one ever refused Schuck care—to the contrary, it was

Schuck that refused care at the hospital before SDPD brought him back to the jail.

The *Schmidt* and *Ward* cases Plaintiff cites are likewise very different. In *Schmidt v. County of San Diego*, 2024 WL 4308793, at *10 (S.D. Cal. Sept. 26, 2024), a nurse allegedly knew that the detainee suffered from hypertension and diabetes mellitus, but failed to implement a medical treatment plan or follow-up plan relating to his hypertension. Thus, if the allegations are true (the decision is on a Motion to Dismiss), the nurse had knowledge of the detainees immediate medical need and failed to act on it. That's different here where Schuck did not give jail personnel a reason to believe that he had an immediate medical need.

Ward is distinguishable on the same grounds. *Ward* is also a decision on a Motion to Dismiss. *Ward v. Cnty. of San Diego*, 2025 WL 319250, at *1 (S.D. Cal. Jan. 28, 2025). But taking the allegations as true for purposes of analyzing the decision and comparing it to this action, in Ward the nurse received records showing a need for medication to avoid severe psychosis, failed to order it, failed to contact the treating psychologist, and failed ignored the detainee's requests for his medication. The nurse was allegedly given knowledge of an immediate need and did not act. Schuck exhibited some sores on his legs and possible symptoms of mental illness, but nothing that should have given jail staff knowledge of an immediate medical need. There was no deliberate indifference—no constitutional violation.

B. <u>The State Audit Report, DRC Report and Report Do Not Reflect a Policy, Custom or Practice that Resulted in Schuck's Death</u>

In addition to the lack of a constitutional violation, Plaintiffs cannot establish *Monell* liability because no causal relationship exists between any County policy, custom, or practice and Schuck's death. Plaintiffs seek to rely on the State Audit Report to show a County policy or defacto policy, but the report cannot do so. Plaintiffs have provided no evidence to show that any of the purported deficiencies asserted in the report contributed to Schuck's death and the report itself contains no data of factual support for the conclusions stated within it.

Plaintiffs have obtained no discovery from the auditors about what formed the basis for their conclusions, and the report itself provides no basis for the conclusions stated within it. The only the report contains is data purporting to show that the San Diego County jails have a higher rate of death than other unlisted jails based on average daily population. But Plaintiffs' expert acknowledged that he did not know if that was an appropriate metric. Inman Dec., Exh. Z (Olugbenga Depo) at pp. 124:25-128:7. For example, he did not know whether that metric took into account the fact that average lengths of stay could be shorter in San Diego County jails, resulting in higher turnover and a larger number of people comprising the average daily population. *Id*.

Plaintiffs' expert also did not know whether the metric took into account demographic differences (*e.g.*, Caucasians may have higher rate of suicide). Thus, Plaintiffs cannot show that the report is reliable—especially in light of the testimony in the case showing that the auditors simply took the areas the Sheriff's Department said it was working on improving and identified those areas as the deficiencies. Inman Dec., Exh. AE (Boorman Depo) at 88:1-11.

Even if the audit report were reliable, Plaintiffs have no evidence that any of the purported deficiencies were a "moving force behind the constitutional violation." *Dougherty* 654 F .3d at 900. No evidence exists that the safety checks deputies performed on Schuck were inadequate. When deputies had concerns during a safety check, they took Schuck to the clinic as they did before Schuck's court appearance, or discussed their concerns with nurses, as they did before Nurse Lymburn went down to the clinic and advised the clinic nurse that Schuck needed to be seen right away.

Plaintiffs have likewise offered no evidence to show that Schuck's intake was inadequate. Schuck refused care against medical advice after being gate refused. Rather than have him ping pong back and forth between the jail and the hospital while he continued to refuse treatment—which would not have been good for him—Nurse Barrera accepted Schuck for booking. But Schuck was not honest with Barrera about his drug use, which would have triggered further evaluations. If the intake was inadequate, it was

only due to Schuck's lack of candor. Barrera saw nothing physically wrong with Schuck, he did not display behavior meeting the criteria of a sobering cell, and she scheduled him for a mental health visit due to his disorganized thought process.

Inconsistent follow-up care did not result in Schuck's death either. Nurse DeGuzman scheduled Schuck for follow-up wound care, made sure an appointment with a mental health clinician was scheduled to follow-up on Schuck's disorganized thought process, and Nurse Lymburn came to follow-up on Schuck after DeGuzman had reported his drug use—which Schuck had denied at intake.

And no evidence exists of any delay in performing life saving measures. As soon as Schuck was found to be experiencing a medical emergency, deputies immediately began CPR, and nurses followed by paramedics arrived without delay to do everything they could to save Schuck's life. Thus, none of the issues the audit report identifies were present with respect to Schuck.

Plaintiffs also attempt to rely on NCCHC standards to show a policy or practice. Plaintiffs' expert was unable to name a single facility that meets those standards—not even naming one of the facilities he oversees. And no court has held those standards to be a constitutional floor—or even held that all of the standards are even appropriate for every facility. The DRC recommendations are also not helpful to Plaintiffs because they pertain to suicides. Although the Sheriff's Office now has mental health clinicians at intake, no court has held that that is a constitutional requirement either, and Plaintiffs have no evidence that the outcome would have been different: Schuck died from drug toxicity with peptic ulcers and other contributing factors, not from mental illness.

C. Schuck was not "Forgotten" in the "Back 40"

Schuck entered the jail during the COVID-19 pandemic, when conditions were far from optimal and housing availability was severely limited. At the time of Schuck's booking, the state prison had not accepted over 300 inmates that were supposed to have been transferred from the County jails to state prison. Inmates booked on different days also had to be housed separately during their five-day intake quarantine periods, and the

American Civil Liberties Union was suing to make the quarantine period even longer. RFJN in Support of Opposition to Motion for Sanctions [ECF No. 118-3], Ex. A (Decl. of Cpt. Kyle Bibel) at ¶¶ 6, 15-16. Under these exigent circumstances, deputies placed Schuck in a cell not typically used to house detainees. Inman Decl., Exh. AF (Williamson Depo.) at p. 44:11-22. Schuck remained there until he completed his intake quarantine and housing became available.

While Schuck remained in an area where detainees were not usually housed from March 10 to March 15, no evidence exists that he was "forgotten" there as Plaintiffs assert. Area activity logs show that the hourly cell checks were being conducted on that floor. Nurses also conducted daily temperature checks and watched detainees for COVID symptoms. Schuck was also receiving meals as evidenced by the testimony of the deputies that took Schuck to the clinic and saw food and trash in Schuck's holding cell. No evidence supports Plaintiffs allegation that Schuck was somehow "forgotten."

Plaintiffs lack evidence to show a constitutional violation and lack evidence to show that any policy, custom, or practice was the moving force behind a constitutional violation. They cannot show *Monell* liability.

## V. PLAINTIFFS LACK EVIDENCE TO SHOW A FAILURE TO TRAIN AND SUPERVISE

In opposing the County's motion for summary judgment, Plaintiffs base their negligent supervision allegations solely on an alleged lack of supervision of Nurse DeGuzman. However, Plaintiffs have offered no evidence to show that the County and supervisory defendants took no action as to DeGuzman following the Sandoval case or even evidence as to what position the County took with respect to his actions. Plaintiffs bear the burden to prove that he was not properly supervised or disciplined but have not met that burden on this issue.

Plaintiffs' Opposition also lists several topics on which they allege inadequate training. But they offer no evidence to show the personal involvement of Sheriff Gore, Sheriff Martinez or Dr. Montgomery in the training or in decisions regarding the training.

The sheriffs would obviously delegate to those with expertise to determine what training is appropriate on issues of drug withdrawal and other medical related topics. Plaintiffs are unable to present evidence that they failed to do so. They also provide no evidence regarding Dr. Montgomery's role with respect to training—whether he was responsible for training deputies, medical personnel from Correction Health Partners (not County employees), etc. Additionally, Plaintiffs do not argue what made the training on these topics inadequate. They have, thus, failed to meet their burden to show that a triable issue of fact exists as to training and supervision.

## VI. DEFENDANTS HAVE NO LIABILITY FOR FAILURE TO SUMMON

Plaintiffs have failed to distinguish or meaningfully address the County's argument that evidence of inadequate care—even if Plaintiff's had it—would not demonstrate a failure to summon care. *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1197 (E.D. Cal. 2018) (holding that "inadequate medical treatment does not provide the basis for asserting a claim under§ 845.6 as long as medical treatment was provided."). Nurse Barrera, Nurse DeGuzman, and Nurse Lymburn all provided care or, in the case of Nurse Lymburn, evaluated Schuck and then went and summoned care at the clinic.

The deputy defendants likewise summoned care by raising their concerns with the nurses. Plaintiffs argue that Deputies Ramirez and Page did not summon care, but Deputies Ramirez and Page saw only odd behavior and Schuck getting down onto the ground when he insisted that he needed to urinate. They saw no need to summon immediate care. Plaintiffs cannot prove this claim as to any of the defendants.

## VII. CONCLUSION

Plaintiffs' Opposition fails to show that any nurse or deputy had a reason to believe that Schuck faced any substantial risk of harm, let alone death. While defendants regret Schuck's death, they are each entitled to summary judgment because the standard of deliberate indifference has not been met and state law immunities preclude Plaintiff's state law claims, which also fail on other grounds. Defendants request that the Court grant their motion for summary judgment.

Respectfully submitted,

DATED: July 25, 2025

DAVID J. SMITH, Acting County Counsel

By: s/STEVEN P. INMAN, II, Senior Deputy
Attorneys for Defendants County of San Diego, William Gore, Kelly Martinez, Jon Montgomery, DO, Jameelyn Barrera, Romeo DeGuzman, Emily Lymburn, Carina Echon, Jennifer Vivona, Thomas Mace, Allan Valbuena, Jessica Ramirez, Justin Page and Jeff Amado