UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF WILLIAM HAYDEN SCHUCK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.:  3:23-cv-00785-DMS-AHG <br><br> **REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS AND GRANTING PLAINTIFFS' MOTION TO SEAL** <br><br> **[ECF Nos. 111, 127]** |

Before the Court is Plaintiffs Estate of William Hayden Schuck, Sabrina Schuck, and Timothy Schuck's (collectively, "Plaintiffs") Motion for Sanctions for Spoliation of Evidence. ECF No. 111. Defendant County of San Diego ("County") opposes the motion. ECF No. 118. For the reasons outlined below, the Court **RECOMMENDS** that the District Judge **GRANT** the motion for sanctions.

### I.    BACKGROUND

On March 10, 2022, William Hayden Schuck ("Hayden") was booked into the San Diego County Central Jail. ECF No. 111 at 5. He died in his cell on March 16, 2022. *Id*.; *see* ECF No. 1-3 at 2. On April 28, 2022, Plaintiffs sent preservation letters to the San Diego County Central Jail and San Diego Sheriff's Department. ECF No. 111-2 at 2–3.

The preservation letters include the following requests:

> We respectfully request that you take any necessary steps to preserve all evidence relating to his arrest on March 10, [2022,] his time in-custody, his death, and potential witnesses with information about his arrest, time in-custody, and death. This request includes, but is not limited to, all videos and photographs of Mr. Schuck or related events, email correspondence, and any other writing or communication in your possession regarding or discussing Mr. Schuck and/or his death. This request also includes, but is not limited to, records describing which detainees were housed in the same cell as Mr. Schuck or adjacent cells as well as records relating to them (such as recorded phone calls by those other detainees). These detainees are prospective witnesses and their information and records must also be preserved. Similarly, our firm understands the County and Citizens Law Enforcement Review Board (CLERB) to be investigating Mr. Schuck's death and all investigative materials should also be preserved.

ECF No. 111-2 at 2–3 (emphasis omitted). On September 15, 2022, Plaintiffs sent a Government Code claim for damages to the County under the Tort Claims Act. ECF No. 111-3 at 2–4. The claim letter describes the relevant facts as follows:

> While at the county jail, Mr. Schuck's health deteriorated and on March 16, 2022, he died while in the custody and care of the county. Whether his health deteriorated due to a mental health issue, drug detoxification, or some other medical issue, it is clear that Mr. Schuck required medical intervention by his custodians and on information and belief, his custodians were deliberately indifferent to his dire medical needs. … Mr. Schuck suffered pain and suffering and ultimately death due to the county's conduct and lack of or inadequate medical intervention.

ECF No. 111-3 at 3. On February 21, 2023, the County Medical Examiner completed the autopsy report. ECF No. 111 at 5. Plaintiffs filed this action on April 28, 2023. ECF No. 1.

On August 2, 2023, Plaintiffs propounded a Request for Production ("RFP") seeking "[a]ll video or audio recordings, including surveillance video, depicting or relating to Plaintiff's incarceration and/or death at the County jail." ECF No. 111 at 6. The County provided surveillance video for the time periods of: March 10, 2022, from 9:05 p.m. to March 13, 2022, at 12:59 a.m.; and March 15, 2022, from 8:01 a.m. to March 16, 2022, at 9:26 a.m. ECF No. 111 at 6. No video footage was produced during an approximately 55-

hour period from March 13, 2022, at 1:00 a.m. through March 15, 2022, at 8:00 a.m. (the "missing time period"). *Id*.

Plaintiffs filed the instant motion on May 30, 2025. ECF No. 111. The County timely filed its opposition on July 14, 2025. ECF No. 118. Plaintiffs timely filed their reply on July 22, 2025. ECF No. 128. The Court held a hearing on July 29, 2025, and heard argument from both sides. ECF No. 141. This report and recommendation follows.

## II.     THRESHOLD CONSIDERATIONS

First, the County argues that the instant motion should be denied because Plaintiffs failed to comply with the undersigned's Chambers Rules regarding discovery disputes. ECF No. 118 at 5–6. The Court finds that the instant spoliation motion is not a discovery dispute contemplated by the Court's Chambers Rules.[1] *See* AHG.Chmb.R. at 3. Because the County acknowledged that it had produced all video it had retained, a motion to compel, much less a discovery conference seeking to avert such a motion, would have been futile. Further, even if an informal discovery resolution process was required, the undersigned's Chambers Rules only provide that a motion filed without following the process ***may be***

---

[1] The Court acknowledges that other courts have found to the contrary and have considered spoliation a discovery dispute subject to discovery deadlines and a court's discovery procedures. *See, e.g.*, *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-cv-0628-TWR-AGS, 2021 WL 791853, at *2 (S.D. Cal. Mar. 1, 2021), *sustaining objection to report and recommendation on other grounds*, 2021 WL 7448531 (S.D. Cal. Mar. 31, 2021); *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10-cv-2133-GPC-WVG, 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013). These cases are not binding, and the Court finds them unpersuasive. *See Mahboob*, 2021 WL 791853, at *2 (denying plaintiff's call data spoliation motion as untimely because the year and a half delay was unreasonable and violated the court's chambers rules, which imposed a 30-day deadline for filing discovery disputes); *Cottle-Banks*, 2013 WL 2244333, at *16 (denying plaintiff's spoliation motion on the merits and alternatively denying as untimely though neither party raised the issue, because plaintiff had already filed a related motion to compel and the nine month delay for the spoliation motion was unreasonable and violated the court's chambers rules, which imposed a 30-day deadline for filing discovery disputes). Further, the Court notes that the County did not cite any of these cases in its opposition.

stricken, not that it must be. *See* AHG.Chmb.R. at 3 ("The Court may strike any discovery motion that is filed without complying with this process.").

Second, the County argues that the instant motion should be denied as untimely because Plaintiffs filed it after the undersigned's 45-day discovery dispute deadline; or, alternatively, because Plaintiffs filed it after the discovery period closed. ECF No. 118 at 5–6. As discussed above, the Court finds that its rules requiring informal discovery conferences before resorting to motion practice do not apply in the instant matter.

The Court is also not persuaded by the County's argument regarding the motion being filed outside the discovery period. "Although Rule 37 governs most motions for discovery sanctions, it is silent on the issue of the timing of the filing of a motion seeking spoliation sanctions." *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 1411127, at *2 (D. Or. Mar. 27, 2019). "The deadline by which a party must file a motion for spoliation is a rather unsettled matter in this circuit." *Wine Educ. Council v. Arizona Rangers*, No. CV-19-2235-PHX-SMB, 2021 WL 3550213, at *2 (D. Ariz. Aug. 11, 2021). Some courts adhere to a strict bright line rule, and some adopt a more permissive standard. *Id.* (collecting cases). "To fill the gap, courts have 'identified a number of factors that can be used to assess the timeliness of spoliation motions.'" *Wakefield*, 2019 WL 1411127, at *2 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506–08 (D. Md. 2009)). Factors identified by other courts include: (1) how long after the close of discovery the spoliation motion is made, (2) the temporal proximity between the spoliation motion and any motions for summary judgment, (3) whether the spoliation motion is made at the eve of trial, (4) whether there were any deadlines governing the filing of spoliation motions in the scheduling order, and (5) the explanation of the moving party as to why the motion was not filed earlier. *Id.*

As to the first factor, the Court notes that fact discovery closed on September 16, 2024; but, with the Court's permission, the Rule 30(b)(6) deposition

regarding video surveillance retention was taken on October 11, 2024.[2] *See* ECF No. 85 ("All fact discovery must be completed by all parties by September 16, 2024, except for: … Depositions that have already been noticed must be completed by October 15, 2024"); ECF No. 111-5 at 3 (deposition of Captain Williamson taken on October 11, 2024). Here, the instant motion was filed on May 30, 2025. ECF No. 111. Plaintiffs were first on notice of the alleged spoliation on April 15, 2024, when the County's counsel informed them that the video did not exist. However, they did not confirm the alleged spoliation and have enough facts for a motion until October 11, 2024, when Plaintiffs took the deposition of Captain Derek Williamson regarding the County's retention policies. ECF No. 111-5 at 3. The transcript of Captain Williamson's deposition was completed on October 29, 2024. *Id.* at 67; ECF No. 118-1 at 12. As such, the instant motion was filed 7.5 months after Plaintiff gathered the facts for a motion (and 7 months after the deposition transcript was completed) and 5 months before trial. *See* ECF No. 105 (trial set for November 3, 2025). This factor weighs slightly against finding the motion timely.

As to the second factor, the instant motion was filed on the same date as the parties' motions for summary judgment. ECF Nos. 109, 110, 111. The Court has reviewed the defendants' summary judgment motions and Plaintiffs' oppositions and finds that the instant motion was not filed as a means to defeat summary judgment. *See Hall v. Schumacher*, No. 2:10-cv-01353-GMN-LRL, 2011 WL 4458845, at *1–*2 (D. Nev. Sept. 23, 2011) (denying spoliation motion as untimely when it was filed with plaintiff's opposition to the pending summary judgment motion, one month after the dispositive motions deadline); *Goodman*, 632 F. Supp. 2d at 507 (collecting cases where courts found spoliation motions untimely when they were used to defeat summary judgment or were

---

[2] Plaintiffs noticed the deposition on June 4, 2024, approximately three months before the discovery cutoff, but it was postponed to October due to scheduling difficulties. ECF No. 111 at 7.

filed after summary judgment was granted). This factor weighs in favor of finding the motion timely.

As to the third factor, the instant motion was not filed on the eve of trial; it was filed five months beforehand. *See, e.g.*, *Mannion v. Ameri-Can Freight Sys.*, No. CV-17-03262-PHX-DWL, 2020 WL 417492, at *1–*2 (D. Ariz. Jan. 27, 2020) (first time spoliation was brought to the court's attention was in the parties' proposed jury instructions submitted in advance of the final pretrial conference); *Wakefield*, 2019 WL 1411127, at *3–*4 (denying spoliation motion as untimely when plaintiff knew of the missing phone records for two years, but did not file the motion until two months before trial); *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-569, 2008 WL 2491747, at *2–*3 (S.D. Ohio June 18, 2008) (spoliation motion filed one week before trial was untimely). This factor weighs in favor of finding the motion timely. The fourth factor does not apply here because there were no deadlines set in the scheduling order or chambers rules specifically regarding spoliation motions.

As to the fifth factor, Plaintiffs argue that, since they are seeking dispositive relief,[3] they considered the instant motion a "pretrial motion" to be filed for the district judge by the pretrial motion deadline. ECF No. 128 at 8 n.2 (explaining that "Plaintiffs did not believe this Court's pretrial procedures governed [and] any alleged violation of this Court's

---

[3] A magistrate judge has the authority to "hear and determine" nondispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). Section 636, and this district's corresponding Civil Local Rule 72.1, specifically enumerate eight different types of matters to be treated as dispositive. *See* 28 U.S.C. § 636(b)(1)(A) (list does not include spoliation motions); *see also* CivLR 72.1(b)–(c) (same). When a matter falls outside of those expressly enumerated matters, as is the case here, courts look to the effect of the issued ruling to determine whether the underlying matter should be considered dispositive or nondispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015); *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004) ("we must look to the effect of the motion, in order to determine whether it is properly characterized as dispositive or non-dispositive") (internal quotation marks omitted).

pretrial procedure rules was inadvertent and based on a reasonable, excusable mistake"). The Court finds this argument persuasive. For example, *Daubert* motions, which test the sufficiency of experts and seek exclusion or limitation of expert testimony at trial, are not required to be filed during the discovery period and are considered pretrial motions and sometimes directed to be filed as motions *in limine*. ECF No. 108 ("the parties' deadline to file their Daubert motions shall be the same as their deadline to file their motions in limine"). Similarly, the instant spoliation motion seeks an adverse jury instruction or exclusion of testimony at trial. *See Lopez v. Cardenas Markets, LLC*, No. 2:21-CV-01915-JCM-BNW, 2023 WL 3182658, at *3 (D. Nev. May 1, 2023) (finding spoliation motion timely and noting that "[t]he outer limit for seeking discovery sanctions that are dispositive in nature is the deadline for filing dispositive motions"). This factor weighs in favor of finding the motion timely.

Additionally, courts have focused on prejudice to the court and the opposing party caused by the delay in bringing a motion for sanctions based on alleged spoliation of evidence. *See Mkrtchyan v. Sacramento County*., No. 2:17-cv-2366 TLN-KJN, 2021 WL 5284322, at *4 (E.D. Cal. Nov. 12, 2021) (citing *Goodman*, 632 F. Supp. 2d at 506–08). Here, the County makes no argument regarding prejudice, and the Court can find no significant prejudice to the County or the Court caused by Plaintiffs' delay. The Court also notes that no further discovery could assist in this matter. *Compare Wakefield*, 2019 WL 1411127, at *3–*4 (denying spoliation motion as untimely when it was unclear whether the phone records could have been replaced through other sources within the data storage system) *with* ECF No. 111 (videos were deleted). The Court also notes that the only case the County cited in support of its argument that the instant motion was untimely was

/ /
/ /
/ /
/ /
/ /

*Otsuka*, which is not persuasive.[4] ECF No. 118 at 6 (citing *Otsuka v. Polo Ralph Lauren Corp.*, No. C-07-02780-SI, 2010 WL 366653 (N.D. Cal. Jan. 25, 2010)). These considerations weigh in favor of finding the motion timely.

Thus, in weighing the four applicable factors and other considerations, the Court finds that the instant motion is timely.

### III.    PARTIES' POSITIONS

The Court will now turn to the merits. Here, Plaintiffs seek sanctions against the County for destroying video surveillance footage. ECF No. 111. Specifically, Plaintiffs seek either (a) terminating sanctions, (b) a mandatory adverse inference jury instruction, or (c) preclusion of testimony regarding County employees and contractors acting in accordance with policies and procedures for the period when there is no video. *Id*. at 5. The County contends that an adverse inference jury instruction is an "extreme sanction" that should not be ordered lightly. ECF No. 118 at 5 (internal citation omitted).

Plaintiffs argue that the County had a duty to preserve the video footage from March 13, 2022, at 1:00 a.m. through March 15, 2022, at 8:00 a.m. ECF No. 111. Plaintiffs assert that the duty to preserve attached at several points before the video was deleted, such as (1) by the County's own internal policies of homicide review at the time of Hayden's

---

[4] The Court cautions the County regarding its description of *Otsuka*. In *Otsuka*, the court noted offhandedly that "the Court also observes that plaintiff did not seek the Court's intervention in this matter at any time during the discovery process." *Id*. at *4. The court, however, did not deny the motion for sanctions for that reason alone. The Court denied the motion because the court did not find that defendant was obligated to "preserve the <u>entirety</u> of the footage" and it could "only conclude that <u>some</u> of the tapes would have had some relevance to plaintiffs' claims," so it denied the motion without prejudice so "plaintiffs [could] later request[] a jury instruction or some other form of evidentiary proffer to make the jury aware that <u>certain potentially relevant evidence</u> is no longer available." *Id*. at *3–*4 (emphasis added). The County's description of the case is incomplete and potentially misleading. *See* ECF No. 118 at 6 ("holding that it was not appropriate to impose evidentiary sanctions where 'plaintiff did not seek the Court's intervention in this matter at any time during the discovery process'").

death; (2) when Plaintiffs sent the preservation letter on April 28, 2022; and (3) at the very latest, when Plaintiffs submitted their government tort claim on September 15, 2022. Plaintiffs rely on the deposition of the County's Rule 30(b)(6) witness, Captain Williamson, who testified that the video was likely destroyed nine months after Hayden's death, which is well after all three of those dates. He also testified that the County's failure to preserve violated its own written retention policies, as well as its customary informal procedures. Plaintiffs contend that sanctions are warranted under either section of Rule 37(e), because Plaintiff was prejudiced by the destruction of the video and because there is circumstantial evidence of the County's intent to deprive.

The County argues that it did not have a duty to preserve the footage because the camera above the holding cell where Hayden was housed during the relevant period had a limited scope and would not have shown relevant information. Thus, the County argues that Plaintiffs are not prejudiced by the loss of those videos.

## IV.    LEGAL STANDARD

Under Rule 37(e), a party may be sanctioned if (1) ESI[5] "that should have been preserved in the anticipation or conduct of litigation is lost," (2) "because a party failed to take reasonable steps to preserve it," and (3) the ESI "cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e); *Jones v. Riot Hosp. Grp. LLC*, No. CV-17-04612-PHX-GMS, 2022 WL 3682031, at *4 (D. Ariz. Aug. 25, 2022), *aff'd*, 95 F.4th 730 (9th Cir. 2024). After these prerequisites are satisfied, the rule operates on two parallel tracks. If a court finds that the loss of the ESI prejudiced the non-spoiling party, it "may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). However, if a court finds that the spoiling party "acted with the intent to deprive another party of the information's use in the litigation," the rule authorizes the imposition of more serious sanctions, including an adverse inference jury instruction or termination

---

[5] Electronically Stored Information.

sanctions. FED. R. CIV. P. 37(e)(2); *see also Burris v. JPMorgan Chase & Co.*, 566 F. Supp 3d 995, 1012 (D. Ariz. 2021). The applicable "standard of proof for spoliation sanctions is a preponderance of the evidence." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *see Morehead v. City of Oxnard*, No. 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at \*4 (C.D. Cal. Oct. 4, 2023) ("The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)."). Further, "[t]he Court is the appropriate finder of fact on a Rule 37(e) motion." *Burris*, 566 F. Supp. 3d at 1012.

## V.    DISCUSSION

The Court will assess the prerequisites to sanctions under Rule 37(e), as well as the parallel tracks for selecting an appropriate sanction.

### A.    The County had a Duty to Preserve the Videos

Rule 37(e) does not identify a starting date for the duty to preserve, but instead looks to the common law. FED. R. CIV. P. 37(e), advisory committee notes to 2015 amendment ("Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve."); *see Fast*, 340 F.R.D. at 336. Under the common law, a duty to preserve arises "'when a party knows or should know that certain evidence is relevant to pending or future litigation.'" *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (internal quotation omitted); *see also CTC Global Corp v. Huang*, No. SACV-17-02202 AG-KESx, 2019 WL 6357271, at \*2 (C.D. Cal. July 3, 2019) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") (internal quotation marks and citations omitted). Having "some notice" is enough. *See U.S. v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002) (routine destruction constitutes spoliation where party "had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed"); *Colonies Partners, L.P. v. County of San Bernardino*, No. 18-420, 2020 WL 1496444, at

*7 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1491339 (Mar. 27, 2020). "Once the duty to preserve attaches, a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citations and internal quotation marks omitted).

Plaintiff contends that the County "anticipates litigation when someone dies in their custody as a matter of course[,]" as shown by the Sheriff's Critical Incident Review Board's focus being "to assess the department's civil exposure because of a given incident." ECF No. 111 at 13 (quotation marks omitted). Thus, Plaintiff argues that the County's duty to preserve the video footage attached at the time of Hayden's death. *Id.* Plaintiffs also argue that, in the alternative, the County's duty to preserve the video footage attached on April 28, 2022, six weeks later, when Plaintiffs' counsel sent the preservation letters and therefore put the County on actual notice. *Id.* at 14. Plaintiffs note that their preservation notices requested preservation of "all evidence relating to" Hayden's "time in custody" and "potential witnesses with information about" "his time in custody," as well as "all videos" of Hayden "or related events." *Id.* at 16; ECF No. 111-2 at 2–3.

Here, the Court agrees with Plaintiffs and finds that the duty to preserve attached as early as Hayden's death, on March 16, 2022. The County's own policies require it to preserve information such as videos for homicide investigations. In the alternative, the Court finds that Plaintiffs' preservation letter from April 28, 2022, was sufficient to put the County on notice. Even if the preservation letter was ambiguous as to preserving video footage of the hallway outside of Hayden's cell during the missing time period, Plaintiffs' tort claim from September 15, 2022, made it explicit that deliberate indifference and inadequate medical attention were essential allegations of Plaintiffs' claims. *See* ECF No. 111-3 at 3 (claim for damages against the County for wrongful death, explaining that Hayden "died while in the custody and care of the county. Whether his health deteriorated due to a mental health issue, drug detoxification, or some other medical issue, it is clear that Mr. Schuck required medical intervention by his custodians and on information and

belief, his custodians were deliberately indifferent to his dire medical need."). Thus, the latest the duty could have attached was September 15, 2022, which was before the videos were deleted.

The County argues that it had no duty to preserve video from the missing time period because it only had a duty to preserve "relevant" evidence. The Court finds this argument unpersuasive. The County's citation to *Zubulake* regarding the duty to preserve relevant evidence, and describing relevant evidence as "reasonably calculated to lead to the discovery of admissible evidence," misses the mark. ECF No. 118 at 4–5 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). First, when analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *McMorrow v. Mondelez Int'l.*, No. 17cv2327-BAS-JLB, 2019 WL 3852498, at *2 (S.D. Cal. Apr. 19, 2019) (citing advisory committee notes to 2015 amendments and explaining that "[t]he 2015 amendment to Rule 26(b) deleted the phrase 'reasonably calculated to lead to the discovery of admissible evidence' because it was often misconstrued to define the scope of discovery and had the potential to 'swallow any other limitation.' [] The amendment replaced this phrase with the statement that information 'need not be admissible in evidence to be discoverable.'"). Second, *Zubulake* is an out of circuit case from 2003. "Rule 37(e) was completely revised in 2015" and now "sets the standards for sanctions arising from the spoliation of" electronically stored information. *Jones*, 2022 WL 3682031 at *4; *Fast*, 340 F.R.D. at 334.

The County argues that it had no duty to preserve videos that did not involve Hayden, and more specifically, that it "had no duty to preserve videos that showed neither [Hayden] nor his cell." ECF No. 118 at 6. The County contends that it had "no reason to believe that video that neither showed [Hayden] nor his cell door (for determining the adequacy of safety checks) would be relevant[,]" since the investigators suspected that the cause of his death was a drug overdose. *Id.* at 6. The Court agrees with Plaintiffs that, even if the duty to preserve only attached to video relevant in a drug overdose investigation, the videos still

should have been preserved because, "[i]f a detainee was suspected of obtaining drugs within a jail facility, the movements of others in the areas around the detainee's cell would be of the utmost importance." ECF No. 128 at 2. As such, footage of anyone with access to Hayden's cell during that period would be relevant.

The County also asserted that the missing videos were not relevant because they were farther in time from Hayden's death than the produced videos. ECF No. 118 at 9. The Court does not find this argument persuasive. *See Posner v. Hillstone Rest. Grp., Inc.*, No. 2:19-cv-00507, 2022 WL 705602, at \*4 (E.D. Cal. Mar. 9, 2022) ("Even though Defendant investigated the incident, which included reviewing the video footage, its unilateral determination that the overwritten video footage was not relevant is insufficient to overcome its duty to preserve relevant evidence."). Indeed, the County's own actions reflect the opposite result. The County provided surveillance video for the time periods of: March 10, 2022, from 9:05 p.m. to March 13, 2022, at 12:59 a.m.; and March 15, 2022, from 8:01 a.m. to March 16, 2022, at 9:26 a.m. ECF No. 111 at 6. No video footage was produced from March 13, 2022, at 1:00 a.m. through March 15, 2022, at 8:00 a.m. *Id.* Thus, the County produced more footage that was *farther* in time from Hayden's death— i.e., it produced 63 hours of footage from 4–6 days before his death, but only 25 hours of footage from 1–3 days before his death.

Therefore, the Court finds that the County had a duty to preserve the video footage, and the duty attached before the footage was deleted.

## B. The County Failed to take Reasonable Steps to Preserve

Once aware of their duty to preserve ESI in anticipation of ligation, parties must take reasonable steps to preserve it. FED. R. CIV. P. 37(e). A party is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Colonies Partners*, 2020 WL 1496444, at \*8 (citing *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012)). A litigation hold or preservation order is often the "most appropriate mechanism to ensure potentially relevant documents and information are not lost deliberately or unintentionally." *See Colonies*

*Partners*, 2020 WL 1496444, at *9; *Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, No. 3:13-cv-001012-SLG, 2016 WL 7115911, at *4 (D. Alaska Dec. 6, 2016). For example, "[i]t is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances. [] However, once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant [recordings]." *Sec. Alarm Fin. Enters.*, 2016 WL 7115911, at *4 (internal citations and quotation marks omitted).

Pursuant to their retention policies, surveillance video at the County Jail should have been preserved for two years. ECF No. 111-5 at 47–53. However, Captain Williamson, the County's Rule 30(b)(6) witness, stated that "there probably isn't a single deputy on the department that knows that this retention schedule exists." ECF No. 111-5 at 44. Instead, surveillance video is automatically overwritten when the facility DVRs "start reaching the data retention threshold," which was estimated to be within "about nine months." *Id*. 53. Captain Williamson also stated that there are no policies or procedures regarding how to preserve evidence in response to an attorney's preservation request. ECF No. 111-5 at 29–30, 32.

If the County had followed its own retention policies, the video would have been preserved for two years, until March 2024. Plaintiffs' discovery requests were propounded on August 2, 2023, well before the two-year period lapsed. ECF No. 111 at 6. Based on Captain Williamson's testimony, the video footage would have been overwritten in approximately nine months, in December 2022, which was still well after the duty to preserve attached. The County does not claim to have exerted any effort to ensure that it was preserving information after it received the tort claim on September 15, 2022, the latest date that the duty attached and before the footage would have been overwritten.

Captain Williamson also testified regarding the County's informal procedures. The initial review of the video to determine what was preserved was done by a deputy in the sheriff's homicide investigation unit. ECF No. 111-2 at 35. There was no indication by

Captain Williamson, and the County does not argue in its brief, that the determination of what portions of video to preserve was supervised by an attorney. Additionally, "typically the[] [homicide investigator's video download] request would be for all times that the individual was on video, going back a certain timeframe." ECF No. 111-5 at 35; *see also id*. at 35 ("that deputy starts reviewing and downloading all video where[,] like specifically in this case, where it would say that videos or photographs of Mr. Schuck or related events"). Plaintiff aptly notes that the County did not follow its informal procedures, either, with regard to this case. In the early morning of March 15, 2022, Deputy Holman and Corporal Gonzalez found Hayden in a soiled cell, pantsless, covered in either food or feces, and talking to himself, so they took him out of his cell to see Nurse DeGuzman. ECF No. 111 at 10. "Video of them interacting with Hayden at the door of his cell and escorting him away from his cell on the second floor was not preserved. Rather, the video starts back up that morning at 8:01 a.m. in a different hallway." ECF No. 111 at 10.

The Court finds that the County failed to take reasonable steps to preserve the videos. *See e.g.*, *Sec. Alarm Fin. Enters.*, 2016 WL 7115911, at *4 (D. Alaska Dec. 6, 2016) (finding that phone recordings were lost because plaintiff failed to take reasonable steps to preserve them, explaining that "reasonable steps were available: [plaintiff] preserved some of its Alaska phone calls, and admits that it 'had the ability to extract calls with customers in Alaska from its recording system to avoid such calls from being overwritten.'"); *cf. Ramos v. Swatzell,* No. EDCV-12-1089-BRO,SPx, 2017 WL 2857523, at *6 (C.D. Cal. June 5, 2017) (finding spoliation and ordering an adverse inference, noting that "[a]lthough CDCR properly imposed a litigation hold, it failed to take appropriate steps to carry it out. … By failing to notify the appropriate records personnel of the hold, the hold was meaningless."). The County did not place a litigation hold in March 2022, when by its own policies it anticipated litigation; in April 2022, when it received a preservation letter; or in September 2022, when it received a formal tort claim. The County did not follow its

//

//

3:23-cv-00785-DMS-AHG

formal document retention policy. The County did not follow its informal policy to preserve all video that shows an inmate, since any video of Hayden leaving his cell on March 15, 2022, was also not preserved.

### C. The Videos Cannot be Restored or Replaced through Additional Discovery

The last prerequisite to a spoliation finding is that the ESI "cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e). "This requirement precludes a court from awarding sanctions when ESI has been lost, but, for example, the very same information is recoverable from a third party or from a back-up source." *Sec. Alarm Fin. Enters.*, 2016 WL 7115911, at *4; *see* FED. R. CIV. P. 37(e), advisory committee notes on 2015 amendment (Rule 37(e) "applies only when such information is lost. Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."). No party has suggested that the lost video footage is available from any other source, such as a backup server, or could be restored. *See* ECF No. 111 at 17.

Also, the data is "not irreplaceable if such evidence appears to be largely duplicative of evidence already in the record." *Colonies Partners*, 2020 WL 1496444, at *5; *see Sanchez v. Jiles*, No. CV-10-09384 MMM-OPx, 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012) ("The availability of other sources or types of evidence, in addition to the despoiled evidence may be considered by a court in determining if a sanction is warranted.") (internal citations and quotation marks omitted). Here, the Court agrees with Plaintiff that the footage is not replaceable with other types of evidence.

First, Plaintiffs asserts that the Area Activities Logs were routinely incorrect and, in this matter, for example, "list only five meals and omit thirteen additional entries which would have occurred if deputies logged meals correctly." ECF No. 111 at 18. The County does not dispute Plaintiffs' suggestion that the logs were not accurate. Instead, it argues that "the video would offer no more information than the area activity reports produced that also document the timing of the safety checks that deputies performed in that area."

ECF No. 118 at 7. The Court finds that logs are not an adequate substitute of the video footage.

Second, the Court agrees with Plaintiffs that testimony is not an adequate alternative to video. For example, while some of the probative value of the video footage may be replaced through witness testimony and other records, "those other sources are not a complete and fair substitute, given that Decedent is unavailable to provide h[is] own testimony regarding the events leading up to h[is] death." *Scalia v. County of Kern*, 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023) (finding spoliation and ordering an adverse inference when defendant failed to preserve jail surveillance video when a pretrial detainee died, noting that "the video footage would have provided a level of objective information that may not necessarily be accurately reflected by witness testimony or written documentation"); *see also Gelazela v. Santa Ana Police Dep't*, No. 8:21-cv-01126-HDV-DFM, 2024 WL 1136338, at *3 (C.D. Cal. Feb 16, 2024) (finding spoliation and explaining that "the best evidence of indifference would be the video footage. Without it, Plaintiff will have to rely on his and the officers' testimony, which is no substitute for direct video evidence. This is especially true considering that Plaintiff will need to establish that the officers were subjectively aware that they knew of and disregarded an excessive risk to Plaintiff's safety."). Here, the Court agrees that "Plaintiffs cannot know what they do not know." ECF No. 111 at 24 ("Plaintiffs will never know if deputies conducted any Title 15 safety checks on him during that period, whether he received meals in a timely manner, whether he was taken out of his cell for any reason, or any details depicted on camera of his interaction with Deputy Holman and Corporal Gonzalez, including his demeanor but also the officers' reactions to seeing him and the state of his cell, the timing of their decision to take him to medical, and etcetera"). The Court disagrees with the County's contention that the video would not have been relevant because it did not show the opening to or inside of Hayden's cell. ECF No. 118 at 8–9. The video would have confirmed whether anyone

checked on Hayden during the relevant time period.[6] Also, the Court agrees that Deputy Holman's and Corporal Gonzalez's testimony is not an adequate substitute for video of their encounter with Hayden on March 15, 2022. ECF No. 128 at 5–6; *see Phan v. Costco Wholesale Corp*., No. 19-CV-05713-YGR, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020) (noting that two of defendant's employees who viewed the video before it was deleted and testified about their recollection of plaintiff's fall "may be biased in their recollections").

The County argued at the hearing that Plaintiffs cannot be prejudiced by the loss of video during the missing time period because the County produced ample video footage immediately after that showed Hayden's condition. But this argument actually underscores why the missing time period is particularly critical. At the end of the missing time period, there is evidence that Hayden was found in a state of decompensation – pantsless and covered in food and/or feces. ECF No. 111-1 at 3; *see* ECF No. 111 at 10, 23. The video from the hallway outside his cell for the 55 hours leading up to that moment, in addition to the video of Hayden in that hallway after he was found, would have been highly probative as to the cause of that decompensation, including whether it was the result of neglect. That issue is at the core of this litigation. The video from a different location, after Hayden was removed from the holding cell, cannot replace the footage from the missing time period.

Therefore, the Court finds that the videos cannot be restored or replaced through additional discovery.

---

[6] Plaintiffs include a video as an exhibit to illustrate that the footage would have been relevant. ECF No. 128 at 4–5; *see* ECF No. 128-3. Plaintiffs explain that "(1) the mirror in the top corner at the right shows part of the area past the perpendicular hallway, and (2) part of the perpendicular hallway is visible such that a viewer can tell when someone turns the corner instead of going toward Hayden's cell, as the other deputy does in this clip. Accordingly, the missing footage would have revealed whether Hayden was in fact forgotten about for over two days as circumstantial evidence tends to show." ECF No. 128 at 4–5; *see also id*. at 5 n.1 (noting that Hayden "had an extremely low BMI and was severely dehydrated at the time of his death").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.    The County Acted with the Intent to Deprive the Other Party of the Information

The Court finds by a preponderance of the evidence that the prerequisites to sanctions under Rule 37(e) are satisfied for the deleted videos. The County had a duty to preserve the videos after March 16, 2022, (or September 15, 2022, at the latest); it did not take reasonable steps to preserve them; and they cannot be restored or replaced through additional discovery. *See* FED. R. CIV. P. 37(e). With these prerequisites satisfied, the Court must now determine whether the additional requirements for sanctions under Rule 37(e)(1) and (e)(2) are satisfied.

The severity of the sanctions allowed increases "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2). Rule 37(e) does not define "intent," but in context, the word "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734-36 (9th Cir. 2024); FED. R. CIV. P. 37 advisory committee note to 2015 amendment (stating that negligence or even gross negligence is insufficient). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones*, 95 F.4th at 735; *see Gelazela*, 2024 WL 1136338, at *2 ("Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence"); *see also CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14-CV-1191-JLS-KSC, 2019 WL 6527951, at *10 (S.D. Cal. Dec. 4, 2019) (following Ninth Circuit precedent permitting intent under Rule 37(e)(2) by preponderance of the evidence). Relevant considerations include "the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation." *Laub v. Horbaczewski*, No. CV-17-6210-JAK, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020).

The parties filed their Joint Case Management Statement on August 7, 2023. ECF No. 43. There, the parties represented to the Court that "counsel for all [p]arties met and conferred by July 14, 2023." ECF No. 43-1 at 4. In their joint filing, Plaintiffs listed that one of the anticipated subjects of discovery included "[t]he conditions under which Hayden Schuck was housed and monitored while detained. … The timing, circumstances, and nature of safety checks performed on Hayden Schuck in the days prior to his death." ECF No. 43-1 at 6. The parties also jointly represented that they "do not anticipate issues with respect to preservation of ESI." ECF No. 43-1 at 8. Further, the parties confirmed that they "have reviewed the Checklist for Rule 26(f) Meet and Confer Regarding [ESI] and have met and conferred fully regarding the preservation and discovery of ESI. ... The Parties also do not anticipate issues with respect to preservation of ESI." ECF No. 43 at 8. The Court's ESI Checklist included a "preservation" section, which listed the following applicable items for the parties to discuss: "The description of data from sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved[;]" "[t]he description of data from sources that [] the party believes could contain relevant information but [] has determined, under the proportionality factors, should not be preserved[;]" "[w]hether or not to continue any interdiction of any document destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically-recorded material[;]" and "[a]ny disputes related to scope or manner of preservation." *Checklist For Rule 26(f) Meet and Confer Regarding Electronically Stored Information*, at 1, https://web.archive.org/web/20230626121904/https://www.casd.uscourts.gov/Judges/goddard/docs/Goddard%20Electronically%20Stored%20Information%20Checklist.pdf (available from August 29, 2019, to October 20, 2023). By the time the parties had met and conferred, relevant video had already been deleted. The Court's reasonable expectation is that the County had checked with its client prior to this conference to re-confirm that all relevant footage had been preserved. If the County had inadvertently failed to preserve the videos, the Court expects it would have acknowledged that during this conference, when it

was required to discuss the issue. Thus, the County's failure to acknowledge the video deletion can plausibly lead to an inference of an intent to deprive. *Compare* ECF No. 43-1 at 4 (parties met and confer regarding, among other things, preservation on ***July 14, 2023***) *with* ECF No. 111 at 6 (County counsel notified Plaintiffs on ***April 15, 2024***, that no video existed during the missing time period). Further, if the County had followed its two-year retention policy, the footage would have been available, if it was not intentionally destroyed before then, at the time (1) the preservation letter was received; (2) the tort claim was filed; (3) the complaint was filed; (4) the Rule 26(f) meet and confer had been held; and (5) the discovery requests were served. *See Musse v. King County*, No. C18-1736-JCC, 2021 WL 4709875, at *4 (W.D. Wash. Oct. 8, 2021) (finding intent when the county "overwrote footage of the assault not 'according to' its record-retention policy, but in spite of it"); *Colonies Partners*, 2020 WL 1496444, at *11 (the court "concludes that Defendants failed to take reasonable steps to preserve electronic evidence and infers from the timing of the deletion of emails and texts that Defendants intended to deprive Plaintiffs of such information"); *see also Gonzalez v. Target Corp*., No. CV-22-9089-JAK-PVCx, 2024 WL 589147, at *3, *5 (C.D. Cal. Jan. 23, 2024) (finding that defendant acted culpably when it retained three excerpted video clips totaling five minutes, when its retention policy was to retain video footage 30 minutes before and after any incident).

    In an effort to show the adequacy of its production, the County explains that "[t]he temporary court holding cells do not have video surveillance pointing at all of the cell doors the way that the regular housing modules do; and the CCTV camera in Schuck's area was mounted directly above his door. [] Even though the video from this area included neither images from the inside of Schuck's cell nor even the doorway to his cell, the Sheriff's Office retained 36 hours of footage from the camera that was recorded while Schuck was in the cell, and the County produced that video in this litigation." ECF No 118 at 3 (internal citations omitted). However, such selective preservation is troubling here, and moves the County's conduct beyond negligence. Captain Williamson's testimony further demonstrates that the County selectively preserved certain video footage, again leading to

an inference of the County's intent to deprive:

> [Hayden] was placed in a cell directly under a camera. And if I remember correctly, there's approximately 36 hours of video that continues after that. And in speaking with Deputy Hahn, I asked, "Why would we put that video in, but not continue to put the rest down there?" He said, "Well, if the individual wasn't on video, then we didn't necessarily have to pull the video." But if it was a blind spot, sometimes he or his partners would pull an extended amount of video just to show the level of activity -- the safety checks continuing to occur in the area, nursing staff going back into the area to provide medication, deputies passing out meals stuff of that nature. So I did ask why there was that 36 hours, but not any video after that. He said -- and that was the response. He said, "If we ran into a situation like that, where the person was off video for an extended period of time, then we would pull enough to show that the legal monitoring requirements and care were being taken, and then move on to the next time that that person did show up on video."

ECF No. 111-5 at 37. The County provides no further explanation as to why certain footage of the blind spot was preserved and some was not. *See Jones*, 95 F.4th at 735–36 (rejecting plaintiff's argument that "her production of thousands of text messages 'negates the intent and prejudice elements of Rule 37(e).' But production of some evidence does not excuse destruction of other relevant evidence.").

As the Court discussed in the hearing, had there been footage of deputies walking down the hall during the missing time period, even though the camera angle would not have captured whether they actually checked on Hayden, a reasonable inference could have been drawn that they did. One could infer from the omission of the footage that the camera did not capture any activity in the hallway, a fact that would support Plaintiffs' allegations. The County's decision to selectively preserve 36 hours of the footage after Hayden was placed in the cell, but not the 55 hours before he was found in a state of decompensation or when he was removed from the cell as a result, is evidence of an intent to deprive. This is especially true given that the County has acknowledged that video footage closer in time to Hayden's death is more relevant. ECF No. 118 at 2 ("Schuck presumably would have been doing worse closer in time to his death"); *see also id*. at 9 (the missing video "would

not be as relevant or as helpful as this video from the day before Schuck's death[,] []i.e., he would not have looked worse two days before his death than he did on the day before his death").

The Court is also concerned that the County has not been able to identify the employee who reviewed the video and made decisions regarding what portions should be preserved for the purpose of the County's homicide investigation. ECF No. 111-5 at 37 (Captain Williamson testified that "Deputy Hahn, who specifically does not remember pulling the video in this case, but he did walk me through the thought process that he and his partners would typically take."); *id*. at 42–43 (with regard to preserving the video, Plaintiffs' counsel asked, "you don't know who it was that would have done that review[7] and made that decision?" Captain Williamson responded, "Correct."). The Court is unaware of any legal training this unidentified employee may have had. Allowing self-collection by clients without attorney guidance is highly problematic. *See cf. In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR-PHK, 2024 WL 4125618, at *14 (N.D. Cal. Sept. 6, 2024) (explaining that "permit[ing] an interested party or person to 'self-collect' discovery without any attorney advice, supervision, or knowledge of the process utilized" is problematic in light of attorneys' ethical duties) (internal citation omitted); *accord Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*, No. 19-CV-81320, 2020 WL 3581372, at *3 (S.D. Fla. July 2, 2020) ("Attorneys have a duty to oversee their clients' collection of information and documents, especially when ESI is involved, during the discovery process. Although clients can certainly be tasked with searching for, collecting, and producing discovery, it must be

---

[7] S*ee* ECF No. 111-5 at 42 ("I would say just based on the thoroughness in which the video was pulled, and that the next time Mr. Schuck left that cell, video was recorded. I would say that somebody did review video during the entire time period, whether it was on fast-forward or in realtime. I doubt in realtime. It would take days. But based on the fact that the next piece of video that was pulled was Mr. Schuck leaving that cell to get dressed and go to court, I believe somebody reviewed that time period in between.").

3:23-cv-00785-DMS-AHG

accomplished under the advice and supervision of counsel, or at least with counsel possessing sufficient knowledge of the process utilized by the client. Parties and clients, who are often lay persons, do not normally have the knowledge and expertise to understand their discovery obligations, to conduct appropriate searches, to collect responsive discovery, and then to fully produce it, especially when dealing with ESI, without counsel's guiding hand.").The County did not provide any evidence in its opposition to support that this person's preservation decision was re-examined after the County received the preservation letter or the tort claim. At the hearing, the County suggested that the reason why the unidentified employee preserved some of the blind spot footage, but not all, was because they were being "over-inclusive." This explanation makes no sense. If a person were being "over-inclusive," they would preserve *more* footage, not less; and they would preserve the footage that the County acknowledges was more relevant – the footage closer to Hayden's death. *See Gonzalez*, 2024 WL 589147, at *5 (finding willfulness and explaining that "Target employee's decision to retain three short, excerpted video clips … while excluding all other footage, demonstrates a conscious disregard of Target's obligations").

Therefore, the Court finds by a preponderance of the evidence that the County had an intent to deprive in deleting the video footage from the missing time period. *See Musse*, 2021 WL 4709875, at *4 ("The County's fault is significant. It apparently knew what its retention policy required, did not follow the policy, and does not try to explain why. … Whether one calls this 'willful,' 'intentional,' or 'conscious disregard,' it is enough to put Rule 37(e)(2) sanctions in play"); *see also Gonzalez*, 2024 WL 589147, at *5–*6 (finding that defendant acted willfully when it consciously disregarded its own retention policies and issuing permissive adverse inference jury instruction).

### E. Appropriate Remedies

The range of spoliation sanctions "is broad and the court has significant discretion [to] determine what measure is appropriate." *Laub*, 2020 WL 9066078, at *8 (citing FED. R. CIV. P. 37 advisory committee note to 2015 amendment). Rule 37(e) authorizes two tiers

of sanctions for spoliation. If there has been a finding of prejudice, the Court "may order measures no greater than necessary to cure the prejudice." But Rule 37(e) reserves the harshest sanctions for instances where the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2).

Rule 37(e)(2) does not require a showing of prejudice to warrant sanctions. FED. R. CIV. P. 37(e) advisory committee notes to 2015 amendment ([T]he finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."); *see also Jones*, 95 F.4th at 734–36. Nonetheless, it is appropriate to consider prejudice when assessing the appropriate remedy for spoliation. The Court finds that the prejudice to Plaintiff is clear. The footage would be relevant even if it never showed Hayden or anyone else. In that case, it would demonstrate a lack of medical attention. If, instead, the footage showed people coming to the cell, they would be witnesses to Hayden's condition. Further, as discussed above, the County did not dispute that the reliability of the logs is questionable and is not an adequate substitute for the video footage. *See Musse*, 2021 WL 4709875, at *4 ("The County's assertion that Musse cannot show prejudice [] is unpersuasive. The other available evidence—eyewitness testimony from an inmate, and curt statements from the County's own employees—is not a serviceable substitute.").

### 1. Terminating Sanctions

Terminating sanctions are generally disfavored and should be imposed sparingly. *Jones*, 2022 WL 3682031 at *11. Terminating sanctions are warranted under Rule 37(e) where "(1) the violation is due to willfulness, bad faith, or fault of the party, [] (2) the misconduct penalized relates to matters in controversy in such a way as to interfere with

/ /
/ /
/ /
/ /

the rightful decision of the case, [] and (3) the five factors[8] set forth in *Anheuser-Busch* weigh in favor of terminating sanctions. *Twins Special Co., Ltd. v. Twins Special, LLC*, No. 23-cv-223-JES-DDL, 2025 WL 1292528, at \*9 (S.D. Cal. May 5, 2025) (internal citations and quotation marks omitted).

Here, the Court finds that the conduct was not so unconscionable to warrant default judgment against the County. *See Colonies Partners*, 2020 WL 1496444, at \*12 (imposing permissive adverse inference instruction and denying plaintiff's request for terminating sanctions because "terminating sanctions should be reserved for the most egregious cases of misconduct"). Although the video footage from the missing time period would have been probative and relevant, the fact that it is missing does not mean that the case cannot be determined on the merits. *See id.* ("The record in this case does not support that Plaintiffs are so harmed by the spoliation as to be unable to present their case"). The spoliation here can be addressed through less drastic sanctions. *See Welter v. Hurt*, No. 2:23-cv-02627-SPG-MARx, 2025 WL 1843263, at \*10–\*12 (C.D. Cal. Apr. 1, 2025) (imposing a mandatory adverse inference instruction instead of terminating sanctions because public policy favors dispositions on the merits, explaining that, "[w]hile this Court still believes that terminating sanctions may be the most effective remedy here, evidentiary sanctions will sufficiently remedy the spoliation of the Google Workspace, while still allowing [the case] to proceed to the merits").

### 2. Adverse Inference Jury Instructions

District courts have "broad discretionary power to permit a fact-finder to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Earp v. Davis*, 881 F.3d 1135, 1143 (9th Cir. 2018). Adverse inference

---

[8] The five factors include: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

jury instructions range in their level of severity. *Gelazela*, 2024 WL 1136338, at *3. In the harshest form, "when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true." *Apple*, 881 F. Supp. 2d at 1150. At the next level, "when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption." *Id*. One step below that, the "instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id*. The least harsh sanction has the jury hear a short factual statement at trial regarding the spoliation of the evidence. *See, e.g.*, *Porter v. City & County of San Francisco*, No. 16-3771, 2018 WL 4215602, at *4–*5 (N.D. Cal. Sept. 5, 2018) (ordering that jury be informed that defendant had a duty to preserve a copy of the discovery, and that despite that duty, the recording of the call was erased).

Here, as an initial matter, the Court finds that an adverse inference jury instruction is warranted. *See, e.g.*, *Scalia*, 658 F. Supp. 3d at 816 (adverse inference given when the deleted surveillance video "is manifestly relevant in determining whether Decedent received appropriate treatment and was treated and housed appropriately. While some of the probative value of the video footage may be replaced through witness testimony and medical records, those other sources are not a complete and fair substitute, given that Decedent is unavailable to provide her own testimony regarding the events leading up to her death. The video footage would have provided a level of objective information that may not necessarily be accurately reflected by witness testimony or written documentation"); *see also Apple*, 881 F. Supp. 2d at 1149-50 (finding that an adverse inference instruction was warranted because defendant consciously disregarded its obligation to preserve relevant evidence despite having ample notice that the evidence was potentially relevant to litigation).

The Court further finds, regarding the severity of the adverse inference instruction, that a permissive adverse inference instruction is warranted. The Court does not need to reach the issue of bad faith, because Plaintiffs did not allege that in their motion. The record indicates, however, that the County had a duty to preserve surveillance footage—when

Hayden died, when it received Plaintiffs' preservation letter, when it received Plaintiffs' tort claim, and when it was served with Plaintiffs' complaint—and that the County did not comply with its formal and informal policies to preserve the video footage. As discussed above, the evidence supports a finding that the County had the intent to deprive Plaintiffs of the footage. Additionally, the loss of the video footage prejudices Plaintiffs, especially with regard to the encounter with Deputy Holman and Corporal Gonzalez, which was deleted, and with regard to the Title 15 safety checks, for which the logs that were kept are inaccurate. *See Musse*, 2021 WL 4709875, at *5 ("A permissive adverse inference instruction is sufficient to cure this prejudice. That would 'deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence.'") (quoting *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 386–87 (9th Cir. 2010)).

Other factors also persuade the Court that a permissive inference is more appropriate than a mandatory inference in this matter. For example, Plaintiffs' operative complaint names 25 defendants, one of whom is the County and nine of whom are Doe defendants. ECF No. 78. Since there is no evidence before the Court that the other fifteen named defendants participated in the spoliation, the Court finds that a permissive inference will be the least prejudicial to the other defendants. *See, e.g.*, *Scalia*, 658 F. Supp. 3d at 817 (issuing permissive adverse inference instruction when other defendants did not participate in the spoliation and collecting cases). Any potential prejudice to the other fifteen defendants here can be mitigated because of the permissive nature of the instruction, "by the [County] submitting sufficient rebuttal evidence to persuade the jury not to draw the adverse inference altogether, and by crafting the language of the permissive adverse inference instruction." *Id*.

With respect to the County, any sanction less than a permissive adverse inference instruction would be "unfair to Plaintiff[s] and may incentivize the County to spoliate future evidence if no adverse inference instruction is imposed in this case." *Id*. Thus, the Court need not address Plaintiffs' alternative request for lesser sanctions. ECF No. 111 at 5

(alternatively seeking the preclusion of testimony regarding County employees and contractors acting in accordance with policies and procedures for the period when there is no video).

Therefore, the Court **RECOMMENDS** that Plaintiffs' motion for sanctions be **GRANTED** and that a permissive adverse inference instruction be provided to the jury. The Court **RECOMMENDS** that the district judge **ORDER** the parties to meet and confer regarding the precise language for the permissive adverse inference instruction that is consistent with the analysis and concerns expressed in this report and recommendation. Plaintiffs should provide a first draft of the proposed instruction for Defendants' review and comment. The parties will be expected to submit either a joint instruction or separate instructions in connection with the submission of proposed jury instructions after the pretrial conference and issuance of the Court's pretrial order. If the parties submit separate proposed instructions for the permissive adverse inference instruction, the parties will be required to explain in writing the efforts they took to meet and confer to craft the language for the permissive adverse inference instruction. *See Scalia*, 658 F. Supp. 3d at 817 n.5.

## VI.    PLAINTIFFS' REQUEST FOR ATTORNEY FEES

Within their motion, Plaintiffs "request attorney[] fees for time spent investigating and on litigation regarding the issue of spoliation, including the deposition of Capt[ain] Williamson, drafting of this motion and any reply, and any oral argument. In the event the Court grants attorney[] fees, Plaintiffs request the Court set a briefing schedule to determine the appropriate amount." ECF No. 111 at 23. In its opposition brief, the County does not oppose Plaintiffs' request for attorney fees. *See generally* ECF No. 118 (no mention of attorney fees).

Rule 37(e)(1) permits courts to award costs and fees associated with spoliation. *Colonies Partners*, 2020 WL 1496444, at *12–*13 (finding attorney fees appropriate under Rule 37(e) given a finding of prejudice for spoliation of text messages and emails); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 522 (C.D. Cal. 2022) (finding attorney fees available for spoliation under Rule 37(e)(2) upon a finding of prejudice to the

party deprived of the information); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1241 (N.D. Cal. 2022). ("An award of attorney[] fees for bringing a sanctions motion is an appropriate remedy for spoliation under Rule 37(e)(1) as 'measures no greater than necessary to cure the prejudice,' even where a party fails to show bad faith under Rule 37(e)(2).").

As discussed above, Plaintiffs are prejudiced by the County's spoliation and, thus, the Court **RECOMMENDS** that Plaintiffs' request for attorney fees be **GRANTED**. *See Conley 360 LLC v. Torrey Pines Dev. Grp. LLC*, No. CV-23-01078-PHX-GMS, 2025 WL 218382, at *4 (D. Ariz. Jan. 16, 2025) (ordering an adverse jury instruction and awarding attorney fees for spoliation motion); *Scalia*, 658 F. Supp. 3d at 817–18 (ordering permissive adverse inference instruction and awarding attorney fees). The Court **RECOMMENDS** that the district judge set deadlines for supplemental briefing regarding the amount of attorney fees to be awarded, or refer the matter to the undersigned for further proceedings.

## VII.   THE COUNTY'S REQUEST FOR JUDICIAL NOTICE

The County's opposition brief includes a request for judicial notice. ECF No. 118-3. There, the County requests that the Court take judicial notice of the declaration of Captain Kyle Bibel, which was filed on March 24, 2022, in support of the County's summary judgment motion in *Jones v. Gore*, Case No. 37-2021-00010648-CU-MC-CTL, in the San Diego County Superior Court. *Id*. The County seeks to use Captain Bibel's declaration in the instant matter to explain the booking and housing process at county jails during the COVID-19 pandemic. *See* ECF No. 118 at 3 (citing to Captain Bibel's declaration once). Plaintiff did not oppose the County's request in its reply brief. *See* ECF No. 128.

The Court may take judicial notice of and consider facts that are not subject to reasonable dispute, including facts in public records. *See* FED. R. EVID. 201(b) ("judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and

ready determination by resort to sources whose accuracy cannot reasonably be questioned."). "A court may not, however, take judicial notice of the contents of declarations filed in other cases without an independent basis for doing so." *Geanta v. Compass Health*, No. CV-13-07416-BRO-JCGx, 2017 WL 11634735, at *3 (C.D. Cal. July 3, 2017); *Bass v. County of Butte*, No. CIV-S-02-2443 DFL/CG, 2004 WL 1925468, at *2 n.2 (E.D. Cal. Aug. 6, 2004) (plaintiff "seeks judicial notice of a declaration produced in another case in this district. But the court may only take judicial notice of the existence of the document as a public record—there must be an independent basis for taking notice of the facts referenced in the declaration."). Although Captain Bibel's "declaration is a court filing and a matter of public record, its contents are not beyond reasonable dispute." *Urrutia v. Chipotle Mexican Grill, Inc*., CV-16-02065-BRO-MRWx, 2017 WL 2901717, at *3 (C.D. Cal. June 16, 2017). As a result, although the Court may take notice that Captain Bibel's declaration exists, the Court cannot properly notice its contents. *See, e.g.*, *id*. at *3 n.1 (collecting cases); *Ungureanu v. A. Teichert & Son*, CIV-S-11-0316 LKK-GGH-PS, 2011 WL 4862425, at *2 (E.D. Cal. Oct. 13, 2011) (explaining that the court could not take notice of facts in a declaration opposing summary judgment in another case, but that it could take notice that such a declaration was filed).

Therefore, the Court **RECOMMENDS** that the County's request for judicial notice be **GRANTED IN PART and DENIED IN PART**. ECF No. 118-3. The Court recommends that the existence of Captain Bibel's declaration be judicially noticed, but not the validity of its contents. *See Chavez v. Allstate Northbrook Indem. Co.*, No. 22cv166-AJB-DEB, 2025 WL 1757543, at *6 (S.D. Cal. June 25, 2025) ("Because Exhibit 26 is a court filing in a different case and publicly available, the Court grants Allstate's request to take judicial notice of the existence of Exhibit 26. [] However, the Court declines to grant judicial notice of the factual allegations included in Jack C. Nick's declaration") (emphasis and internal citation omitted). The Court reiterates that this decision does not impact its analysis above, as the contents of Captain Bibel's declaration were not material to any of the Court's findings.

## VIII.  PLAINTIFFS' MOTION TO SEAL

With their Reply, Plaintiffs filed a motion to seal Exhibit A. ECF No. 127. Since Plaintiffs' motion contains a bare request "to file Exhibit A under seal because a third-party detainee appears briefly in the video and the County takes the position that the video is subject to the protective order[,]" (ECF No. 127 at 2), the Court ordered the County to file a brief in support of, or in opposition to, Plaintiffs' motion. ECF No. 129. The County timely responded on July 24, 2025. ECF No. 132.

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm. Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178; *see also Mezzadri v. Medical Depot, Inc.*, No. 14cv2330-AJB-DHB, 2015 WL 12564223, at *3 (S.D. Cal. Dec. 18, 2015).

A party requesting that the court seal materials attached to a non-dispositive motion must make a particularized showing of good cause. *Kamakana*, 447 F.3d at 1180. Here, Both Plaintiffs and the County contend that the exhibit should be sealed because it is subject to a protective order. ECF No. 127 at 2; ECF No. 132 at 2. This reason is itself not sufficient to constitute good cause. *See San Diego Comic Convention v. Dan Farr Prods.*, No. 14cv1865-AJB-JMA, 2018 WL 1744536, at *3 (S.D. Cal. Apr. 10, 2018) ("Indeed, some district courts have declined to seal documents when the sole basis for the request is a protective order that covers them"); *Cortina v. Wal-Mart Stores, Inc.*, No. 13cv02054-BAS-DHB, 2016 WL 4556455, at *1 (S.D. Cal. Sept. 1, 2016) ("[P]arty's designation of documents as 'confidential' pursuant to such [protective] order, is not itself sufficient to show good cause"); *Durham v. Halibrand Performance Corp.*, No. 14cv1151-DMS-JLB,

3:23-cv-00785-DMS-AHG

2014 WL 12520130, at *1 (S.D. Cal. Dec. 12, 2014) ("That a document is designated confidential pursuant to a protective order is of little weight when it comes to sealing documents which are filed with the Court").

The County also articulated, however, specific reasons why this video should be sealed. *See Kamakana*, 447 F.3d at 1178 (explaining a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure). Exhibits A "shows a hallway of holding cells on the second floor, entry and exit points, the security camera angle, the location of the security camera, and the location of a security mirror to see around corners. None of this is public information." ECF No. 132 at 2. Further, Exhibit A "also shows multiple individuals that are not parties to the case, including at least two deputies and one detainee. The security and privacy concerns of these individuals should also be taken into consideration[.]" *Id*. The Court agrees that public disclosure of this information could be detrimental to both the County and the non-parties. Good cause appearing, the Court **RECOMMENDS** that Plaintiffs' Motion to Seal Exhibit A be **GRANTED**. ECF No. 127.

The Court notes that, in the interest of time and efficiency, court staff recommended to Plaintiffs' counsel that they email the Court a copy of the video via a hyperlink instead of delivering a physical CD or USB Drive to the Clerk's Office, so the Court would have time to review the video in advance of the July 29, 2025, hearing. Email from Chambers (July 22, 2025, at 11:29 AM) ("Thank you for sending along your proposed order. I see that it mentions a video. In the event that you plan to attach a video as an exhibit, we ask that you do not provide it in physical form (like a USB drive or CD) and that you instead provide a web link (such as Google Drive) to me at this email address. If you are not attaching a video, please disregard this email"); Email to Chambers (July 22, 2025, at 11:32 AM) (video link). Given that the exigency regarding the upcoming hearing has passed, the Court recommends that Plaintiffs lodge under seal the physical video with the Clerk's Office while this report and recommendation is pending, as it did it with the videos sought to be sealed in their summary judgment briefing. ECF Nos. 123, 124.

## IX.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Dana M. Sabraw under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

(1) approving and adopting this Report and Recommendation;

(2) directing that Plaintiffs' Motion for Sanctions (ECF No. 111) be **GRANTED**, and require the parties to meet and confer regarding the precise language for the permissive adverse inference instruction and submit either a joint instruction or separate instructions in connection with the submission of proposed jury instructions after the pretrial conference and issuance of the Court's pretrial order;

(3) directing that Plaintiffs' Request for Attorney Fees be **GRANTED**, and require supplemental briefing to determine the appropriate amount or refer the matter to the undersigned for further proceedings;

(4) directing that the County's Request for Judicial Notice (ECF No. 118-3) be **GRANTED IN PART and DENIED IN PART**; and

(5) directing that Plaintiffs' Motion to Seal (ECF No. 127) be **GRANTED.**

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **August 15, 2025**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **August 22, 2025**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 1, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:23-cv-00785-DMS-AHG