DAVID J. SMITH, Acting County Counsel (SBN 185643)
By STEVEN P. INMAN, II, Senior Deputy (State Bar No. 227748)
  SOFIA L. REZVANI, Senior Deputy (State Bar No. 333447)
  LINDSEY M. BURNETTE, Senior Deputy (SBN 294888)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 884-2931
Facsimile: (619) 531-6005
Email: Steven.Inman@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, William Gore, Kelly Martinez, Jon Montgomery, DO, Jessica Ramirez, Justin Page, Allan Valbuena, Jameelyn Barrera, Romeo DeGuzman, Emily Lymburn, Carina Echon, Jennifer Vivona, Thomas Mace, and Jeff Amado

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of William Hayden Schuck; Sabrina Schuck; Timothy Schuck,<br><br>    Plaintiffs,<br><br>    v.<br><br>County of San Diego; Bill Gore, in his individual capacity; Kelly Martinez, in her individual capacity; Coast Hospitalist Medical Associates, Inc., (CCMG); Mark O'Brien, in his individual capacity; Correctional Healthcare Partners, (CHP); NaphCare; Barbara Lee, in her individual capacity; Jon Montgomery, DO, in his individual capacity; Jameelyn Barrera, in her individual capacity; Romeo Deguzman, in his individual capacity; Emily Lymburn, in her individual capacity; Carina Echon, in her individual capacity; Deputies Does 1-10, in their individual capacity; Medical Providers Does 1-6, in their individual capacities; Deputy Supervisor Does 1-6,<br><br>    Defendants. | No. 23-cv-00785-DMS-AHG<br><br>**COUNTY DEFENDANTS' OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Judge: Hon. Dana M. Sabraw<br><br>Magistrate Judge Hon. Allison H. Goddard |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. PERTINENT FACTS ................................................................................................. 2

III. STANDARD OF REVIEW ....................................................................................... 5

IV. NO COUNTY EMPLOYEE INTENTIONALLY DELETED THE VIDEO OR ACTED WITH A CULPABLE STATE OF MIND ...................................................... 5

V. THE MISSING VIDEO DOES NOT PREJUDICE PLAINTIFFS ........................... 8

VI. PLAINTIFFS' MOTION WAS UNTIMELY .......................................................... 11

VII. CONCLUSION ........................................................................................................ 12

## Table of Authorities

**Cases**   **Page(s)**

*Cottle-Banks v. Cox Commnications, Inc.*,
  2013 WL 2244333 (S.D. Cal. May 21, 2013) ...................................................... 11, 12

*Dawson v. Marshall*,
  561 F.3d 930 (9th Cir. 2009) ..................................................................................... 5

*Est. of Arroyo v. Cnty. of San Diego*,
  2025 WL 1914399 (S.D. Cal. Apr. 14, 2025) ................................................... 3, 4, 5, 7

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..................................................................... 6

*Karnazes v. County of San Mateo*,
  2010 WL 2672003 at *2 (N.D. Cal. July 2, 2010) ..................................................... 6

*Mahboob v. Educ. Credit Mgmt. Corp.*,
  2021 WL 791853 (S.D. Cal. Mar. 1, 2021) .............................................................. 11

*McDonnell Douglas Corp. v. Commodore Business Mach., Inc.*,
  656 F.2d 1309 (9th Cir. 1981) ................................................................................... 5

*Otsuka v. Polo Ralph Lauren Corp.*,
  2010 WL 366653 (N.D. Cal. Jan. 25, 2010) ............................................................ 11

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ............................................................................... 6

*U.S. v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ..................................................................................... 7

*U.S. v. Reyna–Tapia*,
  328 F.3d 1114 (9th Cir. 2003) (en banc) .................................................................. 5

*Wilson v. Cnty. of San Diego,*
  2025 WL 1733194 (S.D. Cal. June 23, 2025) ........................................................... 7

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................................ 10, 5

**Rules and Statutes**

28 U.S.C. § 636 ............................................................................................................. 5

Cal Gov't Code § 26202.6 ............................................................................................ 8

Fed. R. Civ. P. 37 ........................................................................................... 1, 3, 6, 8, 10

Fed. R. Civ. P. 26 ........................................................................................................ 8

## I. INTRODUCTION

County Defendants object to Magistrate Judge Goddard's report and recommendation ("R&R") concerning Plaintiff's motion for sanctions for spoliation of evidence. The duty to preserve documents under Federal Rule of Civil Procedure 37(e) requires reasonableness, not perfection. *See* Committee Notes to 2015 Amendment ("This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection."). The parties do not dispute that the subject camera neither showed Schuck in his holding cell, nor even the door to his cell (to enable jurors to assess the adequacy of safety checks). The camera pointed down the hallway from a position directly above Schuck's cell door, and could neither tilt nor pivot. Because the camera could neither record Schuck in his cell nor record safety checks of Schuck, the County did not believe the video from that camera was relevant or that it had a duty to preserve it.

Neither Plaintiffs' preservation request nor their government claim sought preservation of such video or suggested that Plaintiffs' theory would be that Schuck was "forgotten" in the holding cell. The County could not have anticipated that Plaintiffs would come up with such a theory—particularly when no evidence exists to support it. In fact, this theory is inconsistent with evidence in the case that the second floor of the jail was overcrowded during the COVID-19 intake quarantines—not filled with empty spaces where inmates could be forgotten—and that inmates arriving after Schuck were being placed in holding cells in the same area.

The County and its counsel had a good faith belief that all video of Schuck had been preserved. The County does acknowledge that the missing video would have shown several seconds of Schuck walking in a hallway. But multiple videos taken only seconds later exist that show Schuck walking down hallways to the clinic (including, for example, Exhibit 20 to Plaintiff's Opposition to the County's Motion for Summary Judgment at timestamp 08:01:45). Videos from a short time later also show Schuck leaving the clinic in fresh, clean clothes and taking the elevator to the outcourts area (Exhibit 22 to Plaintiff's Opposition to the County's Motion for Summary Judgment at timestamp

08:01:45). Thus, no prejudice exists from that missing video that would have been before Schuck went to the medical clinic; before Schuck went to court and interacted with others on the way there, at court, and on the way back from court; and before the video that shows Schuck returning from court, returning to a holding cell, and being taken to his assigned housing in the module where he later died. Substantial video exists that was recorded after the alleged missing video.

No County employee intentionally destroyed the video, and the County did not have a culpable state of mind when the video was overwritten in the normal course. In addition, Plaintiffs have not been prejudiced, and even if they had, less severe measures would exist to overcome it. Finally, Plaintiffs' motion should have been denied as untimely. Accordingly, County Defendants respectfully request that the Court sustain this objection to the R&R [ECF No. 142] and not require that an adverse inference instruction be given to the jury.

## II.   PERTINENT FACTS

Schuck died from cocaine and MDMA (Ecstasy) toxicity at the San Diego County Jail on March 16, 2022. No party disputes that these drugs were taken prior to Schuck's entry into the Jail. San Diego Police Department officers had arrested Schuck on March 10, 2021, after a traffic collision for driving under the influence and other offenses including possession of a controlled substance and possession of a loaded concealed weapon. Jail staff permitted Schuck's booking into the Central Jail after initially requiring him to go to UCSD Medical Center, where he refused evaluation and was discharged against medical advice. Once booked into the jail, Schuck was placed in a temporary holding cell for intake quarantine and to await his housing assignment.

The COVID-19 pandemic was ongoing at the time of Schuck's booking and severely limited housing availability. At the time of his booking, the jail was housing more than 300 inmates who were supposed to have been transferred to state prison. Inmates booked on different days also had to be housed separately during their quarantine periods. Under these exigent circumstances, deputies placed Schuck in a cell not typically

used to house inmates. ECF No. 118-1, Exh. A (Williamson Depo.) at p. 44:11-22. Deputies previously used cells in this area to hold inmates going to court. *Id*. That area of the second floor of the jail used to connect to the court with a bridge. *Id*. Deputies placed Schuck in one of these holding cells until he completed his intake quarantine and regular housing became available.

The temporary court holding cells do not have video surveillance pointing at all of the cell doors the way that the regular housing modules do; and the CCTV camera in Schuck's area was mounted directly above his door. *Id*. at pp. 34:17-35:23. Video from the camera could not have shown Schuck inside of his cell or even activity at the doorway to his cell (including safety checks) during the approximately 91 hours that Schuck remained in the holding cell awaiting housing and the completion of his intake quarantine.

Because footage from that camera would not have shown Schuck inside the cell or the safety checks at Schuck's cell door, no one at the Sheriff's Office believed footage from that camera was relevant or that the County had any duty to preserve it. This issue is similar to that in another jail case, *Estate of Arroyo v. County of San Diego*. There, the report and recommendation found no duty to preserve hallway video. *Est. of Arroyo v. Cnty. of San Diego*, 2025 WL 1914399, at *8 (S.D. Cal. Apr. 14, 2025). Nevertheless, it was a practice when there were such blindspots to include some hours of video to show generally the compliance with safety checks and the types of activities going on in the area. ECF No. 111-5, Exh. D at p. 36:9-14. Consequently, 36 hours of footage from the camera outside Schuck's cell was pulled following Schuck's entry into the cell as a sampling of activities in the area. Unfortunately, because the written Area Activity Log did not show Schuck leaving the cell at 8:00 a.m. on March 15, 2022 to go to the medical clinic, the deputy who was instructed to pull all video of Schuck would not have known that a few seconds of video of Schuck walking in the hallway would have existed at that time.

///

Deputies took Schuck to court on March 15, 2022. Multiple videos show Schuck walking down various hallways, getting checked by the nurse before going to court, and sitting and walking in the hallways after returning from court. Footage from CCTV videos then shows deputies taking Schuck to his assigned housing when it became available later that day: video from hallways, the elevator, and the housing module in which the deputies placed him.

After Schuck died on the following day, March 16, 2022, the Sheriff's Office assigned Detective Andrijana Van Lingen as the lead detective to investigate the in-custody death. Van Lingen coordinated with another detective, Detective Meyer, to help her get all video surveillance of Schuck during his time at the jail. ECF No. 118-2, Exh. A (Van Lingen Depo) at p. 36:17-23.

While typically detectives investigating an in-custody death do not pull video from every day of an inmate's incarceration—which, though often requested, is not typically feasible due to lengthy stays in custody—Van Lingen instructed Meyer to obtain "as much video as they had on Mr. Schuck and his movements and where he is housed." *Id*. at pp. 71:22-72:1. During her investigation—which began prior to the County's receipt of Plaintiff's document preservation request—Van Lingen believed that she had received all of the video that was available from the six days of Schuck's incarceration. With respect to the time period in which Schuck was in the holding cell below the camera, she testified, "I believe from my understanding that wherever he was housed, that there was no video of that." *Id*. at. 70:4-71:9. In fact, Deputy Williamson confirmed in his deposition that her assessment was accurate. ECF No. 118-1, Exh. A (Williamson Depo.) at p. 55:25-56:4.

///
///
///

The Sheriff's Office and its lawyers, as well as the County's lawyers, believed that all video of Schuck in the Central Jail and of safety checks on Schuck in the Central Jail were preserved—and no one at the Sheriff's Office or the County ever intentionally deleted any video. *Id*. Further, in compliance with the County's retention policy, no video that the County or Sheriff's Office believed was related to Schuck's death was ever overwritten or deleted—all such video was downloaded from the CCTV cameras and produced in this litigation. *Id*. at p. 51:6-14.

### III.   STANDARD OF REVIEW

When a party objects to a magistrate's report and recommendation, the district court must make a de *novo* determination with respect to the subject matter of the objection. *See* 28 U.S.C. § 636(b)(1)(B); *Dawson v. Marshall,* 561 F.3d 930, 932 (9th Cir. 2009); *U.S. v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord McDonnell Douglas Corp. v. Commodore Business Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981). This de novo determination is especially consequential when an adverse inference is recommended. An adverse inference, "is an extreme sanction and should not be given lightly." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). It often ends litigation because "when a jury is instructed that it may infer that the party who destroyed potentially relevant evidence did so 'out of a realization that the evidence was unfavorable,' the party suffering this instruction will be hard-pressed to prevail on the merits." *Id*. at 219-20 (cleaned-up). Consequently, a court should exercise great care in determining whether an adverse inference is warranted.

### IV.   NO COUNTY EMPLOYEE INTENTIONALLY DELETED THE VIDEO OR ACTED WITH A CULPABLE STATE OF MIND

The County objects to the recommendation of an adverse inference because no County employee intentionally deleted the video, nor did any employee act with a culpable state of mind (e.g., willfulness or gross negligence) in allowing it to be overwritten. "A party seeking an adverse inference instruction based on the destruction of evidence must establish . . . that the records were destroyed with a culpable state of

mind." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006). That requires willfulness or at the very least gross negligence. *Karnazes v. County of San Mateo*, 2010 WL 2672003 at *2 (N.D. Cal. July 2, 2010) ("An adverse inference instruction may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence."). *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013).

Plaintiffs did not allege bad faith, and the R&R does not include any finding of bad faith or even reach that issue. ECF No. 142 at 27. The facts and circumstances surrounding the video do not demonstrate gross negligence either. Plaintiffs requested the preservation of "videos and photographs of Mr. Schuck or related events." Detectives from the Sheriff's homicide unit had already gone through the process of collecting and preserving all video of Schuck. The County was aware of this and had no reason to believe the detectives had not complied with the lead Homicide investigator's instructions.

Plaintiffs sent a preservation letter for video relating to Schuck's "arrest on March 10, his time in custody, and death" or "related events." Such video was preserved. But when Plaintiffs filed their motion for sanctions, they changed their focus from Schuck to the activities of jail staff in the hallways. The preservation letter did not ask for preservation of video of the hallways near Plaintiff's cell or of Sheriff staff walking near Plaintiff's cell. At best the preservation letter was ambiguous with respect to hallways outside of Schuck's cell. See ECF No. 142 at 11. Nor did Plaintiff's government claim form put the County on notice that Plaintiffs were seeking preservation of video that showed the hallways near Schuck's cell or Sheriff staff walking near Plaintiff's cell. Rule 37(e) "does not apply when information is lost before a duty to preserve arises." (Committee Notes to 2015 Amendment of Rule 37.)

///

///

///

In these circumstances, a recent Southern District of California case involving similar allegations about deletion of jail hallway footage is instructive. In that case, Magistrate Judge Steve B. Chu determined the County's conduct in not preserving hallway footage was reasonable. Judge Chu's well-reasoned analysis below reaches a different conclusion than the R&R at issue here:

> Plaintiffs argue that the north/south hallway footage could have "support[ed] their allegations of inadequate safety checks." (ECF No. 179-1 at 11.) Their current focus has shifted away from footage showing Mr. Moreno, and towards the deputies' conduct in the hallway. **In so arguing, Plaintiffs effectively contend that their current focus on the deputies' conduct in the hallway should retroactively dictate whether the County had a legal duty to preserve the north/south hallway footage at a much earlier point in the litigation**. As the Rule 37(e) advisory notes makes clear, the applicable standard is reasonableness, not perfection. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The County's conduct may not rise to the level of perfection, but the Court finds that it meets the standard of reasonableness. Accordingly, the Court finds that Plaintiffs' preservation letter did not give rise to a duty to preserve the north/south hallway footage outside of Mr. Moreno's cell.

*Est. of Arroyo v. Cnty. of San Diego*, 2025 WL 1914399, at *8 (S.D. Cal. Apr. 14, 2025), *report and recommendation adopted sub nom.*, *Est. of Arroyo by & through Wilson v. Cnty. of San Diego*, No. 3:21-CV-01956-RBM-SBC, 2025 WL 1733194 (S.D. Cal. June 23, 2025) (emphasis added). Similarly, in this case, Plaintiffs did not request footage of the hallway to be preserved, and the County had no reason to believe that the footage would be relevant in litigation – especially when the footage would not show Schuck, or into his cell, or the area just outside his cell. *See U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (holding that spoliation requires notice that the records destroyed were potentially relevant to litigation).

Additionally, the R&R includes several unwarranted inferences. First, County Counsel did not know at the time of the Case Management Conference that any video depicting Schuck was missing and would not have imagined that video that neither showed Schuck nor even his cell door to check the adequacy of safety checks would be at

7

No. 23-cv-00785-DMS-AHG

issue. Even as late as Captain Williamson's PMK deposition testimony on October 11, 2024, the County believed that "all of the video where Mr. Schuck was on video was pulled." Counsel's statements during the Rule 26(f) conference that they did not anticipate any preservation issues were accurate at that time.

The R&R also infers intent to deprive from the Sheriff's Office's alleged failure to follow document retention policies. The statement in the R&R that Captain Williamson testified that the County's failure to preserve violated its own retention policies, however, is inaccurate. Captain Williamson testified that "facility incidents" are preserved for two years: deputies download the video, attach it to a use of force or crime report, and then they are uploaded to a net records management system, and also copied onto a disc and stored in the Sheriff's evidence locker for at least the two-year retention timeframe. ECF No. 111-5, Exh D (Williamson Depo) at p. 50:5-15. In this case, however, the subject video did not show "facility incident." Additionally, although the R&R stated County policy requires jail video to be preserved for two years, that County policy refers to documents in general, not jail video. State law allows destruction of jail surveillance video after one year. California Government Code § 26202.6. Accordingly, because the County had no reason to believe that it needed to preserve the hallway video, had no knowledge that video footage of Schuck was missing, and did not fail to comply with the facility incident video retention policy, the overwriting of the video did not occur with a "culpable mind" and an adverse inference is not warranted.

## V.  THE MISSING VIDEO DOES NOT PREJUDICE PLAINTIFFS

The recommended adverse inference is also inappropriate because it is greater than necessary to cure any prejudice. Fed R. Civ. Proc. 37(e) (the court "may order measures no greater than necessary to cure the prejudice."). Other evidence in the case demonstrates that Plaintiffs suffered no prejudice or very little, if any. The parties agree that the camera at issue was directly above the holding cell and had no direct visibility of the cell. Video from that camera neither shows the interior of the cell nor the cell doorway. Therefore, the statement in the R&R that Plaintiffs would have been able to see

8

safety checks on Schuck or details of Schuck's interaction with Deputy Holman and Corporal Gonzalez, including their reactions to seeing Schuck and the state of his cell, is not accurate. The video may have shown deputies headed in the direction of Schuck cell, but a juror could not tell from the video whether the deputy was checking on or delivering a meal to Schuck or another detainee in the same area.[1]

The assertion that the video could have demonstrated that Schuck was "forgotten" in that area is also contrary to evidence. The 36 hours of video produced from the camera shows that while Schuck may have been the first detainee placed in that area, as Captain Williamson testified, "as the time goes on, you can see the other cell doors being closed and people being placed in those cells; in some of those cases, multiple people being placed in those cells and not just a single person." ECF No. 111-5, Exh D (Williamson Depo) at p.61:14-20. Further, a low BMI and dehydration do not prove that Schuck was "forgotten about" in a remote area as Plaintiffs and the R&R suggest. Plaintiffs have argued that Schuck entered the jail with a low BMI and have never asserted the Schuck did not have a water fountain in this cell. No evidence exists to support that theory, rendering Plaintiffs' prejudice argument extremely speculative at best.

Other evidence is also available to cure any perceived prejudice with respect to Plaintiffs' theory. For example, the County has produced deployment logs showing the names of deputies assigned to the safety floor. A dozen or more of those listed (all except Deputy Holman and Cpl. Gonzalez) have never been deposed in this lawsuit and could have information about the holding cells in use during the period Schuck was in the jail and whether detainees were ever "forgotten" in those cells.

Plaintiffs can also claim no prejudice with respect to the assessment of Schuck's physical condition. As discussed above, the only missing video of Schuck from the camera above his cell would be a few seconds of video of his walking away from his cell in the hallway. But the County produced videos of Schuck walking down hallways

---

[1] The R&R also asserts that the video could have shown individuals bringing drugs to Schuck, but while initially believed to be an overdose, no party alleges that Schuck obtained drugs while in jail.

No. 23-cv-00785-DMS-AHG

immediately after that from which a jury could assess Schuck's condition (see e.g., Plaintiff's Exhibit 20 in support of Plaintiff's Opposition to the Motion for Summary Judgment at time stamp 08:01:45). Video footage produced from the same date as the allegedly missing moment includes videos that show Schuck walking down hallways to get to the medical clinic; walking down hallways to the transportation area to leave for court after going to the medical clinic; walking down hallways and being placed in a different holding cell after returning from court; and walking down hallways and riding the elevator to the housing module after receiving his housing assignment. Thus, a plethora of footage exists that jurors will use to assess Schuck's physical condition after leaving the holding cell and to assess whether jail staff should have believed that he was in need of immediate care. Consequently, Plaintiffs have not suffered prejudice and will still be able to argue at trial—without a jury instruction—that the jury should take into account the lack of video from that time period.

Because of the lack of prejudice or minimal prejudice due to the "missing" video, and the lack of intent to deprive, the Court should not issue any sanction. However, if the Court does issue a sanction, it should not be an adverse inference instruction. Such a sanction is "extreme" because it results in the sanctioned party being "hard-pressed to prevail on the merits." *Zubulake*, 220 F.R.D. at 220. Under Rule 37, the Court can order an adverse inference instruction only if it finds the party acted with the intent to deprive. Rule 37(e)(2). The evidence does not show County Defendants acted with such an intent.

Thus, if the Court finds the County violated its duty to preserve the video and that the missing video caused Plaintiffs prejudice, the Court may order measures "no greater than necessary to cure the prejudice." Rule 37(e)(1). Given that many hours of video of the area near Shuck's cell were preserved and produced, an adverse inference instruction would be far greater than necessary to cure any prejudice. Thus, if the Court issues a sanction, it should choose a lesser sanction, such as by reopening discovery to allow Plaintiffs to depose second floor deputies for more information about the use of holding cells and the attention given to detainees during the time Schuck was there. They could

also inquire whether anyone had ever been "forgotten" on the floor. Plaintiffs would be free to argue to the jury without an adverse inference about the allegedly missing video. Alternatively, the Court could instruct the jury that the County inadvertently failed to preserve video.

## VI. PLAINTIFFS' MOTION WAS UNTIMELY

The R&R also errs by not recommending the denial of Plaintiffs' motion as untimely. The report acknowledges that Plaintiffs brought their motion "7.5 months after Plaintiffs gathered the facts for a motion." ECF No. 142 at p. 5. Bringing the motion now, after discovery has closed, prejudices the County because the County can no longer seek discovery to counter the adverse inference (*e.g.*, some staff present during Schuck's incarceration have left and would have to be subpoenaed for deposition). *See Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at *4 (N.D. Cal. Jan. 25, 2010) ("the Court also observes that plaintiff did not seek the Court's intervention in this matter at any time during the discovery process. Given this procedural history, the Court is not persuaded that it would be appropriate to impose evidentiary sanctions.").

As Judge Schopler previously wrote in a report and recommendation, "[S]poliation motions should be filed as soon as reasonably possible after discovery of the facts that underlie the motion," and "[f]ederal courts have denied such motions when the moving party knew about the evidence destruction and failed to move for sanctions within a reasonable time." *Mahboob v. Educ. Credit Mgmt. Corp.*, 2021 WL 791853, at *2 (S.D. Cal. Mar. 1, 2021), report and recommendation adopted in part, rejected in part, 2021 WL 7448531 (S.D. Cal. Mar. 31, 2021). The case Judge Schopler cited in support of this assertion was *Cottle-Banks v. Cox Commnications, Inc.*, 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013), in which Judge Gonzalo Curiel ruled that a spoliation motion was untimely when—like this one—it was filed almost nine months after the plaintiff learned that evidence had been overwritten.

Both Judge Schopler and Judge Curiel also ruled in these decisions that spoliation motions are subject to chambers discovery rules. *Mahboob*, 2021 WL 791853 at *2;

11

No. 23-cv-00785-DMS-AHG

*Cottle-Banks*, 2013 WL 2244333 at *16. Judge Goddard's Pretrial Procedures require parties to bring discovery disputes to the Court's attention within 45 days. But Plaintiffs' motion includes an email regarding the dispute dated April 15, 2024—well over a year ago! And the jail videos were produced with written discovery responses that the County served on September 12, 2023—even longer ago. If spoliation motions are subject to chambers discovery rules as Judge Schopler and Judge Curiel have both ruled, then Plaintiffs' motion is clearly untimely.

### VII.  CONCLUSION

The County and its employees did not act with a culpable state of mind in allowing video to be overwritten, and the County did not believe the video was relevant or that it had a duty to preserve it. Even if the County was wrong on those issues, Plaintiffs have not been prejudiced. Simply stated, the punishment here far exceeds the proverbial alleged crime and would harm the integrity of the proceedings. Plaintiffs' motion was also untimely and prejudicial because Plaintiffs brought it outside of the discovery period. Accordingly, the County Defendants respectfully request that the Court sustain their objection to the R&R and not sanction the County with an adverse inference instruction.

DATED: August 15, 2025        DAVID J. SMITH, Acting County Counsel

By: s/STEVEN P. INMAN, II, Senior Deputy Attorneys for County of San Diego, William Gore, Kelly Martinez, Jon Montgomery, DO, Jessica Ramirez, Justin Page, Allan Valbuena, Jameelyn Barrera, Romeo DeGuzman, Emily Lymburn, Carina Echon, Jennifer Vivona, Thomas Mace, and Jeff Amado